1  JAMES J. BROSNAHAN (SBN 34555)
   FRANCHESCA C. HERRERA (SBN 239081)
2  MORRISON & FOERSTER LLP
   425 Market Street
3  San Francisco, California  94105-2482
   Telephone:  (415) 268-7000
4  Facsimile:   (415) 268-7522
   E-mail: JBrosnahan@mofo.com
5
   MARK D. ROSENBAUM (SBN 59940)
6  CATHERINE E. LHAMON (SBN 192751)
   AHILAN T. ARULANANTHAM (SBN 237841)
7  RANJANA NATARAJAN (SBN 230159)
   MELINDA BIRD (SBN 102236)
8  ACLU FOUNDATION OF
       SOUTHERN CALIFORNIA
9  1616 Beverly Boulevard
   Los Angeles, California 90026
10 Telephone:  (213) 977-9500, x224
   Facsimile:   (213) 250-3919
11 E-mail:  mrosenbaum@aclu-sc.org

12 Attorneys for Plaintiffs

13              UNITED STATES DISTRICT COURT

14              CENTRAL DISTRICT OF CALIFORNIA

15 PETER GUZMAN and MARIA            )  CASE NO.: **CV08-01327CAS**              (SS
   CARBAJAL,                         )
16                                   )  **COMPLAINT FOR VIOLATIONS**
              Plaintiffs,            )  **OF THE FIRST, FIFTH AND**
17                                   )  **FOURTEENTH AMENDMENTS TO**
          vs.                        )  **THE UNITED STATES**
18                                   )  **CONSTITUTION**
   MICHAEL CHERTOFF, Secretary,      )
19 Department of Homeland Security;  )  **DEMAND FOR JURY TRIAL**
   JAMES T. HAYES, Field Office      )
20 Director, U.S. Immigration and    )
   Customs Enforcement; PILAR        )
21 GARCIA, Agent, U.S. Immigration   )
   and Customs Enforcement; COUNTY   )
22 OF LOS ANGELES; LEROY BACA,       )
   Sheriff of the County of Los Angeles; )
23 TIMOTHY CORNELL, Captain, Los     )
   Angeles County Inmate Reception   )
24 Center; SANDRA FIGUERAS,          )
   Custodial Assistant, Los Angeles  )
25 County Sheriff's Department; AND  )
   DOES 1-100,  10                   )
26                                   )
              Defendants.            )
27 _____  )

28

1

**JURISDICTION AND VENUE**

2      1.     This civil rights action for declaratory relief and compensatory and

3   punitive damages is brought pursuant to, inter alia, the Fourth, Fifth and Fourteenth

4   Amendments to the United States Constitution, 42 U.S.C. § 1983, the Federal Tort

5   Claims Act ("FTCA"), 28 U.S.C. §§ 2671, et seq. and law for relief from

6   commission of tortious acts.  This Court has jurisdiction over federal claims

7   pursuant to the constitutional provisions enumerated and 28 U.S.C. § 1331 and

8   § 1343 (3) and (4), as they are brought to redress deprivations of rights privileges

9   and immunities secured by the United States Constitution and by law.  Jurisdiction

10  is also proper pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and

11  2202.  This Court has jurisdiction over the supplemental state claims pursuant to

12  28 U.S.C. § 1367.

13     2.     Venue is proper in the Central District of California, under 28 U.S.C.

14  § 1391(b), in that Defendants are located in this state and district, and a substantial

15  part of the acts and/or omissions giving rise to Plaintiffs' claim occurred in this

16  district.

17

**INTRODUCTION**

18     3.     The government – whether it be federal or local – lacks the authority to

19  deport a United States born citizen.  Citizenship is the constitutional birthright of

20  every individual born within our national borders, and the first obligation of

21  government is to preserve the liberty and security of citizens to remain within their

22  homeland.

23     4.     On May 11, 2007, immigration officials and agents of the Los Angeles

24  District of the United States Immigration and Customs Enforcement ("ICE")

25  Division, under the United States Department of Homeland Security ("DHS"),

26  acting in concert with officials of the Los Angeles County Sheriff's Department

27  ("LASD"), unlawfully deported Plaintiff Peter Guzman to Tijuana, Mexico.  The

28  illegal deportation of Mr. Guzman is the direct and foreseeable consequence of

COMPLAINT                                  1

sf-2456275

1   official procedures, practices, and policies that manifest, at best, intentional

2   discrimination based on race and ethnicity, and, in reality, a reckless disregard for

3   human life and liberty as well.

4        5.    Mr. Guzman is a 30 year old United States citizen, born and raised in

5   Los Angeles County. He has never made his residence anywhere outside of Los

6   Angeles County. Mr. Guzman is cognitively impaired. He is unable to read at

7   more than a second-grade level and is unable to commit to memory basic

8   information like his home telephone number. Mr. Guzman has always lived under

9   the care and supervision of his mother, Plaintiff Maria Carbajal.

10       6.    On or about May 11, 2007, Mr. Guzman was loaded on a bus by ICE

11  agents and forced to disembark in Tijuana, Mexico. All he had were the clothes he

12  was wearing and a few dollars in his pocket – not enough to purchase food or

13  shelter. He had no cellular phone and his identification had not been returned to

14  him by either LASD or ICE officials.

15       7.    Prior to his unlawful deportation Mr. Guzman had only visited Mexico

16  on a couple of brief trips with his mother when he was a child. He was unfamiliar

17  with Tijuana and had no personal relationship with any residents of Tijuana.

18       8.    As a direct and foreseeable consequence of the illegal deportation,

19  Mr. Guzman spent nearly three months wandering on foot, lost in Mexico. He ate

20  out of garbage cans, bathed in rivers, and slept outside without adequate shelter or

21  warmth. That Mr. Guzman survived is a matter only of his spirit and will to live,

22  and fortuity. He suffered and continues to suffer grievous physical and

23  psychological injury.

24       9.    Plaintiff Maria Carbajal learned that her son had been illegally

25  deported to Tijuana on or about May 11, 2007. For nearly three months following

26  May 11, 2007, Ms. Carbajal spent most of her days in Tijuana and neighboring

27  cities searching for her lost son. She regularly visited morgues, jails, shelters,

28  churches, riverbeds and dangerous locations in a desperate search for her son.

COMPLAINT                2

1  Ms. Carbajal lived in constant fear for her son's life. This tragic experience has
2  caused and continues to cause her excruciating emotional and psychological
3  suffering.

4      10.   The circumstances under which Mr. Guzman was illegally deported
5  arose from a January 25, 2005 Memorandum of Understanding ("MOU") between
6  DHS and LASD, and approved by the Los Angeles County Board of Supervisors.
7  The MOU created a pilot project through which LASD personnel – described as
8  "custody assistants" – were empowered to engage in certain federal immigration
9  enforcement duties. Specifically, LASD custody assistants interviewed and
10 processed presumed or suspected foreign-born inmates confined within the Los
11 Angeles County jail system to determine the inmates' immigration status and
12 whether, in their judgment, the inmates were deportable. Custody assistants
13 received only brief and inadequate training by ICE. Pursuant to the MOU, custody
14 assistants were granted federal authority to obtain consents of non-citizens to be
15 voluntarily deported and to make referrals to ICE for deportations.

16     11.   ICE failed to undertake prudent efforts to train, supervise, or otherwise
17 reasonably ensure that the LASD custodial assistants interviewing and processing
18 inmates were adequately trained and knowledgeable as to the complexities of
19 immigration law. Specifically, ICE failed to ensure that custodial assistants
20 understood the basics of ascertaining and verifying U.S. citizenship status. In
21 addition, ICE officers and agents failed to exercise reasonable or prudent efforts to
22 ensure that processing of inmates as to immigration status occur absent coercion or
23 reliance upon invidious racial and ethnic biases and stereotypes. ICE officers also
24 failed to develop adequate policies and procedures to ensure that those who are
25 mentally ill or cognitively impaired are adequately protected and that any waiver of
26 rights made by these individuals is knowing, intelligent, and voluntary.

27     12.   ICE officers and agents, acting in concert with LASD personnel,
28 illegally deported Mr. Guzman, notwithstanding the fact that LASD's own records

COMPLAINT                                    3

1   correctly stated that he was born in California and contained his valid California

2   driver's license number.  Law enforcement records to which LASD and ICE had

3   ready access during Mr. Guzman's arrest and detention correctly stated that

4   Mr. Guzman was born in California.  In addition, LASD medical records for

5   Mr. Guzman, to which LASD and ICE had reasonable access, made clear that

6   Mr. Guzman was not capable of exercising a voluntary, knowing, and intelligent

7   waiver of his rights.  ICE and LASD personnel ignored these records or did not

8   undertake reasonable and diligent efforts to review them and appreciate their

9   meaning.

10       13.    Throughout the three-month ordeal in which Mr. Guzman was lost and

11  missing in Mexico, DHS officers and agents, including ICE officers and agents,

12  failed to undertake reasonable and diligent efforts to mitigate the harm resulting

13  from the illegal deportation.  Despite being notified that they had deported a U.S.

14  citizen, Defendants acted with reckless disregard to the physical and/or emotional

15  distress of Mr. Guzman and Ms. Carbajal.  Federal officers and agents failed to

16  make an ongoing, good faith attempt to locate Mr. Guzman.

17                                   **PARTIES**

18  **Plaintiffs**

19       14.    Plaintiff Peter Guzman is a native born United States citizen.  While

20  his birth certificate lists his name as "Pedro Guzman," Mr. Guzman uses the name

21  Peter in his daily life.  Peter Guzman was born in Los Angeles, California, and

22  resided both before and after he was illegally deported in Lancaster, California.

