1 | JAMES J. BROSNAHAN (CA SBN 34555)
JBrosnahan@mofo.com
2 | BRIAN J. MARTINEZ (CA SBN 224587)
BrianMartinez@mofo.com
3 | FRANCHESCA C. HERRERA (CA SBN 239081)
FHerrera@mofo.com
4 | MORRISON & FOERSTER LLP
425 Market Street
5 | San Francisco, California 94105-2482
Telephone: 415.268.7000
6 | Facsimile: 415.268.7522

7 | MARK ROSENBAUM (CA SBN 59940)
mrosenbaum@aclu-sc.org
8 | ACLU FOUNDATION OF
SOUTHERN CALIFORNIA
9
Attorneys for Plaintiffs
10 | PETER GUZMAN and MARIA CARBAJAL

11 | [Additional counsel appear on following page.]

12

UNITED STATES DISTRICT COURT

13

CENTRAL DISTRICT OF CALIFORNIA

14

15

| | |
|---|---|
| PETER GUZMAN AND MARIA CARBAJAL, | Case No. CV08-01327 GHK (SSx) |
| | Honorable George H. King |
| Plaintiffs, | |
| v. | **FIRST AMENDED COMPLAINT FOR VIOLATION OF THE FIRST, FOURTH, FIFTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION (*BIVENS*; 42 U.S.C. § 1983); FALSE IMPRISONMENT; NEGLIGENCE; AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS** |
| UNITED STATES OF AMERICA; MICHAEL CHERTOFF, Secretary, Department of Homeland Security; JAMES T. HAYES, Field Office Director, U.S. Immigration and Customs Enforcement; PILAR GARCIA, Agent, U.S. Immigration and Customs Enforcement; COUNTY OF LOS ANGELES; LEROY BACA, Sheriff of the County of Los Angeles; TIMOTHY CORNELL, Captain of Los Angeles County Inmate Reception Center; SANDRA FIGUERAS, Custodial Assistant, Los Angeles County Sheriff's Department; DOE ICE AGENTS 1–10; and DOE LASD OFFICERS 1-10, | |
| | **[JURY TRIAL DEMANDED]** |
| | Action Filed: February 27, 2008 |
| Defendants. | Trial Date: TBD |

FIRST AMENDED COMPLAINT
CASE NO. CV08-01327 GHK (SSx)
sf-2546574

1  CATHERINE E. LHAMON (CA SBN 192751)
   clhamon@aclu-sc.org
2  AHILAN T. ARULANANTHAM (CA SBN 237841)
   aarulanantham@aclu-sc.org
3  MELINDA BIRD (CA SBN 102236)
   mbird@aclu-sc.org
4  ACLU FOUNDATION OF
      SOUTHERN CALIFORNIA
5  1313 West Eighth St.
   Los Angeles, CA 90017
6  Telephone: 213.977.9500, x224
   Facsimile: 213.977.5297

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## JURISDICTION AND VENUE

2     1.     This civil rights action for declaratory and injunctive relief and
3     compensatory and punitive damages is brought pursuant to, *inter alia*, the First,
4     Fourth, Fifth and Fourteenth Amendments to the United States Constitution, 42
5     U.S.C. § 1983, the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671, *et seq.*,
6     and law for relief from the commission of tortious acts. This Court has jurisdiction
7     over the federal claims pursuant to the constitutional provisions enumerated and
8     28 U.S.C. §§ 1331 and 1343(a)(3) and (4), as the claims are brought to redress
9     deprivations of rights, privileges, and immunities secured by the United States
10    Constitution and by law. Jurisdiction is also proper pursuant to the Declaratory
11    Judgment Act, 28 U.S.C. §§ 2201(a) and 2202. This Court has jurisdiction over the
12    supplemental state claims pursuant to 28 U.S.C. § 1367.

13    2.     Venue is proper in the Central District of California, under 28 U.S.C.
14    § 1391(b), in that Defendants are located in this state and district, and a substantial
15    part of the acts and/or omissions giving rise to Plaintiffs' claims occurred in this
16    district.

17

## INTRODUCTION

18    3.     The government – whether it be federal or local – lacks the authority to
19    deport a United States citizen. Citizenship is the constitutional birthright of every
20    individual born within our national borders, and the first obligation of government
21    is to preserve the liberty and security of citizens to remain within their homeland.

22    4.     On May 11, 2007, immigration officials and agents of the Los Angeles
23    District of the United States Immigration and Customs Enforcement ("ICE")
24    Division, under the United States Department of Homeland Security ("DHS"),
25    acting in concert with officials of the Los Angeles County Sheriff's Department
26    ("LASD"), unlawfully deported Peter Guzman to Tijuana, Mexico. The illegal
27    deportation of Mr. Guzman was the direct and foreseeable consequence of official
28    policies, patterns, practices, and customs that manifest, at best, intentional

1    discrimination based on race and ethnicity and a failure to recognize basic

2    principles of due process, and, in reality, a reckless disregard for human life and

3    liberty as well.

4         5.     Mr. Guzman is a 30 year-old United States citizen, born and raised in

5    Los Angeles County. He has never made his residence anywhere outside of Los

6    Angeles County. Mr. Guzman is cognitively impaired and suffers from a mental

7    illness. He is unable to read at more than a second-grade level and is unable to

8    commit to memory basic information, like his home telephone number.

9    Mr. Guzman lives under the care and supervision of his mother, Plaintiff Maria

10   Carbajal.

11        6.     On or about May 11, 2007, Mr. Guzman was loaded on a bus by ICE

12   agents and forced to disembark in Tijuana, Mexico, with only the clothes he was

13   wearing and a few dollars in his pocket – not enough to purchase food or shelter.

14        7.     Prior to his unlawful deportation, Mr. Guzman had only visited

15   Mexico on a couple of brief trips with his mother when he was a child. He was

16   unfamiliar with Tijuana and had no personal relationship with any residents of

17   Tijuana.

18        8.     As a direct and foreseeable consequence of the illegal deportation,

19   Mr. Guzman spent nearly three months wandering on foot, lost in Mexico. He ate

20   out of garbage cans, bathed in rivers, and slept outside without adequate shelter.

21   That Mr. Guzman survived is a result only of his spirit and will to live, and fortuity.

22   He suffered and continues to suffer grievous physical and psychological injury.

23        9.     Ms. Carbajal learned that her son had been illegally deported to

24   Tijuana on or about May 11, 2007. For nearly three months thereafter,

25   Ms. Carbajal spent most of her days in Tijuana and neighboring cities desperately

26   searching for her lost son. Ms. Carbajal lived in constant fear for Mr. Guzman's

27   life. This tragic experience has caused and continues to cause her excruciating

28   emotional and psychological suffering.

FIRST AMENDED COMPLAINT          2
CASE NO. CV08-01327 GHK (SSx)
sf-2546574

10.     The circumstances under which Mr. Guzman was illegally deported arose from a January 25, 2005 Memorandum of Understanding ("MOU") between DHS and the Los Angeles County Board of Supervisors. The MOU created a pilot project through which LASD personnel – described as "custody assistants" – were empowered to engage in certain federal immigration enforcement duties. Specifically, LASD custody assistants interviewed and processed inmates confined within the Los Angeles County jail system that LASD presumed or suspected of being unlawfully present in the United States to determine the inmates' immigration status and whether, in their judgment, the inmates were deportable. Custody assistants received only brief and inadequate training by ICE. Pursuant to the MOU, custody assistants were granted federal authority to refer undocumented inmates to ICE for deportation.

11.     ICE and/or LASD failed to undertake prudent efforts to train, supervise, or otherwise reasonably ensure that the custodial assistants interviewing and processing inmates were adequately trained and knowledgeable as to the complexities of immigration law. Specifically, ICE failed to ensure that custodial assistants understood how to ascertain and verify U.S. citizenship status. In addition, ICE agents and/or LASD officers failed to exercise reasonable or lawful efforts to ensure that processing of inmates as to immigration status occurred absent coercion or reliance upon invidious racial and ethnic biases and stereotypes. ICE and/or LASD also failed to develop adequate policies and procedures to ensure that those who are mentally ill or cognitively impaired are adequately protected, and that any waiver of rights made by these individuals is knowing, intelligent, and voluntary.

12.     ICE agents, acting in concert with LASD officers and personnel, illegally deported Mr. Guzman, notwithstanding the fact that law enforcement records to which LASD and ICE had ready access during Mr. Guzman's detention and interrogation correctly stated that Mr. Guzman was born in California and

1    contained his valid California drivers license number.  In addition, LASD medical

2    records for Mr. Guzman, to which LASD and ICE had reasonable access, showed

3    that Mr. Guzman was not capable of exercising a voluntary, knowing, and

4    intelligent waiver of his rights.  ICE and LASD personnel ignored these records

5    and/or did not undertake reasonable and diligent efforts to review them and

6    appreciate their meaning.

7         13.    Throughout the three-month ordeal in which Mr. Guzman was lost and

8    missing in Mexico, DHS officials and agents, including ICE agents, failed to

9    undertake reasonable and diligent efforts to mitigate the harm resulting from the

10   illegal deportation.  Despite being notified that they had deported a U.S. citizen,

11   Defendants acted with reckless disregard to the physical and/or emotional distress

12   of Mr. Guzman and Ms. Carbajal.  Federal officers and agents failed to make an

13   ongoing, good faith attempt to locate Mr. Guzman.

14                                    **PARTIES**

15   **I.    PLAINTIFFS**

16        14.    Plaintiff Peter Guzman is a native born United States citizen.  While

17   his birth certificate lists his name as "Pedro Guzman," Mr. Guzman uses the name

18   "Peter" in his daily life.  Mr. Guzman was born in Los Angeles, California, and

19   resided in Lancaster, California both before and after he was illegally deported.

20   Mr. Guzman was illegally deported to Mexico in May 2007 and was missing for

21   over 85 days.  He was detained by U.S. border patrol officers as he attempted to

22   cross the border near Calexico in early August 2007.  On or about August 7, 2007,

23   Mr. Guzman was returned to the custody of his family, only after efforts by his

24   family and counsel to secure his release from LASD custody.  He now resides with

25   his mother, Maria Carbajal, in Lancaster, California.

26        15.    Plaintiff Maria Carbajal is a lawful permanent resident alien who

27   resides in Lancaster, California.  Ms. Carbajal is Peter Guzman's mother.

28

## II.   DEFENDANTS

16.   Defendant United States of America is sued under the Federal Tort Claims Act for the acts of its employees and agencies.  The United States is implicated by and through the actions, policies, patterns, practices, and customs of DHS and/or ICE and its policy-makers, agents, and officers.

17.   Defendant Michael Chertoff is sued in his official capacity as the Secretary of DHS.  In this capacity, he maintains responsibility for the administration and enforcement of the nation's immigration and naturalization laws pursuant to sections 102 and 402 of the Homeland Security Act of 2002, 6 U.S.C. §§ 112 and 202, respectively, and section 102 of the Immigration and Nationality Act, 8 U.S.C. § 1103 (charging the Secretary of DHS with "administration and enforcement of . . . laws relating to the immigration and naturalization of aliens.").