23  Peter Guzman was illegally deported to Mexico in May 2007 and was missing for

24  over 85 days.  He was detained by U.S. border patrol officers as he attempted to

25  cross the border near Calexico in early August 2007.  On or about August 7, 2007,

26  Mr. Guzman was returned to the custody of his family only after efforts by his

27  family and counsel to secure his release from LASD custody.  He now resides in his

28  family home with his mother, Plaintiff Maria Carbajal, in Lancaster, California.

COMPLAINT                                    4

1    15.    Plaintiff Maria Carbajal is a lawful permanent resident alien who

2    resides in Lancaster, California.  Ms. Carbajal is Peter Guzman's mother.

3    **Defendants**

4    16.    Defendant Michael Chertoff is sued in his individual and official

5    capacities as the Secretary of DHS.  In this capacity, he maintains responsibility for

6    the administration and enforcement of the nation's immigration and naturalization

7    laws pursuant to sections 102 and 402 of the Homeland Security Act of 2002, 6

8    U.S.C. § 112 and § 202, respectively, and the Immigration and Nationality Act,

9    § 102, 8 U.S.C. § 1103 (charging the Secretary of DHS with "administration and

10   enforcement of . . . laws relating to the immigration and naturalization of aliens.").

11   17.    Defendant James Hayes is the Field Office Director for the Los

12   Angeles District of ICE.  He is responsible for the enforcement of the immigration

13   laws within this district.  He is sued in his individual and official capacities.

14   18.    Defendant Pilar Garcia is, and at all times mentioned herein was, an

15   Immigration Enforcement Agent with ICE.  She is sued in her individual and

16   official capacities.

17   19.    Defendant Chertoff, Defendant Hayes and Defendant Garcia are

18   hereafter collectively referred to as "ICE Defendants".

19   20.    Defendant County of Los Angeles is the legal entity responsible for the

20   acts and omissions of the Sheriff's Department of Los Angeles County including

21   the practices, policies, and procedures relating to detention, processing for

22   immigration status, and medical care.

23   21.    Defendant Leroy Baca is the Sheriff of Los Angeles County.  In this

24   capacity, he is responsible for the administration of the Los Angeles County jail

25   system, including for the officers who have been deputized to act as immigration

26   agents in the jail.  He is sued in his individual and official capacities.

27   22.    Defendant Timothy Cornell is the Captain of the Los Angeles County

28   Inmate Reception Center.  In this capacity, he is responsible for the administration

1   of the inmate reception center and was the immediate custodian of Mr. Guzman at

2   the time he was transferred to the custody of ICE.  He is sued in his individual and

3   official capacities.

4         23.   Defendant Sandra Figueras is, and at all times mentioned herein was, a

5   custody assistant with the Los Angeles County Sheriff's Department.  She is sued

6   in her individual and official capacities.

7         24.   Defendant County of Los Angeles, Defendant Baca, Defendant

8   Cornell and Defendant Figueras are hereafter collectively referred to as "LASD

9   Defendants".

10        25.   Defendants Does 1–100, inclusive, are sued herein under fictitious

11   names because their true names, capacities, and/or degree of responsibility for the

12   acts alleged herein are unknown to Plaintiffs at this time.  When Plaintiffs ascertain

13   this information, they will amend this Complaint accordingly.  Doe Defendants

14   include, but are not limited to, Doe ICE agents and Doe LASD officers.  Plaintiffs

15   are informed and believe, and thereon allege, that Does 1–100, inclusive, and each

16   of them, are legally liable to Plaintiffs in some part for the wrongful acts and

17   omissions of which Plaintiffs complain herein.

18        26.   All of the Defendants acted under the color of law, in bad faith, and

19   contrary to established law and principles of constitutional and statutory law.

20        27.   Plaintiffs are informed and believe and thereon allege that each of the

21   Defendants caused, and is liable for the unconstitutional and unlawful conduct and

22   resulting injuries, by, among other things, personally participating in said conduct

23   or acting jointly with others who did so; by authorizing, acquiescing or setting in

24   motion policies, plans or actions that led to the unlawful conduct; by failing or

25   refusing with deliberate indifference to maintain adequate supervision; and/or by

26   ratifying the unlawful conduct taken by employees under their direction and

27   control.  Defendants actions were taken pursuant to a policies, custom or usage of

28   ICE and/or LASD.

COMPLAINT                   6

## FACTUAL ALLEGATIONS

28.   Plaintiff Peter Guzman was born on September 25, 1977 in Los Angeles, California. [Exhibit A (Birth Certificate of Mr. Guzman).]

29.   Mr. Guzman began attending elementary school in Los Angeles, California. While he was still attending elementary school, his family moved to Lancaster, California. Mr. Guzman grew up in Lancaster with his mother, Plaintiff Maria Carbajal, and his six siblings.

30.   Although Mr. Guzman completed elementary school and attended high school through the eleventh grade, Mr. Guzman's reading comprehension and writing skills are severely limited. During elementary school, Mr. Guzman was placed in special education classes. He continues to struggle with basic reading and writing, visual processing, conceptualization skills, and memory. While Mr. Guzman can speak both Spanish and English, his English language skills are significantly stronger. Mr. Guzman finds it difficult to remember even basic information like his home telephone number.

31.   Since leaving high school, Mr. Guzman has worked in construction for several different employers. Immediately before his arrest, Mr. Guzman worked laying and finishing cement.

**Mr. Guzman's Incarceration**

32.   On or about March 31, 2007, Mr. Guzman entered a private airport and attempted to board an airplane. He was arrested for a misdemeanor violation of California Penal Code § 625(b), interfering with an aircraft, and for violation of California Vehicle Code § 10851(a), taking a vehicle without consent. Officers with the Los Angeles County Sheriff's Department completed an incident report following Mr. Guzman's arrest. The front page of the incident report lists Mr. Guzman's birthplace as California and lists his California driver's license number. [Exhibit B (County of Los Angeles Sheriff's Department, Incident Report dated 3/31/06).]

33.     On March 31, 2007, following his arrest, Mr. Guzman was booked into Los Angeles County Jail.  During the booking process, Mr. Guzman was asked a series of biographical questions, including a question regarding his birthplace. Mr. Guzman responded that he was born in California.  The Booking and Property Record obtained from the Los Angeles County Jail dated March 31, 2007 lists Mr. Guzman's birthplace as "CA."  [Exhibit C (Los Angeles County Jail, Booking and Property Records).]  The booking officer also noted Mr. Guzman's California driver's license number in these records.

34.     On April 19, 2007, Mr. Guzman pled guilty to a single count of misdemeanor trespassing under California Penal Code § 602.  The judge suspended imposition of the sentence and placed Mr. Guzman on three years probation with a condition that he serve 120 days in County Jail, less 30 days credit for good behavior and time served.

35.     On or about April 5, 2007, while Mr. Guzman was incarcerated, he suffered a head injury and was found by LASD personnel in an altered mental state. He was taken by ambulance to Los Angeles Community Medical Center ("LCMC").  Mr. Guzman told medical personnel that he had fallen and hit his head. He also told medical personnel at LCMC that he was hearing voices that told him bad things.  Medical personnel at LCMC prescribed 5 milligrams of Zyprexa, an anti-psychotic medication, with instructions to increase the dosage to 10 milligrams as needed and/or tolerated.

36.     During his incarceration, Mr. Guzman also informed LASD medical personnel that he was hearing voices.  County medical records relating to Mr. Guzman, which were compiled during his detention, documented Mr. Guzman's impaired mental state.

**The Deportation of Mr. Guzman**

37.     On or about January 25, 2005, ICE and LASD entered into a Memorandum of Understanding ("MOU").  The MOU was approved by the Los

COMPLAINT                                                8

1  Angeles County Board of Supervisors.  The MOU authorized LASD personnel to
2  perform certain federal immigration enforcement activities such as (1) interrogate
3  individuals to determine if there is probable cause for an immigration violation; (2)
4  complete criminal alien processing including fingerprinting, photographing and
5  interviewing for ICE supervisor review; (3) prepare immigration detainers; (4)
6  prepare affidavits and take sworn statements; and (5) prepare Notice to Appear
7  applications for signature of an ICE officer.  According to the MOU, LASD
8  personnel performing the above tasks were to receive training from ICE officers.  In
9  addition, the duties and actions of LASD custodial assistants were to be supervised
10  and directed by ICE agents.

11     38.    On or about April 26, 2007, Mr. Guzman was interviewed by
12  Defendant Sandra Figueras, a custodial assistant with the Los Angeles County
13  Sheriff's Department.  Mr. Guzman was interviewed even though he had previously
14  told prison officials that he was born in California and even though LASD records
15  reflected that he was born in California as well as listed his California driver license
16  number.

17     39.    Mr. Guzman was selected for interview by custody assistant Sandra
18  Figueras solely on the basis of his perceived race, ethnicity and national origin.

19     40.    No reasonable basis existed to suspect or otherwise conclude that
20  Mr. Guzman was not a United States citizen.  In fact, numerous records maintained
21  by the Los Angeles County Sheriff's Department list Mr. Guzman's birthplace as
22  California and list his valid California driver's license number.  [See Exhibit B
23  (Incident Report), Exhibit C (Los Angeles County Booking and Property Records),
24  Exhibit D (Page 1 of Los Angeles County Consolidated Criminal History for Pedro
25  Peter Guzman dated April 26, 2007).]

26     41.    At some point between April 26, 2007 and May 10, 2007, Mr. Guzman
27  was transferred to ICE custody by LASD officers.

28

COMPLAINT                              9

sf-2456275

42.     On or about May 10, 2007, Pilar Garcia, an ICE agent, acting with other Doe Defendant ICE agents, coerced Mr. Guzman to sign a Notice of Rights and Request for Disposition (Form I-826). This form, written entirely in Spanish, effectively waived his legal rights to a removal deportation hearing and stated that he was a citizen of Mexico and that he agreed to be voluntarily deported to Mexico. Mr. Guzman received no assistance from ICE agents – or anyone else – in attempting to read or understand the Notice of Rights and Request for Disposition form that he signed.