18.   Defendant James T. Hayes, Jr. at all times mentioned herein was the Field Office Director for the Los Angeles District of ICE.  In that capacity, he was responsible for the enforcement of the immigration laws within this district. Following the filing of Plaintiffs' Complaint in February 2008, Defendant Hayes was promoted to Acting Director of ICE's Office of Detention and Removal.  He is sued in his individual capacity.

19.   Defendant Pilar Garcia is, and at all times mentioned herein was, an Immigration Enforcement Agent with ICE.  She is sued in her individual capacity.

20.   Defendant Chertoff, Defendant Hayes and Defendant Garcia are hereafter collectively referred to as "ICE Defendants."

21.   Defendant County of Los Angeles is the legal entity responsible for the acts and omissions of LASD, including the policies, patterns, practices, and customs relating to the detention of inmates, the selection of inmates for interrogation to determine their immigration status, and inmates' medical care.

22.   Defendant Leroy Baca is the Sheriff of Los Angeles County.  In this capacity, he is responsible for the administration of the Los Angeles County jail

1  system, including the supervision of officers who have been deputized to act as

2  immigration agents in the jail.  He is sued in his individual and official capacities.

3      23.    Defendant Timothy Cornell is the Captain of the Los Angeles County

4  Inmate Reception Center.  In this capacity, he is responsible for the administration

5  of the inmate reception center, including the supervision of LASD custodial

6  assistants, and was the immediate custodian of Mr. Guzman at the time he was

7  transferred to the custody of ICE.  He is sued in his individual and official

8  capacities.

9      24.    Defendant Sandra Figueras is, and at all times mentioned herein was, a

10  custody assistant with LASD.  She is sued in her individual and official capacities.

11      25.    Defendant County of Los Angeles, Defendant Baca, Defendant

12  Cornell and Defendant Figueras are hereafter collectively referred to as "LASD

13  Defendants."

14      26.    Defendants Doe ICE Agents 1–10, inclusive, are sued herein under

15  fictitious names because their true names, capacities, and/or degree of responsibility

16  for the acts alleged herein are unknown to Plaintiffs at this time.  When Plaintiffs

17  ascertain this information, they will amend this Complaint accordingly.

18      27.    Defendants Doe LASD Officers 1–10, inclusive, are sued herein under

19  fictitious names because their true names, capacities, and/or degree of responsibility

20  for the acts alleged herein are unknown to Plaintiffs at this time.  When Plaintiffs

21  ascertain this information, they will amend this Complaint accordingly.

22      28.    Plaintiffs are informed and believe, and thereon allege, that Doe ICE

23  Agents 1–10 and Doe LASD Officers 1-10, and each of them, are legally liable to

24  Plaintiffs in some part for the wrongful acts and omissions of which Plaintiffs

25  complain herein.

26      29.    Defendants acted under the color of law, in bad faith, and contrary to

27  established law and principles of constitutional and statutory law.

28

30.     Plaintiffs are informed and believe and thereon allege that each of the Defendants caused, and is liable for the unconstitutional and unlawful conduct and resulting injuries, by, among other things, personally participating in said conduct or acting jointly with others who did so; by authorizing, acquiescing, or setting in motion policies, plans, or actions that led to the unlawful conduct; by failing, or refusing with deliberate indifference, to maintain adequate supervision; and/or by ratifying the unlawful conduct taken by employees under their direction and control.  Defendants' actions were taken pursuant to policies, patterns, practices, customs, or usage of ICE and/or LASD.

## FACTUAL ALLEGATIONS

### I.     MR. GUZMAN'S BACKGROUND

31.     Mr. Guzman was born on September 25, 1977 in Los Angeles, California.  (Exhibit A [Birth Certificate of Mr. Guzman].)

32.     Mr. Guzman began attending elementary school in Los Angeles, California.  While he was still attending elementary school, his family moved to Lancaster, California.  Mr. Guzman grew up in Lancaster with his mother, Ms. Carbajal, and his six siblings.

33.     Although Mr. Guzman completed elementary school and attended high school through the eleventh grade, Mr. Guzman's reading comprehension and writing skills are severely limited.  During elementary school, Mr. Guzman was placed in special education classes.  He continues to struggle with basic reading and writing, visual processing, conceptualization skills, and memory.  While Mr. Guzman can speak both Spanish and English, his English language skills are significantly stronger.  Mr. Guzman continues to find it difficult to remember even basic information, such as his home telephone number.

34.     Mr. Guzman has lived with Maria Carbajal for virtually his entire life and has depended upon her for his basic care.

1    35.    Since leaving high school, Mr. Guzman has worked in construction for

2    several different employers.  For approximately one and one-half years before his

3    arrest, Mr. Guzman worked full-time laying and finishing cement for a single

4    construction company.

5    **II.    MR. GUZMAN'S INCARCERATION**

6    36.    On or about March 31, 2007, Mr. Guzman entered a private airport and

7    attempted to board an airplane.  He was arrested for a misdemeanor violation of

8    California Penal Code § 625(b), interfering with an aircraft, and for a violation of

9    California Vehicle Code § 10851(a), taking a vehicle without consent.  LASD

10   officers completed an incident report following Mr. Guzman's arrest.  The front

11   page of the incident report lists Mr. Guzman's valid California driver's license

12   number.  (Exhibit B [LASD Incident Report dated 3/31/06].)

13   37.    On March 31, 2007, following his arrest, Mr. Guzman was booked into

14   the Los Angeles County Jail.  During the booking process, Mr. Guzman was asked

15   a series of biographical questions, including a question regarding his place of birth.

16   Mr. Guzman responded that he was born in California.  The Booking and Property

17   Record obtained from the Los Angeles County Jail dated March 31, 2007 lists

18   Mr. Guzman's birthplace as "CA."  (Exhibit C [Los Angeles County Jail, Booking

19   and Property Records].)  The booking officer also noted Mr. Guzman's valid

20   California driver's license number in these records.

21   38.    On April 19, 2007, Mr. Guzman pled guilty to a single count of

22   vandalism under California Penal Code § 594(a).  The judge suspended imposition

23   of the sentence and placed Mr. Guzman on three years probation on the condition

24   that he serve 120 days in the county jail, less 30 days credit for good behavior and

25   time served.

26   39.    On or about April 5, 2007, while Mr. Guzman was incarcerated, LASD

27   personnel found him in his cell, unresponsive.  Mr. Guzman was taken by

28   ambulance to Los Angeles Community Medical Center ("LCMC").  Mr. Guzman

1    told medical personnel that he had fallen and hit his head.  He also told medical

2    personnel at LCMC that he was hearing voices that told him "bad things."  Medical

3    personnel at LCMC diagnosed Mr. Guzman with psychosis and prescribed

4    5 milligrams of Zyprexa, an anti-psychotic medication, with instructions to increase

5    the dosage to 10 milligrams as needed and/or tolerated.

6          40.    LASD medical personnel provided only four doses of Zyprexa to

7    Mr. Guzman before deciding to stop administering the medication to him.

8          41.    During his incarceration, Mr. Guzman informed LASD medical

9    personnel that he was hearing voices.  County medical records relating to

10   Mr. Guzman, which were compiled during his detention, documented

11   Mr. Guzman's impaired mental state.

12   **III.   THE DEPORTATION OF MR. GUZMAN**

13         42.    On or about January 25, 2005, ICE and LASD entered into an MOU.

14   The MOU was approved by the Los Angeles County Board of Supervisors.  The

15   MOU authorized LASD personnel to perform certain immigration enforcement

16   activities, including:  (1) interrogating individuals to determine if there is probable

17   cause for an immigration violation; (2) completing criminal alien processing,

18   including fingerprinting, photographing, and interviewing for ICE supervisor

19   review; (3) preparing immigration detainers; (4) preparing affidavits and taking

20   sworn statements; and (5) preparing Notice to Appear applications for signature of

21   an ICE officer.  According to the MOU, LASD personnel performing the above

22   tasks are to receive training from ICE officers.  In addition, the duties and actions of

23   LASD custodial assistants are to be supervised and directed by ICE agents.

24         43.    On or about April 26, 2007, Mr. Guzman was selected for

25   interrogation regarding his immigration status and then interrogated by Defendant

26   Sandra Figueras, a custodial assistant employed by LASD.

27         44.    Defendant Figueras selected Mr. Guzman for an interview solely based

28   on his perceived race and/or ethnicity.  She took this action pursuant to the policy,

FIRST AMENDED COMPLAINT                    9
CASE NO. CV08-01327 GHK (SSx)
sf-2546574

1  pattern, practice, custom, and usage established by LASD Defendants and/or ICE

2  Defendants.

3      45.    No reasonable basis existed to suspect or otherwise conclude that

4  Mr. Guzman was not a United States citizen.  Mr. Guzman was selected for

5  immigration questioning even though he had previously told prison officials that he

6  was born in California and even though LASD records reflected that he was born in

7  California and listed his valid California drivers license number.  (See Exhibit B

8  [Incident Report], Exhibit C [Los Angeles County Booking and Property Records],

9  Exhibit D [Excerpt from Los Angeles County Consolidated Criminal History dated

10  April 26, 2007].)

11      46.    Defendant Figueras interrogated Mr. Guzman regarding his

12  immigration status on April 26, 2007.  Defendant Figueras asked Mr. Guzman

13  where he was born.  Mr. Guzman indicated that he was born in California.

14  Defendant Figueras then asked Mr. Guzman where his parents were born.

15  Mr. Guzman indicated that his mother was born in Nayarit, Mexico.  Defendant

16  Figueras then told Mr. Guzman that he, too, must be from Mexico.  Again,

17  Mr. Guzman indicated that he was from California.  Mr. Guzman was then returned

18  to his cell.

19      47.    Despite LASD records showing Mr. Guzman's impaired mental state,

20  LASD Defendants failed to develop and/or implement adequate policies, practices,

21  procedures, and customs to ensure that those who are mentally ill or cognitively

22  impaired are adequately informed of their rights and protected from coercive

23  interrogation, and that any waiver of rights made by these individuals is knowing,

24  intelligent, and voluntary.

25      48.    Defendant Figueras prepared and signed Form I-213, Record of

26  Deportable/Inadmissible Alien, and Form I-247, Immigration Detainer.  In Form I-

27  213, Defendant Figueras represented that Mr. Guzman was born in Nayarit, Mexico

28  and was unlawfully present in the United States.

49.   On April 26, 2007, Defendant Figueras placed an immigration hold on Mr. Guzman.

50.   On or about May 7, 2007, LASD Defendants and Doe LASD Officers transferred physical custody of Mr. Guzman to ICE.

51.   On or about May 10, 2007, Defendant Pilar Garcia, an ICE agent, and/or Doe ICE Agents, interrogated Mr. Guzman regarding his immigration status. Mr. Guzman stated, in response to questioning by Defendant Garcia and/or Doe ICE Agents, that he was born in California.