43.     Mr. Guzman could not read and did not understand the contents of the Notice of Rights and Request for Disposition. He had no knowledge or understanding of what would occur if he signed the Notice of Rights and Request for Disposition form.

44.     Even though Mr. Guzman responded to questions during his initial processing by LASD by stating that he was born in California and LASD personnel recorded his responses in LASD records, LASD officials made no attempt to verify his citizenship. Although LASD contacted Mr. Guzman's family on at least two occasions during the course of his detention, no attempt was made to obtain Mr. Guzman's birth certificate or ask for any further verification of his place of birth.

45.     The practices and procedures implemented by both ICE and LASD to process Mr. Guzman, to determine that he was unlawfully present in the United States, and to coerce him to sign a document waiving his legal rights and requesting a voluntary departure are part of a pattern, custom, and habit by ICE and LASD personnel to presume foreign citizenship of inmates based on their race, ethnicity, appearance, and/or surname. As consequence, ICE and LASD failed to undertake a reasonable and diligent inquiry into the citizenship of Mr. Guzman based upon readily available documentation, including the LASD's own records and Mr. Guzman's documented responses to questioning.

COMPLAINT                                      10
sf-2456275

1    46.    ICE personnel failed to adequately train and supervise LASD's

2    custodial assistants.  ICE personnel failed to review records in the possession of

3    LASD and ICE which clearly identify Mr. Guzman as being born in the United

4    States.

5    47.    Mr. Guzman's medical records show that he was unable to execute a

6    knowing, voluntary, and intelligent waiver of his legal rights so as to request a

7    voluntary departure to Mexico.  The failure to examine and appreciate the

8    significance of LASD and ICE records reflects a deliberate indifference by ICE and

9    the LASD to the rights and well-being of Mr. Guzman and is a further example of

10   intentional racial discrimination by these governmental entities.

11   48.    Even if Mr. Guzman had been unlawfully present in the United States

12   – which he was not – a prior conviction under California Health & Safety Code

13   § 11378 in March 2000 seriously calls into question whether Mr. Guzman would

14   have been eligible for voluntary deportation.  LASD and ICE failed to take a careful

15   look at Mr. Guzman's criminal history or any other records in their possession

16   before summarily deporting him from the United States.  The failure to adequately

17   examine these records was consequence of inadequate training and supervision and

18   reflects a deliberate indifference by ICE and LASD to the rights and well-being of

19   inmates of or perceived to be racially/ethnically Latino.

20   49.    As a direct and foreseeable consequence of the practices and

21   procedures utilized, Mr. Guzman was placed by LASD and/or ICE personnel on a

22   bus to Tijuana on May 11, 2007.  When the bus reached Tijuana, Mr. Guzman was

23   forced to disembark.

24   **The Search for Mr. Guzman**

25   50.    On May 11, 2007 at approximately 11:15 a.m., Mr. Guzman placed a

26   single telephone call to the home of his eldest brother, Juan Carlos Chabes.

27   Victoria Chabes, Mr. Guzman's sister-in-law, answered the telephone.

28   Mr. Guzman was confused and disoriented.  At one point during the call, he asked a

COMPLAINT                                    11

sf-2456275

bystander, "Where am I?" Ms. Chabes learned that Mr. Guzman had been placed on a bus and sent to Tijuana. Mr. Guzman told Ms. Chabes that he had no money or clothes. The call lasted no more than one minute and was made from a borrowed cellular phone.

51. Mr. Guzman cannot remember his own home telephone number or the telephone numbers of any of his family members. When he was deported, Mr. Guzman had a slip of paper with him that contained his brother Juan's telephone number. At some point after the May 11, 2007 telephone call, Mr. Guzman lost the slip of paper with his brother's telephone number on it and was unable to call home again.

52. Ms. Chabes immediately contacted Ms. Carbajal, Mr. Guzman's mother, by telephone and reported her conversation with Mr. Guzman. Ms. Carbajal was anguished and extremely distressed at learning that Peter was alone in Mexico, because she feared for his safety and well-being. Mr. Guzman lived in his mother's home his entire life and has always depended upon her for his basic care.

53. Ms. Chabes then called her husband, Mr. Guzman's eldest brother, Mr. Juan Carlos Chabes.

54. On that same day, May 11, 2007, Ms. Chabes called LASD to report her telephone call from Mr. Guzman and to get information regarding Mr. Guzman's deportation. The representative at LASD informed Ms. Chabes that they had no record of an individual with Mr. Guzman's name and birthdate. LASD suggested that Ms. Chabes call the INS (now known as ICE) and provided her with their telephone number. Ms. Chabes then called ICE and explained what had happened to Mr. Guzman. The only information ICE told her was that there was no individual with Mr. Guzman's name or date of birth in their database.

55. On May 11, 2007, after learning the news of Mr. Guzman's deportation, Ms. Carbajal went straight to her home from Los Angeles, where she

was running errands. She collected Peter's birth certificate and got in a car with her son, Michael Guzman. Michael Guzman drove her to Tijuana to immediately begin their search for Mr. Guzman.

56.     On May 12, 2007, Michael Guzman had to return home to work. He left his mother searching in Tijuana for Mr. Guzman. Because she had no car, Ms. Carbajal had to search on foot and use public transportation.

57.     Ms. Carbajal was only able to afford a hotel room for three nights. After that, Ms. Carbajal received assistance from the owners of a local fruit warehouse. They allowed her to sleep on the floor in a room in the warehouse in exchange for cooking for the warehouse workers. The room had no windows and was approximately the size of a closet.

58.     Ms. Carbajal temporarily left her job as a cook at Jack in the Box to devote all of her time to finding Peter. Typically, Ms. Carbajal started her search early in the morning, around 6:00 a.m., and would not return to the warehouse until late at night.

59.     In May 2007, Mr. Juan Chabes and Ms. Carbajal went to the U.S. Consulate in Tijuana, Mexico to ask for help in searching for Mr. Guzman. The consulate informed them that unless Mr. Guzman comes to the consulate, says he is a U.S. citizen, and asks for help, there was nothing they could do.

60.     Over the next three months, Maria Carbajal, Juan Chabes, Victoria Chabes, Michael Guzman and other members of Mr. Guzman's family searched in Tijuana and adjoining cities for Mr. Guzman. Ms. Carbajal spent most of this time in Tijuana. Ms. Carbajal followed-up on information and tips received from people who believed that they had seen Mr. Guzman. Ms. Carbajal, her sons and other family members printed thousands of flyers with Mr. Guzman's picture and physical description, and distributed them throughout the city. Mr. Guzman's family printed t-shirts with his image in hopes that someone might recognize him and contact them.

COMPLAINT                                        13

sf-2456275

61.     Ms. Carbajal searched hospitals, jails, shelters, commercial truck stops, police stations, river beds, canals, alleys, and morgues.  Ms. Carbajal also monitored Tijuana's city website viewing pictures of unidentified bodies found in and near Tijuana.  She walked through the most dangerous neighborhoods in Tijuana.  Ms. Carbajal spoke to anyone who would listen to her story in the hope that they might possess some information about her missing son.

62.     Ms. Carbajal depleted her limited savings quickly.  After over a month of searching, she had to return to her job at Jack in the Box a few nights a week in order to provide for her youngest children.  Every day that she did not have to work, Ms. Carbajal searched for her missing son.

**Mr. Guzman Missing in Tijuana**

63.     Mr. Guzman was missing in Mexico for over 85 days.

64.     When he was told to exit the bus in Tijuana, Mr. Guzman had only three dollars in his possession and the clothes on his back.  His wallet and California Driver's license  were never returned to him by ICE or LASD.  Mr. Guzman survived by begging and eating food out of trash cans.

65.     Mr. Guzman bathed in rivers and canals.

66.     Mr. Guzman was in constant fear for his life and safety.  Mr. Guzman kept moving to avoid danger.  Mr. Guzman walked hundreds of miles – first south to Ensenada, then back to Tijuana, and finally to Calexico.

67.     Mr. Guzman slept during the day and walked at night because it was extremely hot during the day.  Mr. Guzman slept outside and had no protection from the elements.

68.     Mr. Guzman was located attempting to cross the border near Calexico.

69.     When Mr. Guzman was detained in early August 2007, he was returned to LASD custody.  Mr. Guzman was traumatized.  Mr. Guzman's condition was so poor when he first arrived back in the U.S. that LASD medical personnel believed that Mr. Guzman was mentally retarded and mute.

COMPLAINT                                          14

sf-2456275

**Defendants Failed to Meaningfully Assist in the Search to Locate Mr. Guzman**

70.     Officers and agents of the United States government provided slight and inadequate assistance to Ms. Carbajal and her family so as to mitigate the harm and suffering caused by the illegal deportation of Mr. Guzman. Until a habeas action was filed in this Court, *Guzman v. Chertoff, et al., USDC Case No. CV-07-3746 GHK (SS)*, no assistance was forthcoming despite pleas for help from the family and counsel, both of whom had repeatedly furnished the government with copies of Mr. Guzman's birth certificate.

71.     Prior to the filing of the habeas action, counsel for the family informed Defendant James Hayes, Field Office Director for the Los Angeles office of ICE, a division of DHS, about the deportation. Mr. Hayes stated that upon proof of a U.S. birth certificate ICE would amend its records as to the citizenship of Mr. Guzman, but ICE would take no additional steps to assist in finding and returning him to the United States.