52.   Following Mr. Guzman's responses, Defendant Garcia and/or Doe ICE Agents coerced Mr. Guzman to sign Form I-826: Notice of Rights and Request for Disposition ("Form I-826"). Form I-826, written entirely in Spanish, purportedly waived Mr. Guzman's legal rights to a removal deportation hearing and stated that he was a citizen of Mexico and that he agreed to be voluntarily deported to Mexico.

53.   Mr. Guzman could not read and did not understand the contents of Form I-826. He had no knowledge or understanding of what would occur if he signed Form I-826. Mr. Guzman received no assistance from Defendant Garcia, Doe ICE Agents, or anyone else in attempting to read and understand this form.

54.   A copy of a printout from Los Angeles County's Consolidated Criminal History System dated, April 26, 2007 and concerning Mr. Guzman's criminal history, was contained in the file ICE maintained regarding Mr. Guzman. This document clearly lists Mr. Guzman's birthplace as California. (Exhibit D [excerpt from Los Angeles County's Consolidated Criminal History System].)

55.   Even though (1) Mr. Guzman indicated to Defendant Figueras that he was born in California, (2) Mr. Guzman responded to questions during his initial processing by LASD by stating that he was born in California and LASD personnel recorded his responses in LASD records, and (3) LASD records list a valid drivers license number for Mr. Guzman, LASD Defendants and Doe LASD Officers failed to make any inquiry into Mr. Guzman's citizenship or otherwise verify his

1    citizenship in any way.  Although LASD contacted Mr. Guzman's family on at

2    least two occasions during the course of his detention, no attempt was made to

3    obtain Mr. Guzman's birth certificate or ask for any further verification of his place

4    of birth.

5         56.    Even though Mr. Guzman informed Defendant Garcia that he was born

6    in California, and records in ICE's possession reflect that Mr. Guzman was born in

7    California, ICE Defendants and Doe ICE Agents failed to make any inquiry into

8    Mr. Guzman's citizenship or otherwise verify his citizenship in any way.

9    Furthermore, ICE Defendants failed to review records in the possession of LASD

10   and ICE which clearly showed that Mr. Guzman was born in California.

11        57.    The actions of Defendant Figueras and Defendant Garcia were taken

12   pursuant to a policies, patterns, practices, or customs of LASD and/or ICE to:

13        •  select inmates to detain, interrogate, and deport based on their race

14           and/or ethnicity;

15        •  unreasonably and unlawfully deny inmates who suffer from mental

16           illness and/or cognitive impairments adequate assistance to

17           (1) understand the nature of their rights during an interrogation,

18           (2) prevent coercive interrogation tactics, and (3) ensure that any

19           waiver of rights made by these individuals is knowing, intelligent, and

20           voluntary; and/or

21        •  unreasonably and unlawfully detain, interrogate, transport, and deport

22           individuals in violation of due process.

23        58.    Prior to May 11, 2007, these policies, patterns, practices, and customs

24   had been known to supervisory and policy-making officers throughout LASD and

25   ICE.  Despite their knowledge of these illegal policies, patterns, practices, and

26   customs, the supervisory and policy-making officers have taken no effective steps

27   to terminate the policies, patterns, practices, and customs; have not effectively

28   disciplined or otherwise properly supervised the individual officers who engaged in

1    the policies, patterns, practices, and customs; have not effectively trained LASD
2    officers and ICE agents with regard to the proper constitutional and statutory limits
3    of the exercise of their authority; and have sanctioned the policies, patterns,
4    practices, and customs through their deliberate or grossly negligent indifference to
5    the effect of these policies, patterns, practices, and customs on other individuals in
6    LASD and/or ICE custody.  These supervisory and policy-making officers have
7    taken no effective action to ensure that (1) the selection of inmates to detain,
8    interrogate, and deport is not unreasonably and unlawfully based on their race
9    and/or ethnicity; (2) individuals who suffer from mental illness and/or cognitive
10   impairments receive adequate assistance to understand the nature of their rights
11   during an interrogation, prevent coercive interrogation tactics, and ensure that any
12   waiver of rights made by these individuals is knowing, intelligent, and voluntary;
13   and (3) individuals are not unreasonably and unlawfully interrogated, detained,
14   transported, and deported in violation of due process.

15        59.    Mr. Guzman's medical records show that he was unable to execute a
16   knowing, voluntary, and intelligent waiver of his legal rights so as to request a
17   voluntary departure to Mexico.  The failure to examine and appreciate the
18   significance of LASD medical records reflects ICE's and LASD's deliberate
19   indifference to Mr. Guzman's rights and well-being and is a further example of
20   intentional racial discrimination by these governmental entities.

21        60.    ICE and LASD failed to undertake a reasonable and diligent inquiry
22   into the citizenship of Mr. Guzman based upon readily available documentation,
23   including the LASD's own records and Mr. Guzman's documented responses to
24   questioning.

25        61.    As a direct and proximate result of the acts and omissions made by
26   Defendants and the policies, patterns, practices, and customs utilized by
27   Defendants, Mr. Guzman was placed by Doe ICE Agents on a bus to Tijuana on
28

1    May 11, 2007.  When the bus reached Tijuana, Mr. Guzman was forced to

2    disembark.

3    **IV.    MR. GUZMAN MISSING IN MEXICO**

4        62.    Mr. Guzman was missing in Mexico for over 85 days.

5        63.    When he was told to exit the bus in Tijuana, Mr. Guzman had only

6    about three dollars in his possession and the clothes on his back.  He had no cellular

7    phone and his wallet and California drivers license had not been returned to him by

8    either ICE Defendants or LASD Defendants.  Mr. Guzman survived by eating food

9    out of trash cans.  On occasion, he would find aluminum cans and exchange them

10   for a small amount of change.  With that change he was able to purchase tortillas

11   with mayonnaise.

12       64.    Mr. Guzman was in constant fear for his life and safety.  He kept

13   moving to avoid danger.  During his time in Mexico, he walked hundreds of miles –

14   first south to Ensenada, then back to Tijuana, and finally east to Calexico.

15       65.    Mr. Guzman slept during the day and walked at night because it was

16   extremely hot during the day.  He slept outside with no protection from the

17   elements.  He bathed in rivers and canals.

18   **V.    THE SEARCH FOR MR. GUZMAN**

19       66.    On May 11, 2007, Mr. Guzman placed a single telephone call to the

20   home of his eldest brother, Juan Carlos Chabes.  Victoria Chabes, Mr. Guzman's

21   sister-in-law, answered the telephone.  Mr. Guzman was confused and disoriented.

22   At one point during the call, he asked a bystander, "Where am I?"  Ms. Chabes

23   learned that Mr. Guzman had been placed on a bus and sent to Tijuana.

24   Mr. Guzman told Ms. Chabes that he had no money or clothes.  The call lasted no

25   more than one minute and was made from a borrowed cellular phone.

26       67.    Mr. Guzman cannot remember his own home telephone number or the

27   telephone numbers of any of his family members.  When he was deported,

28   Mr. Guzman had a slip of paper with him that contained his brother's telephone

FIRST AMENDED COMPLAINT                              14
CASE NO. CV08-01327 GHK (SSx)
sf-2546574

1  number. At some point after the May 11, 2007 telephone call, Mr. Guzman lost the

2  slip of paper with his brother's telephone number and was unable to call home

3  again.

4       68.   Ms. Chabes immediately contacted Ms. Carbajal, Mr. Guzman's

5  mother, by telephone and reported her conversation with Mr. Guzman.

6  Ms. Carbajal was anguished and extremely distressed at learning that her son was

7  alone in Mexico. She feared for his safety and well-being because Mr. Guzman

8  lived in her home and depended upon her for his basic care.

9       69.   Ms. Chabes then called her husband, Mr. Guzman's eldest brother,

10  Mr. Juan Carlos Chabes.

11       70.   On that same day, May 11, 2007, Ms. Chabes called LASD to report

12  the telephone call from Mr. Guzman and to get information regarding

13  Mr. Guzman's deportation. The representative at LASD informed Ms. Chabes that

14  they had no record of an individual with Mr. Guzman's name and birth date.

15  LASD suggested that Ms. Chabes call the INS (now known as ICE) and provided

16  her with their telephone number. Ms. Chabes then called ICE and explained what

17  had happened to Mr. Guzman. ICE advised Ms. Chabes that there was no

18  individual with Mr. Guzman's name and date of birth in their database.

19       71.   On May 11, 2007, after learning the news of Mr. Guzman's

20  deportation, Ms. Carbajal went straight to her home from Los Angeles, where she

21  was running errands. She collected Mr. Guzman's birth certificate and got in a car

22  with her son, Michael Guzman. Michael Guzman drove her to Tijuana to

23  immediately begin their search for Mr. Guzman.

24       72.   On May 12, 2007, Michael Guzman had to return home to work. He

25  left his mother searching in Tijuana for Mr. Guzman. Because she had no car,

26  Ms. Carbajal had to search on foot and use public transportation.

27       73.   Ms. Carbajal was only able to afford a hotel room for three nights.

28  After that, Ms. Carbajal received assistance from the owners of a local fruit

1  warehouse.  They allowed her to sleep on the floor in a room in the warehouse in

2  exchange for cooking for the warehouse workers.  The room had no windows and

3  was approximately the size of a closet.

4      74.   Ms. Carbajal temporarily left her job as a cook at Jack in the Box to

5  devote all of her time to finding her son.  Typically, Ms. Carbajal started her search

6  early in the morning, around 6:00 a.m., and would not return to the warehouse until

7  late at night.

8      75.   In May 2007, Mr. Chabes and Ms. Carbajal went to the U.S. Consulate

9  in Tijuana, Mexico to ask for help in searching for Mr. Guzman.  The consulate

10  informed gave them no assistance.

11      76.   Over the next three months, Maria Carbajal, Juan Chabes, Victoria

12  Chabes, Michael Guzman and other members of Mr. Guzman's family searched in

13  Tijuana and adjoining cities for Mr. Guzman.  Ms. Carbajal spent most of this time

14  in Tijuana.  Ms. Carbajal followed-up on information and tips received from people

15  who believed that they had seen Mr. Guzman.  Ms. Carbajal, her sons, and other

16  family members printed thousands of flyers with Mr. Guzman's picture and

17  physical description, and distributed them throughout the city.  Mr. Guzman's

18  family printed t-shirts with his image in hopes that someone might recognize him

19  and contact them.

20      77.   Ms. Carbajal searched hospitals, jails, shelters, commercial truck stops,

21  police stations, river beds, canals, and alleys.  She walked through the most

22  dangerous neighborhoods in Tijuana.  Ms. Carbajal spoke to anyone who would

23  listen to her story in the hope that they might possess some information about her

24  missing son.