72.     During the course of the habeas action, counsel for DHS represented to the Court that alerts and flyers were being sent to law enforcement and consulates. Although these alerts may have been circulated at some point to law enforcement, including the border patrol, Mr. Guzman was not detained by border officials as a result of these alerts. Rather, based on information and belief, Mr. Guzman was detained by border guards because there was a warrant issued for his arrest after Mr. Guzman failed to appear at a probation hearing following Defendants' unlawful deportation of him to Mexico.

73.     As a direct and foreseeable consequence of his illegal deportation, Mr. Guzman suffered and continues to suffer grievous physical and psychological injury.

74.     As direct and foreseeable consequence of the illegal deportation of her son, Ms. Carbajal suffered and continues to suffer grievous psychological injury and emotional distress. The infliction of this injury and emotional distress was

1    willful and was the result of deliberate indifference and gross negligence by
2    Defendants' responsible for the illegal deportation and the failure of these parties to
3    undertake reasonable and diligent efforts to locate and return Mr. Guzman to his
4    home and family so as to mitigate the effects of their unlawful acts.

**CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**
**(Fifth and Fourteenth Amendments to the U.S. Constitution)**

**(Against DHS Defendants and DOE ICE Agents 1–10)**

9    75.    Plaintiffs reallege and incorporate herein by reference each and every
10   allegation contained in paragraphs 1 through 74 of this Complaint.

11   76.    Defendants denied Plaintiff Guzman his constitutional right to liberty
12   and deprived him of his liberty without due process of law as guaranteed by the
13   Fifth and Fourteenth Amendments to the U.S. Constitution by the illegal, arbitrary,
14   and capricious deportation of Mr. Guzman, a United States citizen, to Mexico.
15   Defendants deported or caused Plaintiff Guzman to be deported without reasonable
16   basis or lawful authority.

17   77.    The Defendants' conduct violated clearly established constitutional or
18   other rights, of which Defendants knew, or of which a reasonable public official
19   should have known.

20   78.    The actions and omissions of these Defendants, complained of herein,
21   were intentional, reckless, and show a callous disregard for, or deliberate
22   indifference to Plaintiffs' personal safety, security, freedom, and civil and
23   constitutional rights.

24   79.    As a direct and proximate result of the unlawful actions of these
25   Defendants, Plaintiffs have suffered significant physical and emotional harm.

**SECOND CLAIM FOR RELIEF**
**(Fifth and Fourteenth Amendments to the U.S. Constitution)**

**(Against DHS Defendants and DOE ICE Agents 1–10)**

80.   Plaintiffs reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 74 of this Complaint.

81.   Defendants deliberately and unconstitutionally discriminated against Plaintiff Guzman on the basis of his race and ethnicity so as to deny him equal protection of the law and his liberty by illegally deporting him to Mexico.

82.   The Defendants' conduct violated clearly established constitutional or other rights, of which Defendants knew, or of which a reasonable public official should have known.

83.   The actions and omissions of these Defendants complained of herein were intentional, reckless, and show a callous disregard for, or deliberate indifference to Plaintiffs' personal safety, security, freedom, and civil and constitutional rights.

84.   As a direct and proximate result of the unlawful actions of these Defendants, Plaintiffs have suffered significant physical and emotional harm.

### THIRD CLAIM FOR RELIEF
**(Fifth and Fourteenth Amendment to the U.S. Constitution)**

**(Against DHS Defendants and DOE ICE Agents 1–1*80*)** *10,)*

85.   Plaintiffs reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 74 of this Complaint.

86.   As a direct result of Defendants' actions, policies and procedures, Ms. Carbajal was deprived of the companionship, custody and control of her dependent son in violation of the Fifth and Fourteenth Amendment of the United States Constitution.

87.   Ms. Carbajal has cared for Mr. Guzman for his entire life. The reckless, intentional, and deliberate acts and omissions of Defendants forced Ms. Carbajal to travel to Mexico and suffer innumerable hardships searching for her son.

COMPLAINT

sf-2456275

17

88.     The Defendants' conduct violated clearly established constitutional or other rights, of which Defendants knew, or of which a reasonable public official should have known.

89.     The actions and omissions of these Defendants complained of herein were intentional, reckless, and show a callous disregard for, or deliberate indifference to Plaintiffs' personal safety, security, freedom, and civil and constitutional rights.

90.     As a direct and proximate result of the unlawful actions of these Defendants, Plaintiffs have suffered significant physical and emotional harm.

## FOURTH CLAIM FOR RELIEF
### (Fifth and Fourteenth Amendments to the United States Constitution)
### (42 U.S.C. § 1983)
### (Against LASD Defendants and DOE LASD Officers 1–190) 10 f

91.     Plaintiffs reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 74 of this Complaint.

92.     Defendants denied plaintiff Guzman his constitutional right to liberty and deprived him of his liberty without due process of law as guaranteed by the Fifth and Fourteenth Amendments to the U.S. Constitution by causing or participating in the illegal, arbitrary, and capricious deportation of Mr. Guzman, a United States citizen, to Mexico.  Defendants deported or caused Plaintiff Guzman to be deported without reasonable basis or lawful authority.

93.     These violations are compensable pursuant to 42 U.S.C. § 1983.  As a result of Defendants' conduct, Plaintiffs have suffered significant physical and emotional harm.

## FIFTH CLAIM FOR RELIEF
### (Fifth and Fourteenth Amendments to the United States Constitution)
### (42 U.S.C. § 1983)
### (Against LASD Defendants and DOE LASD Officers 1–190) 10

94.     Plaintiffs reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 74 of this Complaint.

95.     Defendants deliberately and unconstitutionally discriminated against plaintiff Guzman on the basis of his race and ethnicity so as to deny him equal protection of the law and his liberty by causing or participating in the illegal deportation of Mr. Guzman.

96.     These violations are compensable pursuant to 42 U.S.C. § 1983.  As a result of Defendants' conduct, Plaintiffs have suffered significant physical and emotional harm.

## SIXTH CLAIM FOR RELIEF
**(First and Fourteenth Amendments to the United States Constitution)**

**(42 U.S.C. § 1983 - Loss of Familial Association)**

**(Against LASD Defendants and DOE LASD Officers 1–~~100~~ 10)**

97.     Plaintiffs reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 74 of this Complaint.

98.     Defendants denied Plaintiff Maria Carbajal her constitutional rights under the First and Fourteenth Amendments when they deprived her familial association with her dependant son, Mr. Guzman.  Defendants' illegal, arbitrary, and capricious deportation of Mr. Guzman to Mexico violated Ms. Carbajal's fundamental liberty interest as guaranteed by the U.S. Constitution.

99.     These violations are compensable pursuant to 42 U.S.C. § 1983.  As a result of Defendants' conduct, Plaintiffs have suffered significant physical and emotional harm.

## ADDITIONAL CLAIMS FOR RELIEF

100.   In addition to filing this Complaint, Plaintiffs are presenting a claim pursuant to the Federal Tort Claims Act seeking relief from the United States of America.  If the claim is denied, Plaintiffs will amend this Complaint to seek monetary damages from the United States of America for various torts committed.

COMPLAINT                                              19

sf-2456275

1    101.   In addition to filing this Complaint, Plaintiffs are presenting a claim

2  pursuant to California Government Code § 905, *et seq.* to the County of Los

3  Angeles seeking relief from the County of Los Angeles.  If the claim is denied,

4  Plaintiff will amend this Complaint to seek monetary damages from the County of

5  Los Angeles for various torts committed.

6                              **PRAYER FOR RELIEF**

7        WHEREFORE, each Plaintiff prays for judgment against all Defendants, and

8  each of them, as follows:

9        1.   For general damages against all Defendants, jointly and severally, in

10  an amount to be proven at trial;

11       2.   For special damages against all Defendants, jointly and severally, in an

12  amount to be proven at trial;

13       3.   For punitive and exemplary damages against the individual law

14  enforcement officer defendants, and Does 1-100, *10,* jointly and severally in an amount

15  to be proven at trial;

16       4.   For reasonable costs and attorneys' fees and expenses pursuant to 42

17  U.S.C. § 1988 and any other applicable law;

18       5.   Declare the actions and omissions of defendants violative of Plaintiffs'

19  constitutional rights under the First, Fifth and Fourteenth Amendments; &

20       6.   Grant such further relief as the Court deems just and proper.

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

COMPLAINT                                    20

sf-2456275

1

## DEMAND FOR JURY TRIAL

2        Plaintiffs demand a trial by jury in this matter.

3

4 Dated:    February 27, 2008       JAMES J. BROSNAHAN
FRANCHESCA C. HERRERA
5                              MORRISON & FOERSTER LLP

6

7                           By:
8                           James J. Brosnahan
                          Attorneys for Petitioner

9

10 Dated:    February 27, 2008       MARK D. ROSENBAUM
CATHERINE E. LHAMON
11                              AHILAN T. ARULANANTHAM
RANJANA NATARAJAN
12                              MELINDA BIRD
ACLU FOUNDATION OF SOUTHERN
13                                 CALIFORNIA

14

15                           By:
16                           Mark Rosenbaum
                          Attorneys for Petitioner

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT                       21

sf-2456275



STATE OF CALIFORNIA

COUNTY OF LOS ANGELES REGISTRAR-RECORDER/COUNTY CLERK
CERTIFIED ABSTRACT OF BIRTH

NAME: PEDRO GUZMAN

DATE OF BIRTH: SEPTEMBER 25, 1977                    SEX: MALE

COUNTY OF BIRTH: LOS ANGELES

BIRTH SURNAME OF MOTHER: CARBAJAL

DATE FILED: DECEMBER 1977

DATE ISSUED: NOVEMBER 22, 2000

LOCAL REGISTRATION NUMBER: 00908-49

This certified document is a true
abstract of the official record
filed with the Registrar-Recorder.