25      78.   Ms. Carbajal also searched Tijuana's morgue, SEMEFO.  SEMEFO

26  maintains a website where they post photographs and descriptions of unidentified

27  bodies found in and near Tijuana.  (*See* http://periciales.pgjebc.gob.mx/.)  Ms.

28  Carbajal viewed these photos regularly.  Ms. Carbajal also went to the morgue on

FIRST AMENDED COMPLAINT                    16
CASE NO. CV08-01327 GHK (SSx)
sf-2546574

1 | several occasions after receiving telephone calls informing her that a body matching
2 | Mr. Guzman's description had been recovered.

3 |       79.    Ms. Carbajal depleted her limited savings quickly.  After over a month
4 | of searching, she had to return to her job at Jack in the Box a few nights a week in
5 | order to provide for her youngest children.  Every day that she did not have to
6 | work, Ms. Carbajal searched for her missing son.

## VI.   DEFENDANTS FAILED TO MEANINGFULLY ASSIST IN THE SEARCH FOR MR. GUZMAN

9 |       80.    Officers and agents of the United States government failed to take
10 | adequate steps to mitigate the harm and suffering caused by Mr. Guzman's illegal
11 | deportation.  Until a habeas action was filed in this Court, *Guzman v. Chertoff, et*
12 | *al., Case No. CV-07-3746 GHK (SS)*, no assistance in helping to find Mr. Guzman
13 | was forthcoming despite pleas for help from the family and their legal counsel, who
14 | had repeatedly furnished the government with copies of Mr. Guzman's birth
15 | certificate.

16 |       81.    Prior to filing the habeas action, counsel for the family informed
17 | Defendant Hayes about Mr. Guzman's deportation.  Defendant Hayes stated that
18 | upon proof of a United States birth certificate, ICE would amend its records as to
19 | the citizenship of Mr. Guzman, but ICE would take no additional steps to assist in
20 | finding and returning him to the United States.

21 |       82.    During the course of the habeas action, counsel for DHS represented to
22 | the Court that alerts and flyers were being sent to law enforcement and consulates.
23 | Although these alerts may have been circulated at some point to law enforcement,
24 | including the border patrol, Mr. Guzman was not detained by border officers as a
25 | result of these alerts.

## VII.  MR. GUZMAN RETURNS TO THE UNITED STATES

27 |       83.    Mr. Guzman was located in August 2007 attempting to enter the
28 | United States near Calexico and was returned to LASD custody.  Based on

1   information and belief, Mr. Guzman was detained by border guards because there

2   was a warrant issued for his arrest after he failed to appear at a probation hearing

3   following Defendants' unlawful deportation of him to Mexico.

4      84.   When he appeared at the border, Mr. Guzman was traumatized. His

5   condition was so poor when he first arrived back in the United States that LASD

6   medical personnel believed that he was mentally retarded and mute.

7      85.   When Mr. Guzman was returned to his family on August 7, 2007, he

8   was unable to speak more than a word or two. His body shuttered intermittently

9   and he was exceedingly withdrawn.

10     86.   As a direct and foreseeable consequence of his illegal deportation,

11  Mr. Guzman suffered and continues to suffer grievous physical and psychological

12  injury.

13     87.   As direct and foreseeable consequence of the illegal deportation of her

14  son, Ms. Carbajal suffered and continues to suffer grievous psychological injury

15  and emotional distress.

16     88.   As a further direct and proximate result of the injuries alleged herein,

17  Plaintiffs have incurred, and will continue to incur, medical expenses and lost

18  earnings.

19     89.   Defendants' conduct was willful, wanton, malicious, oppressive, and

20  in bad faith. Each of these defendants also acted with reckless or callous disregard

21  for Plaintiffs' and intentionally violated federal and law. Plaintiffs are thus entitled

22  to an award of punitive damages against the individually named ICE and LASD

23  Defendants, Doe ICE Agents 1-10, and Doe LASD Officers 1-10.

24

25

26

27

28

# CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### (Fifth Amendment to the U.S. Constitution)
### (Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics)
### (Against Defendant Hayes, Defendant Garcia and Doe ICE Agents 1–10)

90.     Plaintiffs reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 89 of this Complaint.

91.     By illegally, arbitrarily, and capriciously deporting Mr. Guzman, a United States citizen, to Mexico, ICE Defendants deprived Mr. Guzman of his constitutional right to liberty without due process of law in violation of the Fifth Amendment to the United States Constitution.  Defendants deported or caused Mr. Guzman to be deported without reasonable basis or lawful authority.

92.     ICE Defendants' conduct violated clearly established constitutional or other rights of which ICE Defendants knew, or of which a reasonable public official should have known.

93.     ICE Defendants' actions, omissions, policies, patterns, practices, and customs, as complained of herein, were intentional and reckless and demonstrate a callous disregard for, or deliberate indifference to, Mr. Guzman's personal safety, security, freedom, and civil and constitutional rights.

94.     These violations are compensable under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971).  As a direct and proximate result of the unlawful actions of these Defendants, Mr. Guzman has suffered economic damages and significant physical and emotional harm.

## SECOND CLAIM FOR RELIEF

### (Fifth Amendment to the U.S. Constitution)
### (*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*)
### (Against Defendant Hayes, Defendant Garcia and DOE ICE Agents 1–10)

95.     Plaintiffs reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 89 of this Complaint.

96.    By illegally deporting Mr. Guzman to Mexico, ICE Defendants deliberately and unconstitutionally discriminated against Mr. Guzman on the basis of his race and ethnicity so as to deny him equal protection of the law in violation of the Fifth Amendment to the United States Constitution.

97.    ICE Defendants' conduct violated clearly established constitutional or other rights of which ICE Defendants knew, or of which a reasonable public official should have known.

98.    ICE Defendants' actions, omissions, policies, patterns, practices, and customs, as complained of herein, were intentional and reckless and demonstrate a callous disregard for, or deliberate indifference to, Mr. Guzman's personal safety, security, freedom, and civil and constitutional rights.

99.    These violations are compensable under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971).  As a direct and proximate result of the unlawful actions of these Defendants, Mr. Guzman has suffered economic damages and significant physical and emotional harm.

## THIRD CLAIM FOR RELIEF

**(First and Fifth Amendments to the U.S. Constitution)**
***(Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics)***
**(Against Defendant Hayes, Defendant Garcia and Doe ICE Agents 1–10)**

100.    Plaintiffs reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 89 of this Complaint.

101.    By illegally deporting Mr. Guzman to Mexico, ICE Defendants deprived Ms. Carbajal of the companionship and society of her dependent son in violation of the First and Fifth Amendments of the United States Constitution.

102.    Ms. Carbajal has cared for Mr. Guzman for his entire life.  ICE Defendants' reckless, intentional, and deliberate acts and omissions forced Ms. Carbajal to travel to Mexico and suffer physical, emotional, and financial innumerable hardships searching for her son.

1    103.   ICE Defendants' conduct violated clearly established constitutional or

2    other rights of which ICE Defendants knew, or of which a reasonable public official

3    should have known.

4    104.   ICE Defendants' actions, omissions, policies, patterns, practices, and

5    customs, as complained of herein, were intentional and reckless and demonstrate a

6    callous disregard for, or deliberate indifference to, Ms. Carbajal's personal safety,

7    security, freedom, and civil and constitutional rights.

8    105.   These violations are compensable under *Bivens v. Six Unknown*

9    *Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971).  As a direct

10   and proximate result of the unlawful actions of these Defendants, Ms. Carbajal has

11   suffered economic damages and significant physical and emotional harm.

12                          **FOURTH CLAIM FOR RELIEF**

13                  **(Fourth Amendment to the U.S. Constitution)**
                 **(*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*)**
14          **(Against Defendant Hayes, Defendant Garcia and Doe ICE Agents 1–10)**

15   106.   Plaintiffs reallege and incorporate herein by reference each and every

16   allegation contained in paragraphs 1 through 89 of this Complaint.

17   107.   ICE Defendants detained Mr. Guzman in violation of his constitutional

18   right to be free from unreasonable seizures, as guaranteed by the Fourth

19   Amendment to the United States Constitution.

20   108.   ICE Defendants' conduct violated clearly established constitutional or

21   other rights of which ICE Defendants knew, or of which a reasonable public official

22   should have known.

23   109.   ICE Defendants' actions, omissions, policies, patterns, practices, and

24   customs, as complained of herein, were intentional and reckless and demonstrate a

25   callous disregard for, or deliberate indifference to, Mr. Guzman's personal safety,

26   security, freedom, and civil and constitutional rights.

27   110.   These violations are compensable under *Bivens v. Six Unknown*

28   *Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971).  As a direct

FIRST AMENDED COMPLAINT                        21
CASE NO. CV08-01327 GHK (SSx)
sf-2546574

1   and proximate result of the unlawful actions of these Defendants, Mr. Guzman has

2   suffered economic damages and significant physical and emotional harm.

3   ### FIFTH CLAIM FOR RELIEF

4   **(False Imprisonment)**
    **(Federal Torts Claim Act)**
5   **(Against Defendant United States of America)**

6       111.   Plaintiffs reallege and incorporate herein by reference each and every

7   allegation contained in paragraphs 1 through 89 of this Complaint.

8       112.   ICE Defendants intentionally and unlawfully deprived Mr. Guzman of

9   his liberty by (1) obtaining custody of Mr. Guzman from LASD, (2) holding

10  Mr. Guzman, a United States citizen, in ICE custody for an appreciable period of

11  time, and (3) physically expelling Mr. Guzman from the national borders of the

12  United States.  Mr. Guzman never consented to ICE's arrest, detention, or

13  deportation of him.

14      113.   As a direct and proximate result of ICE Defendants' conduct,

15  Mr. Guzman has suffered and continues to suffer damages in an amount to be

16  proven at trial.

17  ### SIXTH CLAIM FOR RELIEF

18  **(Negligence)**
    **(Federal Torts Claim Act)**
19  **(Against Defendant United States of America)**

20      114.   Plaintiffs reallege and incorporate herein by reference each and every

21  allegation contained in paragraphs 1 through 89 of this Complaint.

22      115.   ICE Defendants breached their duty of reasonable care by negligently

23  acting or failing to act in such a way that resulted in Mr. Guzman's wrongful

24  detention and deportation by ICE, which these defendants knew or should have

25  known posed a substantial risk of grave harm to Mr. Guzman.

26      116.   ICE Defendants were negligent in performing their duties and failed,

27  neglected and/or refused to properly and fully discharge their responsibilities by,

28  among other things:

1      • Failing to review readily available documentation provided to ICE by
2         LASD, which stated that Mr. Guzman was born in California;
3      • Failing to investigate Mr. Guzman's claims that he was born in
4         California;
5      • Coercing Mr. Guzman to sign Form I-826;
6      • Failing to provide Mr. Guzman, who suffers from a mental illness
7         and/or mental deficiencies, with assistance to (1) understand his rights,
8         (2) read and understand Form I-826, and (3) protect him from coercive
9         interrogation tactics;
10     • Creating and/or sanctioning policies, patterns, practices, and customs
11        of selecting inmates to detain, interrogate, and deport based on their
12        race and/or ethnicity;
13     • Failing to adequately train and supervise personnel performing
14        immigrations duties; and
15     • Holding and deporting a United States citizen.