CONNY B. McCORMACK
REGISTRAR-RECORDER/COUNTY CLERK

19-080643

**COUNTY OF LOS ANGELES SHERIFF'S DEPARTMENT**
## IN CUSTODY
**INCIDENT REPORT**   DATE 03-31-07   PAGE 1 OF 7

A TRADITION OF SERVICE

| ACTION: | ☒ ACTIVE  ☐ PENDING | NON-CRIMINAL | # OF ADULT ARRESTS | # OF SUBJECT DETENTIONS | URN # | 4 | 07 | 08078 | 1183 | 339 |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Ø | | RETENTION | YEAR | SEQUENTIAL | REPORTING DISTRICT | STAT CODE |

CLASSIFICATION 1 / LEVEL/ STAT CODE
REASONABLE CAUSE  TAKING A VEHICLE WITHOUT CONSENT 10851(a) C.V.C. /F/ 339

CLASSIFICATION 2 / LEVEL/ STAT CODE
INTERFERING WITH AIRCRAFT 625b(a) P.C. /M/ 399

CLASSIFICATION 3 / LEVEL/ STAT CODE

SEX OFFENSE VICTIM INFO? ☐ YES ☒ NO
DOMESTIC VIOLENCE ☐ NON-PERSONAL (GUN, CARE, ETC) ☐ PERSONAL (HANDS, FEET, FIST, ETC)

DATE, TIME, DAY OF OCCURRENCE
03-31-07, 1705 HOURS, SATURDAY

PRINTS REQUESTED ☐ BY:
COMPLETED ☐   TIME

INJURY ☐ Major ☐ Minor ☐ None ☐ NON-CRIMINAL

LOC OF OCCURRENCE
4555 WEST AVE G   LANCASTER

BUS. NAME
"FOX FIELD"

CODE:  V - VICTIM  •  W - WITNESS  •  I - INFORMANT  •  R - REPORTING PARTY  •  P - PARTY

| CODE | LNAME | FNAME | MNAME | SEX | RACE | ETHNIC ORIGIN | DOB | Age |
|---|---|---|---|---|---|---|---|---|
| I | FOX | MIKE | NMN | M | W | | 04-07-66 | 40 |

RES. ADDR. ASSISTANT AIRPORT MANAGER
4555 WEST AVE G  CITY LANCASTER  ZIP 93534
VICTIM OF OFFENSE(S) (CLASSIFICATION) #:
ENGLISH SPEAKING ☒ YES ☐ NO
RES. PHONE (Area Code) 661-990-1709

| CODE | LNAME | FNAME | MNAME | SEX | RACE | ETHNIC ORIGIN | DOB | Age |
|---|---|---|---|---|---|---|---|---|
| V | 2 FERULLO | KENNY | NMN | M | W | | 06-07-79 | |

RES. ADDR. "NET JETS" PILOT
4111 BRIDGEWAY AVE  CITY COLUMBUS OH  ZIP 43219
VICTIM OF OFFENSE(S) (CLASSIFICATION) #: 2
ENGLISH SPEAKING ☐ YES ☐ NO
BUS. PHONE (Area Code) 614-239-5500

| CODE | LNAME | FNAME | MNAME | SEX | RACE | ETHNIC ORIGIN | DOB | Age |
|---|---|---|---|---|---|---|---|---|
| V | 2 CROOKS | KENT | A | M | W | | 09-24-77 | 29 |

RES. ADDR. "NET JETS" PILOT
4111 BRIDGEWAY AVE  CITY COLUMBUS OH  ZIP 43219
VICTIM OF OFFENSE(S) (CLASSIFICATION) #: 2
ENGLISH SPEAKING ☒ YES ☐ NO
BUS. PHONE (Area Code) 614-239-5500

CODE:  S - SUSPECT  •  SJ - SUBJECT  •  M - PATIENT  •  S/V - SUSPECT / VICTIM  •  SJ / V - SUBJECT / VICTIM

| CODE | LNAME | FNAME | MNAME | DRIVER'S LICENSE (STATE & No.) |
|---|---|---|---|---|
| S | 1 GUZMAN | PEDRO | PETER | CA B7301562 |

RES. ADDR. 25545 EAST AVE J-4  CITY LANCASTER  ZIP 93534
RES. PHONE (Area Code) 661-878-6100
BUS. ADDR. UNEMPLOYED
BUS. PHONE (Area Code)

| SEX | RACE | ETHNIC ORIGIN | HAIR | EYES | HGT. | WGT. | DOB | Age |
|---|---|---|---|---|---|---|---|---|
| M | H | | BRN | BRN | 600 | 160 | 09-25-77 | 29 |

CHARGE: 10851(a) C.V.C., 625b(a) P.C.
WHERE DETAINED OR CITE # LANCASTER
MONIKER
BOOKING # 9-740429

| CODE | LNAME | FNAME | MNAME | DRIVER'S LICENSE (STATE & No.) |
|---|---|---|---|---|
| | | | | |

RES. ADDR.  CITY  ZIP
RES. PHONE (Area Code)
BUS. ADDR.
BUS. PHONE (Area Code)

| SEX | RACE | ETHNIC ORIGIN | HAIR | EYES | HGT. | WGT. | DOB | Age |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

CHARGE:
WHERE DETAINED OR CITE #
MONIKER
BOOKING #

| VEHICLE - | STATUS | ☐ IMPOUNDED | LICENSE (STATE & No.) | YEAR | MAKE | MODEL | BODY TYPE | COLOR |
|---|---|---|---|---|---|---|---|---|
| | SUSPECT ☐ VICTIM ☒ STORED ☐ OUTSTANDING | | CA 3Y97577 | 89 | CHEVY | CHEYENNE | UTILITY | WHT |

REGISTERED OWNER  AJ STEEL BUILDING SERVICES
IDENTIFYING FEATURES
CHP 180 SUBMITTED: ☒ YES ☐ NO
GARAGE NAME & PH.

| RE DEP. GARCIA, R. | EMPLOYEE # 489660 | VACATION DATES | DEP. MORNING | EMPLOYEE # 296955 | VACATION DATES |
|---|---|---|---|---|---|
| STATION LANCASTER | UNIT / CAR # | SHIFT | APPROVED SGT MINISTER 277205 | | DATE 4/1/07 TIME 1380 |

VICTIM DESIROUS OF PROSECUTION ☒ YES ☐ NO
ASSIGNMENT LAW/DB

NOTIFICATION REQ.  DEP.
☐ YES ☒ NO
SPECIAL REQUEST DISTRIBUTION

EARLY SUBJ RELEASE APPROVED BY   TIME   PCO SUBMITTED ☒ YES ☐ NO   TT B/C BY   DATE   TIME

SCJ #100F - SH-R-49 (Rev. 10/59)

**01**

| DATE 03-31-07 | TIME RECEIVED 1704 | TAG # 335 | URN # 407-08078-1183-339 | PAGE 2 of 7 |
|---|---|---|---|---|

INPUT / CHECKED INDIC. QT. ETC.: ☐ YES ☒ NO    EVIDENCE HELD: ☐ YES ☒ NO    EVIDENCE ENTERED IN: PATROL _____ Ledger/Page#    NARCOTICS _____ Ledger/Page#    SAFE _____ Ledger/Page#    BY

| EVIDENCE HELD: | ☐ BLOOD ☐ FOOTPRINTS ☐ OTHER PRINTS ☐ VEHICLE PARTS | ☐ BULLET ☐ FRAUD DOCUMENTS ☐ PAINT ☐ WEAPONS | ☐ BULLET CASING ☐ GSR ☐ PHOTOGRAPHS ☐ | ☐ CHECKS ☐ HAIR ☐ RAPE KIT | ☐ CLOTHES ☐ JEWELRY ☐ RECEIPTS | ☐ CREDIT CARDS ☐ MISCELLANEOUS ☐ TOOLS | ☐ ELECTRONIC EQUIPMENT ☐ MONEY ☐ URINE | ☐ FINGERPRINTS ☐ NARCOTICS ☐ VEHICLE IMPOUNDED |

PROPERTY CODE:   S – STOLEN • R – RECOVERED • L – LOST • F – FOUND • E – EMBEZZLED • D – DAMAGED • EV – EVIDENCE
(Use all applicable Codes; for example, if property is both Stolen and Recovered, Code is S/R)   RELEASED TO

| CODE | ITEM # | QUAN. | DESCRIPTION (include kind of article, trade name, identifying numbers, physical description, material, color, condition, age and present market value) | SERIAL # | VALUE |
|---|---|---|---|---|---|
| SR | 1 | 1 | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

## PART I STATISTICAL INFORMATION

### PROPERTY

| TYPE OF PROPERTY | STOLEN | RECOVERED | TYPE OF PROPERTY | STOLEN | RECOVERED |
|---|---|---|---|---|---|
| CLOTHING/FURS | $ | $ | JEWELRY | $ | $ |
| CONSUMABLE GOODS | $ | $ | LIVESTOCK | $ | $ |
| CURRENCY/NOTES | $ | $ | LOCAL STOLEN VEHICLES | $ | $ |
| FIREARMS | $ | $ | MISCELLANEOUS | $ | $ |
| HOUSEHOLD GOODS | $ | $ | OFFICE EQUIPMENT | $ | $ |
| | | | TV/RADIO/STEREO | $ | $ |

**VICTIM OF SEX CRIMES REQUEST FOR CONFIDENTIALITY**

PURSUANT TO SECTION 293(a) OF THE CALIFORNIA PENAL CODE, YOU ARE INFORMED THAT YOUR NAME WILL BECOME A MATTER OF PUBLIC RECORD, UNLESS YOU REQUEST THAT IT REMAIN CONFIDENTIAL AND NOT BE A PUBLIC RECORD, PURSUANT TO SECTION 6254 OF THE GOVERNMENT CODE.

I, _____ HEREBY (DO) (DO NOT) ELECT TO EXERCISE MY RIGHT TO PRIVACY.