16     117.   As a direct and proximate result of ICE Defendants' conduct,
17  Mr. Guzman and Ms. Carbajal have suffered and continue to suffer damages in an
18  amount to be proven at trial.

19                  **SEVENTH CLAIM FOR RELIEF**
20              **(Intentional Infliction of Emotional Distress)**
                      **(Federal Torts Claim Act)**
21            **(Against Defendant United States of America)**

22     118.   Plaintiffs reallege and incorporate herein by reference each and every
23  allegation contained in paragraphs 1 through 89 of this Complaint.

24     119.   ICE Defendants' willful acts constitute outrageous conduct insofar as
25  they were intended to cause Mr. Guzman to be held in ICE custody, interrogated,
26  and expelled from the national borders of the United States.

27

28

1    120.   ICE Defendants intended to cause Mr. Guzman emotional distress,

2    and/or acted in reckless disregard of the likelihood of causing Mr. Guzman

3    emotional distress, in committing these acts.

4    121.   As a direct and proximate result of ICE Defendants' acts, Mr. Guzman

5    suffered and continues to suffer severe mental anguish and emotional and physical

6    distress.

7    122.   Mr. Guzman has incurred and continues to incur medical expenses and

8    other damages in an amount to be proven at trial.

9    **EIGHTH CLAIM FOR RELIEF**

10   **(Fifth and Fourteenth Amendments to the United States Constitution)**
     **(42 U.S.C. § 1983)**

11   **(Against LASD Defendants and Doe LASD Officers 1–10)**

12   123.   Plaintiffs reallege and incorporate herein by reference each and every

13   allegation contained in paragraphs 1 through 89 of this Complaint.

14   124.   LASD Defendants deprived Mr. Guzman of his constitutional right to

15   liberty and deprived him of this liberty without due process of law as guaranteed by

16   the Fifth and Fourteenth Amendments to the United States Constitution by causing

17   and/or participating in the illegal, arbitrary, and capricious deportation of

18   Mr. Guzman, a United States citizen, to Mexico.  Defendants caused and/or

19   participated in Mr. Guzman's deportation without reasonable basis or lawful

20   authority.

21   125.   The conduct of Defendants violated clearly established constitutional

22   or other rights, of which Defendants knew, or of which a reasonable public official

23   should have known.

24   126.   The actions, omissions, policies, patterns, practices and customs of

25   these Defendants, complained of herein, were intentional, reckless, and show a

26   callous disregard for, or deliberate indifference to Mr. Guzman's personal safety,

27   security, freedom, and civil and constitutional rights.

28

127.   These violations are compensable pursuant to U.S.C. § 1983.  As a direct and proximate result of these Defendants' conduct, Mr. Guzman has suffered economic damages and significant physical and emotional harm.

### NINTH CLAIM FOR RELIEF

**(Fourteenth Amendment to the United States Constitution)**
**(42 U.S.C. § 1983)**
**(Against LASD Defendants and Doe LASD Officers 1–10)**

128.   Plaintiffs reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 89 of this Complaint.

129.   LASD Defendants deliberately and unconstitutionally discriminated against Mr. Guzman on the basis of his race and ethnicity so as to deny him equal protection of the law as guaranteed by the Fourteenth Amendment to the United States Constitution and his liberty by causing or participating in the illegal deportation of Mr. Guzman.

130.   The conduct of these Defendants violated clearly established constitutional or other rights, of which Defendants knew, or of which a reasonable public official should have known.

131.   The acts, omissions, policies, patterns, practices, and customs of these Defendants complained of herein were intentional, reckless, and show a callous disregard for, or deliberate indifference to Mr. Guzman's personal safety, security, freedom, and civil and constitutional rights.

132.   These violations are compensable pursuant to U.S.C. § 1983.  As a direct and proximate result of these Defendants' conduct, Mr. Guzman has suffered economic damages and significant physical and emotional harm.

### TENTH CLAIM FOR RELIEF

**(First and Fourteenth Amendments to the United States Constitution)**
**(42 U.S.C. § 1983)**
**(Against LASD Defendants and Doe LASD Officers 1–10)**

133.   Plaintiffs reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 89 of this Complaint.

1    134.   LASD Defendants caused or participated in the unlawful deportation

2    of Mr. Guzman, the dependant son of Ms. Maria Carbajal.

3    135.   As a direct and proximate result of LASD Defendants' acts, omissions,

4    policies, patterns, practices and customs, Ms. Carbajal was deprived of the

5    companionship and society of her son in violation of her constitutional rights under

6    the First and Fourteenth Amendments of the United States Constitution.

7    136.   The conduct of Defendants violated clearly established constitutional

8    or other rights, of which Defendants knew, or of which a reasonable public official

9    should have known.

10    137.   The actions and omissions of these Defendants complained of herein

11    were intentional, reckless, and show a callous disregard for, or deliberate

12    indifference to Plaintiffs' personal safety, security, freedom, and civil and

13    constitutional rights.

14    138.   These violations are compensable pursuant to U.S.C. § 1983.  As a

15    direct and proximate result of Defendants' conduct, Ms. Carbajal has suffered

16    economic damages and significant physical and emotional harm.

17    **ELEVENTH CLAIM FOR RELIEF**

18    **(False Arrest and Imprisonment)**
     **(California Torts Claim Act)**
19    **(Against LASD Defendants and Doe LASD Officers 1–10)**

20    139.   Plaintiffs reallege and incorporate herein by reference each and every

21    allegation contained in paragraphs 1 through 89 of this Complaint.

22    140.   LASD Defendants intentionally and unlawfully deprived Mr. Guzman

23    of his liberty by (1) placing him on an Immigration Hold without a legal basis to do

24    so and (2) physically turning over custody of Mr. Guzman to ICE.  Mr. Guzman

25    never consented to the immigration hold or detention by ICE.

26    141.   As a direct and proximate result of LASD defendants' conduct,

27    Mr. Guzman has suffered and continue to suffer damages in an amount to be proven

28    at trial.

FIRST AMENDED COMPLAINT                    26
CASE NO. CV08-01327 GHK (SSx)
sf-2546574

# TWELFTH CLAIM FOR RELIEF

**(Negligence)**
**(California Torts Claim Act)**
**(Against LASD Defendants and Doe LASD Officers 1–10)**

142.   Plaintiffs reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 89 of this Complaint.

143.   LASD Defendants breached their duty of reasonable care by negligently acting or omitting to act in such a way that resulted in Mr. Guzman's wrongful detention and deportation by ICE, which these Defendants knew or should have known posed a substantial risk of grave harm to Mr. Guzman.

144.   LASD Defendants were negligent in performing their duties and failed, neglected and/or refused to properly and fully discharge their responsibilities by, among other things:

- Failing to review readily available documentation maintained by LASD that stated Mr. Guzman was born in California and listing his valid California driver's license number;

- Failing to investigate Mr. Guzman's claims that he was born in California;

- Selecting Mr. Guzman for immigration questioning based on his race an/or ethnicity;

- Failing to establish and/or implement adequate procedures to ensure that Mr. Guzman, an inmate with a mental illness and/or disabilities, understood his rights and was protected from coercive interrogation tactics;

- Establishing and/or sanctioning policies, patterns, practices, and customs of selecting inmates to interrogate, detain on ICE holds and transfer to ICE custody based on their race and/or ethnicity;

- Failing to adequately train and supervise LASD custodial assistants; and

- Transferring custody of Mr. Guzman, a United States born citizen, to ICE.

145.   As a direct and proximate result of LASD Defendants' conduct, Plaintiffs have suffered and continue to suffer damages in an amount to be proven at trial.

## THIRTEENTH CLAIM FOR RELIEF

### (Intentional Infliction of Emotional Distress)
### (California Torts Claim Act)
### (Against LASD Defendants and Doe LASD Officers 1–10)

146.   Plaintiffs reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 89 of this Complaint.

147.   LASD Defendants' willful acts constitute outrageous conduct insofar as they were intended to cause Mr. Guzman to be selected for questioning because of his race and/or ethnicity, be placed on an immigration hold and be transferred to ICE custody.

148.   LASD Defendants intended to cause Mr. Guzman emotional distress, and/or acted in reckless disregard of the probability of causing Mr. Guzman emotional distress in committing these acts.

149.   As a direct and proximate result of the actions of LASD Defendants, Mr. Guzman suffered and continues to suffer economic damages, severe mental anguish, and emotional and physical distress.

## FOURTEENTH CLAIM FOR RELIEF

### (Declaratory Relief)
### (Against ICE Defendants and LASD Defendants)

150.   Plaintiffs reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 89 of this Complaint.

151.   A controversy presently exists between Plaintiffs and Defendants in that Defendants deny that their acts, omissions, policies, patterns, practices, and customs unconstitutionally violated (1) Mr. Guzman's liberty interests protected by

1  the Due Process Clause of the Fifth Amendment to the United States Constitution

2  and (2) Mr. Guzman's right to equal protection of the laws protected by the Fifth

3  and Fourteenth Amendments to the United States Constitution.

4      152.   The program created by the MOU between ICE and the County of Los

5  Angeles to empower LASD custodial assistants to perform certain immigration

6  functions, as it is currently implemented by ICE and LASD, is unconstitutional.

7      153.   Accordingly, Plaintiffs seek injunctive and declaratory relief as prayed

8  for below.

9                          **PRAYER FOR RELIEF**

10      WHEREFORE, each Plaintiff prays for judgment against all Defendants, and

11  each of them, as follows:

12      1.   For general damages against the United States, ICE Defendants, LASD

13  Defendants, Doe ICE Agents 1-10, and Doe LASD Officers 1-10, jointly and

14  severally, in an amount to be proven at trial;

15      2.   For special damages against the United States, ICE Defendants, LASD

16  Defendants, Doe ICE Agents 1-10, and Doe LASD Officers 1-10, jointly and

17  severally, in an amount to be proven at trial;

18      3.   For punitive and exemplary damages against the individual ICE

19  Defendants, LASD Defendants, Doe ICE Agents 1-10, and Doe LASD Officers,

20  jointly and severally in an amount to be proven at trial

21      4.   For reasonable costs, expenses, and attorneys' fees pursuant to 42

22  U.S.C. § 1988 and any other applicable law;

23      5.   For the Court to declare the program created by the MOU between

24  ICE and the County of Los Angeles to empower LASD custodial assistants to

25  perform certain immigration functions, as currently implemented through the acts,

26  policies, patterns, practices, and customs of ICE and LASD, violative of the Fourth,

27  Fifth, and Fourteenth Amendments of the United States Constitution and other

28  applicable federal and state law;

FIRST AMENDED COMPLAINT
CASE NO. CV08-01327 GHK (SSx)
sf-2546574                                      29

1   6.   For injunctive relief that the Court deems just and proper; and

2   7.   For such other relief as the Court deems just and proper.