### SCREENING FACTORS

| YES | NO | | YES | NO | |
|---|---|---|---|---|---|
| ☒ | ☐ | 1. SUSPECT IN CUSTODY | ☒ | ☐ | 7. GENERAL SUSPECT DESCRIPTION |
| ☒ | ☐ | 2. SUSPECT NAMED/KNOWN | ☒ | ☐ | 8. GENERAL VEHICLE DESCRIPTION |
| ☐ | ☒ | 3. UNIQUE SUSPECT IDENTIFIERS | ☐ | ☒ | 9. UNIQUE M.O. OR PATTERN |
| ☐ | ☒ | 4. VEHICLE IN CUSTODY | ☐ | ☒ | 10. SIGNIFICANT PHYSICAL EVIDENCE |
| ☐ | ☒ | 5. UNIQUE VEHICLE IDENTIFIERS | ☐ | ☒ | 11. TRACEABLE STOLEN PROPERTY |
| ☐ | ☒ | 6. WRITER/REVIEWER DISCRETION | ☒ | ☐ | 12. MULTIPLE WITNESSES |

76C300F - SH-R-49 (Rev. 10/93)

**02**

PAGE 3 OF 7

| REPORT CONTINUATION    NARRATIVE | URN   407-00078-1183-337 |
|---|---|

WE RESPONDED TO 4555 WEST AVE G ("FOX FIELD")
REGARDING A TRESSPASSING CALL (TAG 335).

WE WERE ADVISED THAT THE PERSON TRESSPASSING
WAS A MALE IN A WHITE UTILITY TRUCK. AS WE
PULLED ONTO THE AIRPORT TARMACK, WE SAW A
MALE (S/GUZMAN) SITTING IN A WHITE UTILITY
TRUCK (CA # 3Y97577). THE TRUCK WAS BACKED
IN NEAR A BLOCK WALL NORTH OF THE TERMINAL.
THE SUSPECT AND TRUCK WERE ON THE TARMACK
FACING "NET JETS" PLANE NUMBER N837QS (APPROXIMATELY
25 YARDS AWAY).

AS WE STOPPED NEAR THE SUSPECT IN THE
UTILITY TRUCK, WE WERE CONTACTED BY I/FOX.
I/FOX DIRECTED US TOWARD S/GUZMAN IN THE
WHITE UTILITY TRUCK. I/FOX SAID HE WAS THE
ASSISTANT AIRPORT MANAGER, AND THAT S/GUZMAN
WAS INTERFERING WITH THE "NET JETS" PLANE.

WE CONTACTED S/GUZMAN (STILL SITTING IN
THE UTILITY TRUCK), AND DETAINED HIM PENDING
OUR TRESSPASSING INVESTIGATION.

76R288M  Sh R 313 - PS 10-82

03

PAGE 4 of 7

| REPORT CONTINUATION   NARRATIVE | URN | 407-08 078-1183-339 |
|---|---|---|

WE AGAIN CONTACTED I/FOX WHO TOLD US S/GUZMAN ENTERED "FOX FIELD" THROUGH THE ACCESS GATE, WHICH HAD BEEN LEFT OPEN. I/FOX SAID S/GUZMAN DROVE ON TO THE TARMACK IN THE WHITE UTILITY TRUCK S/GUZMAN THEN OPENED THE DOOR TO "NET JETS" PLANE, WHICH WAS PREPARING TO LEAVE. I/FOX THINKS S/GUZMAN ENTERED THE PLANE. S/GUZMAN WAS TOLD TO LEAVE. S/GUZMAN DROVE TOWARD THE "FOX FIELD" EAST HANGERS. I/FOX SAW HIM BY THE EAST HANGERS, AND FOLLOWED HIM AS S/GUZMAN LEFT THE EAST HANGERS TOWARD "NETJETS" PLANE. S/GUZMAN GOT OUT OF THE UTILITY TRUCK AND AGAIN TRIED TO GET INTO THE PLANE. S/GUZMAN TOLD I/FOX HE WAS "WAITING FOR A PLANE." I/FOX TOLD S/GUZMAN HE WOULD HAVE TO "WAIT IN THE HANGER." S/GUZMAN HUNG AROUND THE "NET JETS" PLANE UNTIL DEPUTIES ARRIVED.


WE CONTACTED V/FERULLO AND V/CROOKS, WHO WERE THE PILOTS OF THE "NETJETS" PLANE N837QS. THEY SAID THEY WERE IN THE PLANE WITH PASSENGERS "PREPARING TO TAXI." S/GUZMAN THEN OPENED THE PLANE DOOR, ENTERED THE PLANE, AND SAT DOWN. S/GUZMAN TOLD V/FERULLO AND V/CROOKS HE WAS "SUPPOSED TO BE ON THE FLIGHT"

76R288M—Sh R-313— PS 10-82

**04**

PAGE 5 OF 7

| REPORT CONTINUATION   NARRATIVE | URN 407-08078-1183- 339 |
|---|---|

V/ FERULLO AND V/CROOKS TOLD S/GUZMAN
HE WAS NOT ON THEIR FLIGHT, AND ASKED HIM
TO EXIT. S/GUZMAN SAID "OKAY" AND WENT
BACK TO "HIS TRUCK". V/FERULLO AND V/CROOKS
SAW S/GUZMAN DRIVE TO THE "EAST TOWERS."

V/FERULLO AND V/CROOKS SAID S/GUZMAN
CAME BACK AGAIN AND TRIED TO GET ON THE
PLANE. S/GUZMAN WALKED UP TO THE PLANE
DOOR, AND ATTEMPTED TO OPEN IT. V/CROOKS
SAW S/GUZMAN APPROACHING THE PLANE DOOR
AND GRABBED IT FROM THE INSIDE, HOLDING
IT CLOSED TO PREVENT S/GUZMAN FROM
ENTERING. S/GUZMAN GAVE UP AND WENT
BACK TO "HIS TRUCK."

S/GUZMAN STAYED IN HIS TRUCK FOR
APPROXIMATELY "FIVE MINUTES." HE THEN STARTED
WALKING BACK TOWARD THE PLANE. V/FERULLO
AND V/CROOKS STOPPED S/GUZMAN BEFORE HE GOT
TO THE PLANE. S/GUZMAN OFFERED "TWO QUICK
PICK LOTTERY TICKETS" UP TO V/FERULLO AND
V/CROOKS. S/GUZMAN ASKED "DO YOU NEED THESE
(HOLDING THE LOTTERY TICKETS)."

76R288M-Sh R-313- PS 10-82

05

PAGE 6 OF 7

| REPORT CONTINUATION   NARRATIVE | URN | 407-08078-1183-339 |
|---|---|---|

S/GUZMAN WAS TOLD THE LOTTERY TICKETS
WOULD NOT BE ACCEPTED. HE THEN TURNED
AROUND AND WALKED BACK TO HIS TRUCK.

WE CONTACTED S/GUZMAN AND ADVISED HIM
OF HIS MIRANDA RIGHTS (PER 5W&D 477) S/GUZMAN
SAID HE UNDERSTOOD HIS RIGHTS. HE AGREED
TO TALK WITHOUT A LAWYER PRESENT. S/GUZMAN
TOLD US "THE TRUCK WAS NOT HIS" HE SAID
HE FOUND IT NEAR AVENUE "B-8." THE
TRUCK WAS BEHIND SOME HOUSE, WITH THE
KEYS IN THE IGNITION. S/GUZMAN DECIDED TO
TAKE IT "FOR A RIDE" BECAUSE HIS MOM'S
VEHICLE WAS BROKEN. S/GUZMAN "FOLLOWED
THE SIGNS" TO THE AIRPORT. HE SAID HE
WAS GOING TO LEAVE THE TRUCK AT THE
AIRPORT. HE DID NOT KNOW WHO OWNED THE
TRUCK. S/GUZMAN SAID HE WENT TO THE
AIRPORT, BECAUSE HE WANTED TO GET ON A
PLANE. WHEN ASKED IF HE STOLE THE TRUCK,
S/GUZMAN REFUSED TO ANSWER.

WE ATTEMPTED TO CONTACT THE OWNER OF THE
TRUCK VIA PHONE AND PATROL STOP (PALMDALE STATION).
THE OWNER COULD NOT BE REACHED.

76R298M–Sh R-313   PS 10-82

**06**

PAGE 7 OF 7

| REPORT CONTINUATION   NARRATIVE | URN 407-08 078-1183-337 |
|---|---|

S/GUZMAN WAS TRANSPORTED TO LANCASTER STATION, WHERE HE WAS BOOKED WITH THE APPROVAL OF LT. HINDMAN.

IT SHOULD BE NOTED THAT S/GUZMAN HAD NO MONEY OR PLANE TICKETS IN HIS POSSESSION WHEN HE WAS BOOKED. THE "NETJETS" FLIGHT WAS DELAYED AND POSSIBLY CANCELLED DUE TO S/GUZMAN'S ACTIONS. THE VEHICLE S/GUZMAN WAS DRIVING WAS TOWED BY CLARK & HOWARD, PENDING THE OWNERS OF THE VEHICLE BEING CONTACTED.

IT SHOULD ALSO BE NOTED S/GUZMAN BECAME INVOLVED IN A BATTERY AGAINST ANOTHER PRISONER IN THE BOOKING CAGE, WHILE HE WAS BEING BOOKED (SEE FILE # 107-08087-1177-119 FOR FURTHER).