3   **DEMAND FOR JURY TRIAL**

4   Plaintiffs demand a trial by jury on any and all issues triable by a jury.

5

6   Dated:   July 21, 2008                   JAMES J. BROSNAHAN
                                              BRIAN J. MARTINEZ
7                                             FRANCHESCA C. HERRERA
                                              MORRISON & FOERSTER LLP

8

9                                             By: _James Brosnaha_____

10                                                James J. Brosnahan
                                                  Attorneys for Plaintiffs
11

12  Dated:   July 21, 2008                   MARK D. ROSENBAUM
                                             CATHERINE E. LHAMON
13                                            AHILAN T. ARULANANTHAM
                                             MELINDA BIRD
14                                            ACLU FOUNDATION OF SOUTHERN
15                                                CALIFORNIA

16

17                                            By: _Mark Rosenba_____

18                                                Mark Rosenbaum
                                                  Attorneys for Plaintiffs

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED COMPLAINT
CASE NO. CV08-01327 GHK (SSx)
sf-2546574

30

# EXHIBIT A



**STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES REGISTRAR-RECORDER/COUNTY CLERK**

**CERTIFIED ABSTRACT OF BIRTH**

NAME: PEDRO GUZMAN

DATE OF BIRTH: SEPTEMBER 25, 1977          SEX: MALE

COUNTY OF BIRTH: LOS ANGELES

BIRTH SURNAME OF MOTHER: CARBAJAL

DATE FILED: DECEMBER 1977

DATE ISSUED: NOVEMBER 22, 2000

LOCAL REGISTRATION NUMBER: 0090849

This certified document is a true abstract of the official record filed with the Registrar-Recorder.

CONNY B. McCORMACK
REGISTRAR-RECORDER/COUNTY CLERK

19-080643

# EXHIBIT B

# IN CUSTODY

COUNTY OF LOS ANGELES SHERIFF'S DEPARTMENT
**INCIDENT REPORT**                    DATE 03-31-07      PAGE 1 OF 7

A TRADITION OF SERVICE

**ACTION:** ☒ ACTIVE ☐ NON-CRIMINAL ☐ INACTIVE ☐ PENDING   # OF ADULT ARRESTS: 1   # OF SUBJECT DETENTIONS: Ø   URN # 4 07 08078 1183 339

RETENTION | YEAR | SEQUENTIAL | REPORTING DISTRICT | STAT CODE

CLASSIFICATION 1 / LEVEL / STAT CODE: **REASONABLE CAUSE** TAKING A VEHICLE WITHOUT CONSENT 10851(a) C.V.C. /F/339
SEX OFFENSE VICTIM INFO? ☐ YES ☒ NO

CLASSIFICATION 2 / LEVEL / STAT CODE: INTERFERING WITH AIRCRAFT 625b(a) P.C. /M/399
DOMESTIC VIOLENCE ☐ NON-PERSONAL (SPOUSE ETC) ☐ PERSONAL (PARENT, FELLOW ETC)

DATE, TIME, DAY OF OCCURRENCE: 03-31-07, 1705 HOURS, SATURDAY
PRINTS REQUESTED ☐ BY: ___ TIME ___ COMPLETED ☐
INJURY ☐ Major ☐ Minor ☐ None

# OR LOCATION OF OCCURRENCE: 4555 WEST AVE G   LANCASTER   BUS. NAME "FOX FIELD"
☐ NON-CRIMINAL

---

**CODE: V - VICTIM · W - WITNESS · I - INFORMANT · R - REPORTING PARTY · P - PARTY**

| CODE | # | of | LNAME | FNAME | MNAME | SEX | RACE | ETHNIC ORIGIN | DOB | Age |
|------|---|----|-------|-------|-------|-----|------|---------------|-----|-----|
| I | 1 | 1 | FOX | MIKE | NMN | M | W | | 04-01-66 | 40 |

RES. ADDR: ASSISTANT AIRPORT MANAGER
VICTIM OF OFFENSE(S) (CLASSIFICATION #): RES. PHONE (Area Code):
4555 WEST AVE G   LANCASTER   CITY   93534 ZIP
ENGLISH SPEAKING ☒ YES ☐ NO   BUS. PHONE (Area Code) 661-940-1709   Day Phone

| CODE | # | of | LNAME | FNAME | MNAME | SEX | RACE | ETHNIC ORIGIN | DOB | Age |
|------|---|----|-------|-------|-------|-----|------|---------------|-----|-----|
| V | 1 | 2 | FERULLO | KENNY | NMN | M | W | | 06-07-79 | |

RES. ADDR: "NET JETS" PILOT
VICTIM OF OFFENSE(S) (CLASSIFICATION #): 2
4111 BRIDGEWAY AVE   COLUMBUS OH   43219
ENGLISH SPEAKING ☒ YES ☐ NO   BUS. PHONE (Area Code) 614-239-5500

| CODE | # | of | LNAME | FNAME | MNAME | SEX | RACE | ETHNIC ORIGIN | DOB | Age |
|------|---|----|-------|-------|-------|-----|------|---------------|-----|-----|
| V | 2 | 2 | CROOKS | KENT | A | M | W | | 09-24-77 | 29 |

RES. ADDR: "NET JETS" PILOT
VICTIM OF OFFENSE(S) (CLASSIFICATION #): 2
4111 BRIDGEWAY AVE   COLUMBUS OH   43219
ENGLISH SPEAKING ☒ YES ☐ NO   BUS. PHONE (Area Code) 614-239-5500

---

**CODE: S - SUSPECT · SJ - SUBJECT · M - PATIENT · S/V - SUSPECT / VICTIM · SJ / V - SUBJECT / VICTIM**

| CODE | # | of | LNAME | FNAME | MNAME | |
|------|---|----|-------|-------|-------|-|
| S | 1 | 1 | GUZMAN | PEDRO | PETER | |

DRIVER'S LICENSE (STATE & No.): CA B7301562
RES. ADDR: 25545 EAST AVE J-4   LANCASTER   93534
RES. PHONE (Area Code): 661-878-6100
BUS. ADDR: UNEMPLOYED

SEX M   RACE H   ETHNIC ORIGIN
HAIR BRN   EYES BRN   HGT. 600   WGT. 160
DOB 09-25-77   Age 29

CHARGE: R/C 10851(a) C.V.C., 625b(a) P.C.
WHERE DETAINED OR CITE # LANCASTER
BOOKING # 9740429
MONIKER

| CODE | # | of | LNAME | FNAME | MNAME |
|------|---|----|-------|-------|-------|
| | | | | | |

RES. ADDR: ___   CITY ___   ZIP ___   RES. PHONE (Area Code) ___
BUS. ADDR: ___   CITY ___   ZIP ___   BUS. PHONE (Area Code) ___
SEX ___ RACE ___ ETHNIC ORIGIN ___   HAIR ___ EYES ___ HGT. ___ WGT. ___   DOB ___ Age ___
CHARGE ___   WHERE DETAINED OR CITE # ___
MONIKER ___   BOOKING # ___

---

**VEHICLE -** SUSPECT ☒ VICTIM   STATUS ☐ IMPOUNDED ☒ STORED ☐ OUTSTANDING
LICENSE (STATE & No.) CA 3Y97577   YEAR 89   MAKE CHEVY   MODEL CHEYENNE   BODY TYPE UTILITY   COLOR WHT
REGISTERED OWNER: AV STEEL BUILDING SERVICES
IDENTIFYING FEATURES ___   CHP 180 SUBMITTED: ☐ YES ☐ NO   GARAGE NAME & PH. ___

---

| U/DEP | EMPLOYEE # | VACATION DATES | DEP. | EMPLOYEE # | VACATION DATES |
|-------|-----------|----------------|------|-----------|----------------|
| GARCIA, R. | 489660 | | HORNING | 296955 | |

STATION LANCASTER   UNIT / CAR # ___   SHIFT ___
APPROVED SGT. MINSTER 272205 4/1/07, 1330
VICTIM DESIROUS OF PROSECUTION ☒ YES ☐ NO
ASSIGNMENT LAN/DB
NOTIFICATION REQ: ☐ YES ☒ NO   DEP. ___   DATE / TIME ___
SPECIAL REQUEST DISTRIBUTION ___

SUB/ RELEASE APPROVED BY ___   TIME ___   PCO SUBMITTED? ☐ YES ☐ NO   TT B/C BY ___   DATE ___   TIME ___   SECT ___

SC300F - SH-R-49 (Rev. 10/99)

| DATE 03-31-07 | TIME RECEIVED 1709 | TAG # 335 | URN # 407-08078-1183-339 | PAGE 2 of 7 |
|---|---|---|---|---|

INPUT / CHECKED NCIC, CII, ETC.: ☐ YES ☑ NO   EVIDENCE HELD: ☐ YES ☑ NO   EVIDENCE ENTERED IN: ☐ PATROL Ledger/Page#   NARCOTICS Ledger/Page#   SAFE Ledger/Page# BY

**EVIDENCE HELD:**

| | | | |
|---|---|---|---|
| ☐ BLOOD | ☐ BULLET | ☐ BULLET CASING | ☐ CHECKS | ☐ CLOTHES | ☐ CREDIT CARDS | ☐ ELECTRONIC EQUIPMENT | ☐ FINGERPRINTS |
| ☐ FOOTPRINTS | ☐ FRAUD DOCUMENTS | ☐ GSR | ☐ HAIR | ☐ JEWELRY | ☐ MISCELLANEOUS | ☐ MONEY | ☐ NARCOTICS |
| ☐ OTHER PRINTS | ☐ PAINT | ☐ PHOTOGRAPHS | ☐ RAPE KIT | ☐ RECEIPTS | ☐ TOOLS | ☐ URINE | ☐ VEHICLE IMPOUNDED |
| ☐ VEHICLE PARTS | ☐ WEAPONS | ☐ | | | | | |

**PROPERTY CODE:** S – STOLEN • R – RECOVERED • L – LOST • F – FOUND • E – EMBEZZLED • D – DAMAGED • EV – EVIDENCE
(Use all applicable Codes; for example, if property is both Stolen and Recovered, Code is S/R)   **RELEASED TO**

| CODE | ITEM # | QUAN. | DESCRIPTION (include kind of article, trade name, identifying numbers, physical description, material, color, condition, age and present market value) | SERIAL # | VALUE |
|---|---|---|---|---|---|
| SR | 1 | 1 | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

## PART I STATISTICAL INFORMATION

| TYPE OF PROPERTY | PROPERTY STOLEN | RECOVERED | TYPE OF PROPERTY | STOLEN | RECOVERED |
|---|---|---|---|---|---|
| CLOTHING/FURS | $ | $ | JEWELRY | $ | $ |
| CONSUMABLE GOODS | $ | $ | LIVESTOCK | | |
| CURRENCY/NOTES | $ | $ | LOCAL STOLEN VEHICLES | $ | $ |
| FIREARMS | $ | $ | MISCELLANEOUS | $ | $ |
| HOUSEHOLD GOODS | $ | $ | OFFICE EQUIPMENT | $ | $ |
| | | | TV/RADIO/STEREO | $ | $ |

**VICTIM OF SEX CRIMES REQUEST FOR CONFIDENTIALITY**

PURSUANT TO SECTION 293(a) OF THE CALIFORNIA PENAL CODE, YOU ARE INFORMED THAT YOUR NAME WILL BECOME A MATTER OF PUBLIC RECORD, UNLESS YOU REQUEST THAT IT REMAIN CONFIDENTIAL AND NOT BE A PUBLIC RECORD, PURSUANT TO SECTION 6254 OF THE GOVERNMENT CODE.