TSA OFFICER KATHY BAGA (BOB HOPE AIRPORT, BURBANK, 818-326-1084) CONTACTED LANCASTER STATION ABOUT THE INCIDENT

76R288M-Sh-R-313- PS 10-82

07

| BOOKING NO.<br>5740429 | OCA NO. | | **LOS ANGELES COUNTY**<br>**BOOKING AND PROPERTY RECORD** | | FOREIGN NATIONAL<br>PCD SUBMITTED | YES | NO | UNK |
|---|---|---|---|---|---|---|---|---|
| SID NO. | LOC. BKD.<br>LAN | DL LIC. NO. STATE<br>B7301561   CA | ALIEN # | | | | | |

SUSPECT PHOTO : FRONT, W/O GLASSES

| ARRESTEE'S NAME (LAST, FIRST, MIDDLE)<br>GUZMAN, PEDRO | | | | | HOME PHONE | |
|---|---|---|---|---|---|---|

| ADDRESS<br>25545 E AVENUE J4 LANCASTER, CA 93535 | | | | | | | |
|---|---|---|---|---|---|---|---|

| SEX<br>M | DESCENT<br>H | HAIR<br>BLK | EYES<br>BRO | HEIGHT<br>600 | WEIGHT<br>160 | BIRTHDATE<br>09-25-1977 | AGE<br>29 |
|---|---|---|---|---|---|---|---|

| VEH. LIC. NO.   ST.<br>3Y97577  CA | RPT. DIST.<br>1183 | AKA/NICKNAME | | | | |
|---|---|---|---|---|---|---|

| BIRTHPLACE<br>CA | FILE NO.<br>4970807811B3339 | | MONIKER | | AD. CHG.<br>Y |
|---|---|---|---|---|---|

| AG'Y. OR DETAIL ARRESTING<br>J101 | | DATE & TIME ARRESTED<br>03-31-2007     1813 | | TIME BKD.<br>1840 |
|---|---|---|---|---|

| LOCATION OF ARREST<br>4555 W AVE G, LANCASTER | | TOTAL BAIL<br>21000.00 | |
|---|---|---|---|

| CHARGE<br>10851(A) / VC / F<br>VEHICLE THEFT | | WARR./COMM. NO. | |
|---|---|---|---|

| JAIL LOC.<br>LAN | ARRAIGN DATE<br>04-03-2007 | TIME<br>0800 | COURT<br>ANT | PRISONER'S SIGNATURE WHEN BOOKED<br>X |
|---|---|---|---|---|

| SOC. SEC. NO. | OBSERVABLE PHYSICAL ODDITIES | OCCUPATION<br>CARPENTER |
|---|---|---|

| EMPLOYER (FIRM OR PERSON'S NAME, CITY & PHONE NO.) | SPECIAL MEDICAL PROBLEM |
|---|---|

| CLOTHING WORN | LOCATION & DISPOSITION OF VEHICLE<br>CLARK AND HOWARD |
|---|---|

| IN CASE OF EMERGENCY NOTIFY (NAME, RELATIONSHIP, ADDRESS, CITY & PHONE NO.) |
|---|

| ARRESTING OFFICER<br>HORNING 296955 | BOOKING EMPLOYEE<br>GARCIA 489660 | SEARCHING OFFICER | TRANSPORTING OFFICER |
|---|---|---|---|

| CASH RETAINED<br>00.00 | PROPERTY | | |
|---|---|---|---|

| | | PRISONER'S SIG. FOR RECT. OF FOREGOING CASH & PROPERTY<br>X |
|---|---|---|

| CASH DEPOSITED<br>000000.00 | PROPERTY | |
|---|---|---|

PRISONER'S SIG. FOR RECT. OF REMAINING CASH & PROPERTY
X

| RIGHT FOUR IN | RIGHT THUMBIN | RIGHT THUMB OUT | FOUR OUT |
|---|---|---|---|

**014**

Exhibit C<br>30

| ADDITIONAL CHARGE | | WARRANT NUMBER | ARREST DATE | TIME | COURT |
|---|---|---|---|---|---|
| 625B(A)/PC/M TAMPER W/AIRCRAFT | | | | DOO/ | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

| TELEPHONE CALLS INTERVIEWS     CODE   A-ATTY  B-BONDSMAN  D-DA  E-EMPLOYER  R-RELATIVE  W-WAIVED  O-OTHER | | | | OFFICER HANDLING | PRISONER'S INITIALS |
|---|---|---|---|---|---|
| NAME BAIL DEVIATION | CODE 0. | PHONE FOR INTERVIEWER (213) 351-0311 | DATE & TIME E MADE | SERIAL # | |
| | | | | | |
| | | | | | |
| | | | | | |

| REMARKS | | X   COMPLETED CALL |
|---|---|---|
| | | CW ST |

| MISDEMEANOR HOLDS _ NO IDENTIFICATION _ WARRANT _ ON GOING PROBLEM _ NON-CITEABLE MISDEMEANOR _ OTHER: APPROVED BY WATCH COMMANDER: | REASON FOR RELEASE            _ EXPIRATION  _ FINE  _ CITATION  _ BAIL  _ OTHER RECEIPT # |
|---|---|
| | DATE AND TIME 5-07-07    INS |
| | RELEASED BY:          DOCUMENT ANALYST: TOBUCHI STOK |
| | RELEASED TO: (NAME, AGENCY & DETAIL) MCun    ICE   3464 |

| RECORD OF PROPERTY TRANSACTIONS | | | CODE     A - ADD  W - WITHDRAW  I - INSPECT  R - REMOVE FOR EVIDENCE | | |
|---|---|---|---|---|---|
| NAME OF PERSON ADDING, WITHDRAWING OR INSPECTING | OFFICER HANDLING SERIAL # | PRISONER'S SIGNATURE AUTHORIZING WITHDRAW | CODE | DESCRIPTION OF PROPERTY | DATE AND TIME |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

| OFFICER MAKING FINAL RELEASE | DATE AND TIME | I DO HEREBY ACKNOWLEDGE RECEIPT OF ALL MY REMAINING PROPERTY |
|---|---|---|
| | | SIGNATURE |

015

Exhibit C
31

| DATE | TIME | JLR SIG | SGT SIG | CV | LOS ANGELES COUNTY JAIL | FOREIGN NATIONAL |
|------|------|---------|---------|-----|-------------------------|------------------|

**LOS ANGELES COUNTY JAIL**
**BOOKING AND PROPERTY RECORD**
MOM'S HOUSE

FOREIGN NATIONAL
☐ YES
☑ NO
☐ REF

| | YES | NO |
|---|---|---|
| HAVE AIDS | ☐ | ☑ |
| HAVE VD | ☐ | ☑ |
| HAVE HEPATITIS | ☐ | ☑ |
| HAVE TB | ☐ | ☑ |
| EVER HAVE TB | ☐ | ☑ |

**JAIL CUSTODY RECORD**

BOOKING NO. 9740429   LOC. BKD. LAN   DR. LIC. NO. B7301562   STATE CA

ARRESTEE'S NAME (LAST, FIRST, MIDDLE)
GUZMAN, PEDRO PETER

ADDRESS 25545 EAST AUG J-4   CITY LAN   SEX M

DESCENT H   HAIR BLK   EYES BRN   HEIGHT 600   WEIGHT 160   BIRTHDATE 09-25-77   AGE 29

VEH. LIC. NO. 3497577   STATE CA   RPT. DIST. 1183   AKA/NICKNAME

BIRTHPLACE CA   FILE NO. 407-0807B-1183   339   AD. CHG. Y

AGY. OR DETAIL ARRESTING 1101   DATE & TIME ARRESTED 03-31-07 / 1813   TIME BKD. 1840

LOCATION OF ARREST 4555 W. AVE G, LANCASTER   TOTAL BAIL 20,000

CHARGE 10851(A)F   TAKING VEHICLES WITHOUT CONSENT   WARR./COMM. NO.

FELONY

JAIL LOC. LAN   ARRAIGN. DATE 04-03-07   TIME 0800   COURT ATP

PRISONER'S SIGNATURE WHEN BOOKED
⊗ PEDRO GUZMAN

SOC. SEC. NO. UNKNOWN

OBSERVABLE PHYSICAL ODDITIES
TT "X3" ON INNER LEFT MIDDLE FINGER

OCCUPATION CONSTRUCTION

EMPLOYER (FIRM OR PERSON'S NAME, CITY, & PHONE NO.)
UNEMPLOYED

SPECIAL MEDICAL PROBLEM NONE

CLOTHING WORN
BLUE SHIRT, BLACK JEANS, BLACK SHOES

LOCATION OR DISPOSITION OF VEHICLE
CLARK & HOWARD

IN CASE OF EMERGENCY NOTIFY (NAME, RELATIONSHIP, ADDRESS, CITY & PHONE NO.)
MARIA CARBAJAL (MOTHER) 25545 EAST AVE J-4, LANCASTER   661-878-6100

ARRESTING OFFICER HORNING 296955   BOOKING EMPLOYEE GARCIA 489660   SEARCHING OFFICER   TRANSPORTING OFFICER

CASH RETAINED Ø   PROPERTY CLOTHING WORN

PRISONER'S SIG. FOR RECT. OF FOREGOING CASH & PROPERTY
⊗ PEDRO GUZMAN

CASH DEPOSITED Ø   PROPERTY BLACK BELT

PRISONER'S SIG. FOR RECT. OF REMAINING CASH & PROPERTY
X

76B630 C-SH-XJ24 10/97

ORR 4-1-07
CII # A11798272
FBI # 869200EB5

016

Exhibit C
32

| TELEPHONE CALLS INTERVIEWS | CODE:  A - ATTY.   B - BONDSMAN   D - DR.   E - EMPLOYER   R - RELATIVE   W - WAIVED   O - OTHER | | OFFICER HANDLING | PRISONER'S INITIALS |
|---|---|---|---|---|
| NAME | CODE | PHONE # OR INTERVIEW'R | DATE & TIME MADE | SERIAL # | |
| 3rd | W | | | 2 | PG |
| | W | | | 4 | PG |
| | W | | | 4 | PG |
| | W | | | 5 | PG |