_____ HEREBY (DO) (DO NOT) ELECT TO EXERCISE MY RIGHT TO PRIVACY.

### SCREENING FACTORS

| YES | NO | | YES | NO | |
|---|---|---|---|---|---|
| ☑ | ☐ | 1. SUSPECT IN CUSTODY | ☑ | ☐ | 7. GENERAL SUSPECT DESCRIPTION |
| ☑ | ☐ | 2. SUSPECT NAMED/KNOWN | ☑ | ☐ | 8. GENERAL VEHICLE DESCRIPTION |
| ☐ | ☑ | 3. UNIQUE SUSPECT IDENTIFIERS | ☐ | ☑ | 9. UNIQUE M.O. OR PATTERN |
| ☐ | ☑ | 4. VEHICLE IN CUSTODY | ☐ | ☑ | 10. SIGNIFICANT PHYSICAL EVIDENCE |
| ☐ | ☑ | 5. UNIQUE VEHICLE IDENTIFIERS | ☐ | ☑ | 11. TRACEABLE STOLEN PROPERTY |
| ☐ | ☑ | 6. WRITER/REVIEWER DISCRETION | ☑ | ☐ | 12. MULTIPLE WITNESSES |

76C300F - SH-R-49 (Rev. 10/99)

PAGE 3 OF 7

| REPORT CONTINUATION   NARRATIVE | URN 407-08078-1183-337 |
|---|---|

WE RESPONDED TO 4555 WEST AVE G ("FOX FIELD") REGARDING A TRESSPASSING CALL (TAG 335).

WE WERE ADVISED THAT THE PERSON TRESSPASSING WAS A MALE IN A WHITE UTILITY TRUCK. AS WE PULLED ONTO THE AIRPORT TARMACK, WE SAW A MALE (S/GUZMAN) SITTING IN A WHITE UTILITY TRUCK (CA#3Y97577). THE TRUCK WAS BACKED IN NEAR A BLOCK WALL NORTH OF THE TERMINAL. THE SUSPECT AND TRUCK WERE ON THE TARMACK FACING "NET JETS" PLANE NUMBER N837Q5 (APPROXIMATELY 25 YARDS AWAY).

AS WE STOPPED NEAR THE SUSPECT IN THE UTILITY TRUCK, WE WERE CONTACTED BY I/FOX. I/FOX DIRECTED US TOWARD S/GUZMAN IN THE WHITE UTILITY TRUCK. I/FOX SAID HE WAS THE ASSISTANT AIRPORT MANAGER, AND THAT S/GUZMAN WAS INTERFERING WITH THE "NET JETS" PLANE.

WE CONTACTED S/GUZMAN (STILL SITTING IN THE UTILITY TRUCK), AND DETAINED HIM PENDING OUR TRESSPASSING INVESTIGATION.

PAGE 4 OF 7

| REPORT CONTINUATION   NARRATIVE | URN | 407-08 078-1183-339 |
| --- | --- | --- |

WE AGAIN CONTACTED I/FOX WHO TOLD US S/GUZMAN
ENTERED "FOX FIELD" THROUGH THE ACCESS GATE, WHICH
HAD BEEN LEFT OPEN. I/FOX SAID S/GUZMAN DROVE
ON TO THE TARMACK IN THE WHITE UTILITY TRUCK
S/GUZMAN THEN OPENED THE DOOR TO "NET JETS"
PLANE, WHICH WAS PREPARING TO LEAVE. I/FOX
THINKS S/GUZMAN ENTERED THE PLANE. S/GUZMAN
WAS TOLD TO LEAVE. S/GUZMAN DROVE TOWARD
THE "FOX FIELD" EAST HANGERS. I/FOX SAW HIM
BY THE EAST HANGERS, AND FOLLOWED HIM AS
S/GUZMAN LEFT THE EAST HANGERS TOWARD "NETJETS"
PLANE. S/GUZMAN GOT OUT OF THE UTILITY TRUCK
AND AGAIN TRIED TO GET INTO THE PLANE. S/GUZMAN
TOLD I/FOX HE WAS "WAITING FOR A PLANE." I/FOX
TOLD S/GUZMAN HE WOULD HAVE TO "WAIT IN THE
HANGER." S/GUZMAN HUNG AROUND THE "NET JETS"
PLANE UNTIL DEPUTIES ARRIVED.


WE CONTACTED V/FERULLO AND V/CROOKS, WHO
WERE THE PILOTS OF THE "NETJETS" PLANE
N837QS, THEY SAID THEY WERE IN THE PLANE
WITH PASSENGERS "PREPARING TO TAXI." S/GUZMAN
THEN OPENED THE PLANE DOOR, ENTERED THE PLANE,
AND SAT DOWN. S/GUZMAN TOLD V/FERULLO AND
V/CROOKS HE WAS "SUPPOSED TO BE ON THE FLIGHT"

76R288M—Sh R-313— PS 10-82

| REPORT CONTINUATION   NARRATIVE | URN 407-08078-1183-339 |

V/FERULLO AND V/CROOKS TOLD S/GUZMAN
HE WAS NOT ON THEIR FLIGHT, AND ASKED HIM
TO EXIT. S/GUZMAN SAID "OKAY" AND WENT
BACK TO "HIS TRUCK". V/FERULLO AND V/CROOKS
SAW S/GUZMAN DRIVE TO THE "EAST TOWERS."

V/FERULLO AND V/CROOKS SAID S/GUZMAN
CAME BACK AGAIN AND TRIED TO GET ON THE
PLANE. S/GUZMAN WALKED UP TO THE PLANE
DOOR, AND ATTEMPTED TO OPEN IT. V/CROOKS
SAW S/GUZMAN APPROACHING THE PLANE DOOR
AND GRABBED IT FROM THE INSIDE, HOLDING
IT CLOSED TO PREVENT S/GUZMAN FROM
ENTERING. S/GUZMAN GAVE UP AND WENT
BACK TO "HIS TRUCK."

S/GUZMAN STAYED IN HIS TRUCK FOR
APPROXIMATELY "FIVE MINUTES." HE THEN STARTED
WALKING BACK TOWARD THE PLANE. V/FERULLO
AND V/CROOKS STOPPED S/GUZMAN BEFORE HE GOT
TO THE PLANE. S/GUZMAN OFFERED "TWO QUICK
PICK LOTTERY TICKETS" UP TO V/FERULLO AND
V/CROOKS. S/GUZMAN ASKED "DO YOU NEED THESE
(HOLDING THE LOTTERY TICKETS)."

76R28BM -Sh R-313- PS 10-82

PAGE 6 OF 7

| REPORT CONTINUATION   NARRATIVE | URN | 407-08078-1183-339 |
|---|---|---|

S/GUZMAN WAS TOLD THE LOTTERY TICKETS
WOULD NOT BE ACCEPTED. HE THEN TURNED
AROUND AND WALKED BACK TO HIS TRUCK.

WE CONTACTED S/GUZMAN AND ADVISED HIM
OF HIS MIRANDA RIGHTS (PER 5480 477). S/GUZMAN
SAID HE UNDERSTOOD HIS RIGHTS. HE AGREED
TO TALK WITHOUT A LAWYER PRESENT. S/GUZMAN
TOLD US "THE TRUCK WAS NOT HIS." HE SAID
HE FOUND IT NEAR AVENUE "B-8". THE
TRUCK WAS BEHIND SOME HOUSE, WITH THE
KEYS IN THE IGNITION. S/GUZMAN DECIDED TO
TAKE IT "FOR A RIDE" BECAUSE HIS MOM'S
VEHICLE WAS BROKEN. S/GUZMAN "FOLLOWED
THE SIGNS" TO THE AIRPORT. HE SAID HE
WAS GOING TO LEAVE THE TRUCK AT THE
AIRPORT. HE DID NOT KNOW WHO OWNED THE
TRUCK. S/GUZMAN SAID HE WENT TO THE
AIRPORT, BECAUSE HE WANTED TO GET ON A
PLANE. WHEN ASKED IF HE STOLE THE TRUCK,
S/GUZMAN REFUSED TO ANSWER.

WE ATTEMPTED TO CONTACT THE OWNER OF THE
TRUCK VIA PHONE AND PATROL STOP (PALMDALE STATION).
THE OWNER COULD NOT BE REACHED.

76R288M—Sh R-313   PS 10-82

PAGE 7 OF 7

| REPORT CONTINUATION   NARRATIVE | URN 407-08 078-1183-337 |
| --- | --- |

S/GUZMAN WAS TRANSPORTED TO LANCASTER
STATION, WHERE HE WAS BOOKED WITH THE
APPROVAL OF LT. HINDMAN.

IT SHOULD BE NOTED THAT S/GUZMAN HAD
NO MONEY OR PLANE TICKETS IN HIS POSSESSION
WHEN HE WAS BOOKED. THE "NETJETS" FLIGHT
WAS DELAYED AND POSSIBLY CANCELLED DUE
TO S/GUZMAN'S ACTIONS. THE VEHICLE
S/GUZMAN WAS DRIVING WAS TOWED BY
CLARK & HOWARD, PENDING THE OWNERS OF THE
VEHICLE BEING CONTACTED.

IT SHOULD ALSO BE NOTED S/GUZMAN BECAME
INVOLVED IN A BATTERY AGAINST ANOTHER
PRISONER IN THE BOOKING CAGE, WHILE HE WAS
BEING BOOKED (SEE FILE # 107-08087-1127-144
FOR FURTHER).