REMARKS:            X   COMPLETED CALL

**RIGHT FINGERPRINTS**

WHEN BOOKED.     WHEN RELEASED



| WHEN BOOKED | RIGHT THUMB | WHEN RELEASED |
|---|---|---|

REASON FOR RELEASE: ☐ EXPIRATION ☐ FINE ☐ CITATION

☐ BAIL ☐ OTHER
RECEIPT #

DATE AND TIME

RELEASED BY:      DOCUMENT ANALYST:

RELEASED TO: (NAME, AGENCY, & DETAIL)

017

Exhibit C
33

**LOS ANGELES COUNTY**
**CONSOLIDATED CRIMINAL HISTORY SYSTEM**                    Date: 04/26/2007      Page 2   Time: 10:02

CRIMINAL HISTORY TRANSCRIPT FOR OFFICE USE ONLY - UNAUTHORIZED USE IS A CRIMINAL OFFENSE
*INFORMATION FINGERPRINT VERIFIED UNLESS OTHERWISE NOTED BY AN ASTERISK(*)*

Key Name: (1) GUZMAN, PEDRO PETER          DL/Name: FBI/DL: SID/DL/N/2/1998
SID/CII: A11693212        MAIN: 432225253        FBI: 869202EB5        AKA:

**DESCRIPTORS**

#Names/AKAs/Count

(1) GUZMAN, PEDRO PETER          8    (2) GUZMAN, PEDRO                7

Dates of Birth/Count

09/25/1977    4

Scars/Marks/Tattoos

Other Identifiers

DL B7301562 CA      FBI 869202EB5

Address/Count

25545 E AVENUE J4 LANCASTER CA 93535       2   25545 E AVE J4 LANCASTER CA 93535       1
25545 EAST AVENUE J4 LANCASTER CA 93535    1   25545 EAST AVENUE J4 LANCASTER CA 93534  1

Birth Place/Count

CA      3

Moniker/Count

Gang Membership/Count

MISC LATINS - LASD    1

**JUVENILE SUSTAINED PETITIONS**

No Juvenile Information

Exhibit D
34

## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER GUZMAN and MARIA CARBAJAL<br><br>PLAINTIFF(S)<br><br>v.<br><br>*Michael Chertoff*<br>(*See Attachment*)<br><br>DEFENDANT(S). | CASE NUMBER<br><br>**CV08-01327CAS (SSx)**<br><br><br>**SUMMONS** |

TO:    THE ABOVE-NAMED DEFENDANT(S):

YOU ARE HEREBY SUMMONED and required to file with this court and serve upon plaintiff's attorney
James J. Brosnahan; Franchesca C. Herrera          , whose address is:

 (addt'l counsel on attachment)
MORRISON & FOERSTER LLP
425 Market Street, 31st Floor
San Francisco, California  94105-2482
Tel:  (415) 268-7000, Fax: (415) 268-7522

an answer to the ☒ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim
which is herewith served upon you within __20__ days after service of this Summons upon you, exclusive
of the day of service. If you fail to do so, judgement by default will be taken against you for the relief
demanded in the complaint.

Clerk, U.S. District Court

FEB 2 7 2008

Dated: _____

By: _____
        **NATALIE LONGORIA**
        Deputy Clerk

        *(Seal of the Court)*     1198

# ATTACHMENT TO SUMMONS

MICHAEL CHERTOFF, Secretary, Department of Homeland Security; JAMES T.
HAYES, Field Office Director, U.S. Immigration and Customs Enforcement;
PILAR GARCIA, Agent, U.S. Immigration and Customs Enforcement; COUNTY
OF LOS ANGELES; LEROY BACA, Sheriff of the County of Los Angeles;
TIMOTHY CORNELL, Captain, Los Angeles County Inmate Reception Center;
SANDRA FIGUERAS, Custodial Assistant, Los Angeles County Sheriff's
Department; AND DOES 1-100, 10,

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

PETER GUZMAN and MARIA CARBAJAL

PLAINTIFF(S)

v.

Michael Chertoff

(see attachment.)

DEFENDANT(S).

CASE NUMBER

**CV08-01327** CAS(SSx)

**SUMMONS**

TO:   THE ABOVE-NAMED DEFENDANT(S):

YOU ARE HEREBY SUMMONED and required to file with this court and serve upon plaintiff's attorney
James J. Brosnahan; Franchesca C. Herrera _____, whose address is:

(addt'l counsel on attachment)
MORRISON & FOERSTER LLP
425 Market Street, 31st Floor
San Francisco, California  94105-2482
Tel:  (415) 268-7000, Fax: (415) 268-7522

an answer to the ☒ complaint ☐_____amended complaint ☐ counterclaim ☐ cross-claim
which is herewith served upon you within __60__ days after service of this Summons upon you, exclusive
of the day of service. If you fail to do so, judgement by default will be taken against you for the relief
demanded in the complaint.

Clerk, U.S. District Court

Dated: FEB 2 7 2008 _____

**NATALIE LONGORIA**

By: _____
Deputy Clerk

*(Seal of the Court)*

1198

## ATTACHMENT TO SUMMONS

MICHAEL CHERTOFF, Secretary, Department of Homeland Security; JAMES T.
HAYES, Field Office Director, U.S. Immigration and Customs Enforcement;
PILAR GARCIA, Agent, U.S. Immigration and Customs Enforcement; COUNTY
OF LOS ANGELES; LEROY BACA, Sheriff of the County of Los Angeles;
TIMOTHY CORNELL, Captain, Los Angeles County Inmate Reception Center;
SANDRA FIGUERAS, Custodial Assistant, Los Angeles County Sheriff's
Department; AND DOES 1-100, 10,

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)

PETER GUZMAN and MARIA CARBAJAL

**DEFENDANTS**

MICHAEL CHERTOFF, et al.

**(b)** County of Residence of First Listed Plaintiff (Except in U.S. Plaintiff Cases):
County of Los Angeles

County of Residence of First Listed Defendant (In U.S. Plaintiff Cases Only):

**(c)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
James J. Brosnahan (SBN 34555), Franchesca C. Herrera (SBN 239081) (Addt'l counsel on attachment)
Morrison & Foerster, 425 Market St., 31st Floor, San Francisco, CA 94105, Tel: (415) 268-7000, Fax: (415)268-7522

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff ☐ 3 Federal Question (U.S. Government Not a Party)

☑ 2 U.S. Government Defendant ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify): ☐ 6 Multi-District Litigation ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No ☑ **MONEY DEMANDED IN COMPLAINT:** $ Unspecified

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Amend. I, V, XIV, U.S. Constitution; see Bivens v. Six Unknown Agents, 403 US 388 (1971); 42 U.S.C. Sec. 1983; civil suit for damages for deprivation of liberty without due process, equal protection and familial association.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Fed. Employers' Liability | **BANKRUPTCY** | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 340 Marine | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | **CIVIL RIGHTS** | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | | ☐ 355 Motor Vehicle Product Liability | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities /Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 444 Welfare | | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | | | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | | ☑ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | **FEDERAL TAX SUITS** |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**VIII(a). IDENTICAL CASES:** Has this action been previously filed and dismissed, remanded or closed? ☑ No ☐ Yes

If yes, list case number(s):

**FOR OFFICE USE ONLY:** Case Number: _____

CV-71 (07/05)                           CIVIL COVER SHEET                           Page 1 of 2

CV08-01327

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

**VIII(b). RELATED CASES:** Have any cases been previously filed that are related to the present case? ☐ No   ☑Yes

If yes, list case number(s):  U.S. District Court Case No. Civ. 07-3746 GHK (SS)

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)   ☑A.  Arise from the same or closely related transactions, happenings, or events; or

☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or

☑C.  For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** List the California County, or State if other than California, in which EACH named plaintiff resides (Use an additional sheet if necessary)
☐ Check here if the U.S. government, its agencies or employees is a named plaintiff.

PETER GUZMAN, County of Los Angeles
MARIA CARBAJAL, County of Los Angeles

List the California County, or State if other than California, in which EACH named defendant resides. (Use an additional sheet if necessary).
☑ Check here if the U.S. government, its agencies or employees is a named defendant.
MICHAEL CHERTOFF, District of Columbia; JAMES HAYES, County of Los Angeles; PILAR GARCIA, County of Los Angeles; COUNTY OF LOS ANGELES, County of Los Angeles; LEROY BACA, County of Los Angeles; TIMOTHY CORNELL, County of Los Angeles; SANDRA FIGUERAS, County of Los Angeles.

List the California County, or State if other than California, in which EACH claim arose. (Use an additional sheet if necessary)
Note: In land condemnation cases, use the location of the tract of land involved.

County of Los Angeles

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _Mark Rosenbaum_   Date _____

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

1   Re: Guzman, et al. v. Chertoff, et al.

2               Attachment to Civil Cover Sheet I(c):

3   Additional counsel for Plaintiffs, Peter Guzman and Maria Carbajal

4   MARK D. ROSENBAUM (SBN 59940)
     CATHERINE E. LHAMON (SBN 192751)
5   AHILAN T. ARULANANTHAM (SBN 237841)
     RANJANA NATARAJAN (SBN 230159)
6   MELINDA BIRD (SBN 102236)
     ACLU FOUNDATION OF
7        SOUTHERN CALIFORNIA
     1616 Beverly Boulevard
8   Los Angeles, California 90026
     Telephone:  (213) 977-9500, x224
9   Facsimile:   (213) 250-3919
     E-mail:  mrosenbaum@aclu-sc.org

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Christina A. Snyder and the assigned discovery Magistrate Judge is Suzanne H. Segal.

The case number on all documents filed with the Court should read as follows:

## CV08- 1327 CAS (SSx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

================================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| **[X] Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | **[ ] Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | **[ ] Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.