TSA OFFICER KATHY BAOA (BOB HOPE AIRPORT, BURBANK,
818-326-1084) CONTACTED LANCASTER STATION ABOUT
THE INCIDENT

76R28BM-Sh-R-313; PS 10-82

# EXHIBIT C

Exhibit C
Page 41

# LOS ANGELES COUNTY
## BOOKING AND PROPERTY RECORD

| | | | | | FOREIGN NATIONAL | YES | NO | UNK |
|---|---|---|---|---|---|---|---|---|
| BOOKING NO. 9740429 | OCA NO. | | | | FCO SUBMITTED | | | |

| SID NO. | LOC. BKD. LAN | DL LIC. NO. STATE B7301562 | CA | ALIEN # | |
|---|---|---|---|---|---|

ARRESTEE'S NAME (LAST, FIRST, MIDDLE)
GUZMAN, PEDRO

HOME PHONE

ADDRESS
25545 E AVENUE J4 LANCASTER, CA 93535

| SEX M | DESCENT H | HAIR BLK | EYES BRO | HEIGHT 600 | WEIGHT 160 | BIRTHDATE 09-25-1977 | AGE 29 |
|---|---|---|---|---|---|---|---|

| VEH. LIC. NO. 3Y97577 | ST. CA | RPT. DIST. 1183 | AKA/NICKNAME |
|---|---|---|---|

| BIRTHPLACE CA | FILE NO. 487090781123339 | MONIKER | AD. CHG. Y |
|---|---|---|---|

| ACTY. OR DETAIL ARRESTING 1101 | DATE & TIME ARRESTED 03-31-2007    1813 | TIME BKD. 1840 |
|---|---|---|

| LOCATION OF ARREST 4855 W AVE G, LANCASTER | TOTAL BAIL 21000.00 |
|---|---|

| CHARGE 10851(A) /VC / F VEHICLE THEFT | WARR/COMPL NO. |
|---|---|

| JAIL LOC. LAN | ARRAIGN DATE 04-03-2007 | TIME 0800 | COURT ANT |
|---|---|---|---|

PRISONER'S SIGNATURE WHEN BOOKED
X

| SOC. SEC. NO. | OBSERVABLE PHYSICAL ODDITIES | OCCUPATION CARPENTER |
|---|---|---|

| EMPLOYER (FIRM OR PERSON'S NAME, CITY & PHONE NO.) | SPECIAL MEDICAL PROBLEM |
|---|---|

| CLOTHING WORN | LOCATION & DISPOSITION OF VEHICLE CLARK AND HOWARD |
|---|---|

IN CASE OF EMERGENCY NOTIFY (NAME, RELATIONSHIP, ADDRESS, CITY & PHONE NO.)

| ARRESTING OFFICER HORNING 296955 | BOOKING EMPLOYEE GARCIA 489660 | SEARCHING OFFICER | TRANSPORTING OFFICER |
|---|---|---|---|

| CASH RETAINED 00.00 | PROPERTY |
|---|---|

PRISONER'S SIG. FOR REC'T. OF FOR BOOKING CASH & PROPERTY
X

| CASH DEPOSITED 000000.00 | PROPERTY |
|---|---|

PRISONER'S SIG. FOR REC'T. OF REMAINING CASH & PROPERTY
X

| RIGHT FOUR IN | RIGHT THUMB IN | RIGHT THUMB OUT | FOUR OUT |
|---|---|---|---|

Exhibit C
Page 42

014

| ADDITIONAL CHARGE | | WARRANT NUMBER | ARRAIGN DATE | TIME | COURT |
|---|---|---|---|---|---|
| 625B(A1/PC/M TAMPER W/AIRCRAFT | | | | DOO/ | |

| TELEPHONE CALLS | | CODE   A-ATTY B-BONDSMAN D-DR E-EMPLOYER R-RELATIVE W-WAIVED O-OTHER | | | OFFICER HANDLING | PRISONER'S INITIALS |
|---|---|---|---|---|---|---|
| INTERVIEWS NAME | | CODE | PHONE # OR INTERVIEWER | DATE & TIME MADE | SERIAL # | |
| BAIL DEVIATION | | 0. | (213) 351-0311 | | | |

REMARKS                                                   X   COMPLETED CALL

MISDEMEANOR HOLDS
 NO IDENTIFICATION
 WARRANT
 ON-GOING PROBLEM
 NON-CITEABLE MISDEMEANOR
 OTHER
APPROVED BY
WATCH COMMANDER

REASON FOR RELEASE __ EXPIRATION __ FINE __ CITATION __ BAIL __ OTHER
RECEIPT #                              DATE AND TIME  5-07-07  INS
RELEASED BY:                           DOCUMENT ANALYST:
RELEASED TO: (NAME, AGENCY & DETAIL)
                Mtun   ICE  3464

RECORD OF PROPERTY TRANSACTIONS        CODE   A-ADD W-WITHDRAW I-INSPECT R-REMOVE FOR EVIDENCE

| NAME OF PERSON ADDING, WITHDRAWING OR INSPECTING | OFFICER HANDLING SERIAL # | PRISONER'S SIGNATURE AUTHORIZING WITHDRAW | CODE | DESCRIPTION OF PROPERTY | DATE AND TIME |
|---|---|---|---|---|---|

| OFFICER MAKING FINAL RELEASE | | DATE AND TIME | I DO HEREBY ACKNOWLEDGE RECEIPT OF ALL MY REMAINING PROPERTY SIGNATURE |
|---|---|---|---|

Exhibit C
Page 43                                               015

| DATE 03/31 | TIME 1920 | JLR SIG 8W | SGT SIG | CV | LOS ANGELES COUNTY JAIL |
|---|---|---|---|---|---|

BOOKING AND PROPERTY RECORD

MOMAS BUSE 98-610

| FOREIGN NATION'L | | | |
|---|---|---|---|
| ☐ YES | HAVE AIDS | ☐ | ☑ |
| ☒ NO | HAVE VD | ☐ | ☑ |
| ☐ REF | HAVE HEPATITIS | ☐ | ☑ |
| | HAVE TB | ☐ | ☑ |
| | EVER HAVE TB | ☐ | ☑ |

BOOKING NO. 9740929    LOC. BKD. LAN    DVL LIC. NO. B7301562    STATE CA

JAIL CUSTODY RECORD

ARRESTEE'S NAME (LAST, FIRST, MIDDLE)
GUZMAN, PEDRO PETER

ADDRESS 25545 EAST AUG J-4    CITY LAN    SEX M

DESCENT H.    HAIR BLK    EYES BRN    HEIGHT 600    WEIGHT 160    BIRTHDATE 09-25-77    AGE 29

VEH. LIC. NO. 3498577    STATE CA    RPT. DIST. 1183    AKA/NICKNAME

BIRTHPLACE CA    FILE NO. 407-08078-1183 339/667    ADD. CHG. Y

AGY. OR DETAIL ARRESTING 1101    DATE & TIME ARRESTED 03-31-07/1813    TIME BKD. 1910

FELONY

LOCATION OF ARREST 4555 W. AVE G, LANCASTER    TOTAL BAIL 20,000

CHARGE 10851 VC/F    TAKING VEHICLES WITHOUT CONSENT    WARR/COMM. NO.

JAIL LOC. LAN    ARRAIGN. DATE 04-03-07    TIME 0830    COURT ATP

PRISONER'S SIGNATURE WHEN BOOKED (X) PEDRO GUZMAN

SOC. SEC. NO. UNKNOWN    OBSERVABLE PHYSICAL ODDITIES TT "X3" ON INNER LEFT MIDDLE FINGER    OCCUPATION CONSTRUCTION

EMPLOYER (FIRM OR PERSON'S NAME, CITY, & PHONE NO.) UNEMPLOYED    SPECIAL MEDICAL PROBLEM NONE

CLOTHING WORN BLACK SHOES    BLUE SHIRT, BLACK JEANS,    LOCATION OR DISPOSITION OF VEHICLE CLARK & HOWARD

IN CASE OF EMERGENCY NOTIFY (NAME, RELATIONSHIP, ADDRESS, CITY & PHONE NO.)
MARIA CARBAJAL (MOTHER) 25545 EAST AVE J-4, LANCASTER    661-878-6100

ARRESTING OFFICER HORNING 296955/    BOOKING EMPLOYEE GARCIA 489660    SEARCHING OFFICER    TRANSPORTING OFFICER

CASH RETAINED Ø    PROPERTY CLOTHING WORN

PRISONER'S SIG. FOR RECT. OF FOREGOING CASH & PROPERTY (X) PEDRO GUZMAN

CASH DEPOSITED Ø    PROPERTY BLACK BELT

PRISONER'S SIG. FOR RECT. OF REMAINING CASH & PROPERTY X

768630 C-8943-324 10/97

QRB 4-1-07
CII # A11798272
FBI # 86920DEB5

Exhibit C
Page 44

016

| TELEPHONE CALLS INTERVIEWS | CODE: A - ATTY. B - BONDSMAN D - DR. E - EMPLOYER R - RELATIVE W - WAIVED O - OTHER | | | | | OFFICER HANDLING | PRISONER'S INITIALS |
|---|---|---|---|---|---|---|---|
| NAME | | CODE | PHONE # OR INTERVIEWER | DATE & TIME MADE | | SERIAL # | |
| | | ✓ | | | | 2 | G |
| | | ✓ | | | | 4 | G |
| | | ✓ | | | | 4 | G |
| | | ✓ | | | | 5 | G |

REMARKS:                                                                X    COMPLETED CALL

**RIGHT FINGERPRINTS**
WHEN BOOKED.        WHEN RELEASED

| WHEN BOOKED    RIGHT THUMB    WHEN RELEASED | REASON FOR RELEASE:   ☐ EXPIRATION  ☐ FINE  ☐ CITATION |
|---|---|
| | ☐ BAIL  ☐ OTHER  RECEIPT # |
| | DATE AND TIME |
| | RELEASED BY:          DOCUMENT ANALYST: |
| | RELEASED TO: (NAME, AGENCY, & DETAIL) |

Exhibit C
Page 45

017

# EXHIBIT D

**LOS ANGELES COUNTY**
**CONSOLIDATED CRIMINAL HISTORY SYSTEM**                Date: 04/26/2007

CRIMINAL HISTORY TRANSCRIPT FOR OFFICE USE ONLY - UNAUTHORIZED USE IS A CRIMINAL OFFENSE
*INFORMATION FINGERPRINT VERIFIED UNLESS OTHERWISE NOTED BY AN ASTERISK(*)*

Key Name: GUZMAN, PEDRO PETER          Code Name/SID/DOB/FBI/ARN
SID/CII: A13082753      CDC/MAIN: A13082753      FBI: 869202EB5      ARN:

## DESCRIPTORS

#Names/AKAs/Count

(1) GUZMAN, PEDRO PETER          8      (2) GUZMAN, PEDRO                    7

*Dates of Birth/Count*

09/25/1977      4

*Scars/Marks/Tattoos*

*Other Identifiers*

DL B7301562 CA        FBI 869202EB5

*Address/Count*

25545 E AVENUE J4 LANCASTER CA 93535        2    25545 E AVE J4 LANCASTER CA 93535        1
25545 EAST AVENUE J4 LANCASTER CA 93535      1    25545 EAST AVENUE J4 LANCASTER CA 93534  1

*Birth Place/Count*

CA          3

*Moniker/Count*

*Gang Membership/Count*

MISC LATINS - LASD      1

## JUVENILE SUSTAINED PETITIONS

No Juvenile Information

Exhibit D
Page 47