1  JAMES J. BROSNAHAN (CA SBN 34555)
   JBrosnahan@mofo.com
2  BRIAN J. MARTINEZ (CA SBN 224587)
   BrianMartinez@mofo.com
3  FRANCHESCA C. HERRERA (CA SBN 239081)
   FHerrera@mofo.com
4  MORRISON & FOERSTER LLP
   425 Market Street
5  San Francisco, California  94105-2482
   Telephone: 415.268.7000
6  Facsimile: 415.268.7522

7  MARK ROSENBAUM (CA SBN 59940)
   mrosenbaum@aclu-sc.org
8  ACLU FOUNDATION OF
      SOUTHERN CALIFORNIA
9
   Attorneys for Plaintiffs
10 PETER GUZMAN and MARIA CARBAJAL

11 [Additional counsel appear on following page.]

12

13                UNITED STATES DISTRICT COURT

14                CENTRAL DISTRICT OF CALIFORNIA

15

16 PETER GUZMAN AND MARIA            Case No. CV08-01327 GHK (SSx)
   CARBAJAL,
17                                   **PLAINTIFFS' MEMORANDUM
              Plaintiffs,            OF POINTS AND
18                                   AUTHORITIES IN OPPOSITION
        v.                           TO ICE DEFENDANTS'
19                                   MOTION TO DISMISS**
   UNITED STATES OF AMERICA;
20 MICHAEL CHERTOFF, Secretary,      Date:      November 17, 2008
   Department of Homeland Security; JAMES  Time:      9:30 a.m.
21 T. HAYES, Field Office Director, U.S.    Judge:     Hon. George H. King
   Immigration and Customs Enforcement;    Place:     Courtroom 650
22 PILAR GARCIA, Agent, U.S. Immigration
   and Customs Enforcement; COUNTY OF
23 LOS ANGELES; LEROY BACA, Sheriff   Action Filed:  February 27, 2008
   of the County of Los Angeles; TIMOTHY   Trial Date:    None set
24 CORNELL, Captain of Los Angeles
   County Inmate Reception Center;
25 SANDRA FIGUERAS, Custodial
   Assistant, Los Angeles County Sheriff's
26 Department; DOE ICE AGENTS 1–10; and
   DOE LASD OFFICERS 1-10,
27
              Defendants.
28

1    CATHERINE E. LHAMON (CA SBN 192751)
     clhamon@aclu-sc.org
2    AHILAN T. ARULANANTHAM (CA SBN 237841)
     aarulanantham@aclu-sc.org
3    MELINDA BIRD (CA SBN 102236)
     mbird@aclu-sc.org
4    ACLU FOUNDATION OF
        SOUTHERN CALIFORNIA
5    1313 West Eighth St.
     Los Angeles, CA 90017
6    Telephone: 213.977.9500, x224
     Facsimile: 213.977.5297

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... iii

I.    INTRODUCTION ................................................................................. 1

II.   FACTUAL BACKGROUND .................................................................. 2

      A.    Mr. Guzman's Background ......................................................... 2

      B.    Mr. Guzman's Incarceration ...................................................... 3

      C.    Interrogation by LASD Custody Assistant ................................. 3

      D.    ICE Detention ........................................................................... 4

      E.    Mr. Guzman is Lost in Mexico. .................................................. 5

      F.    Maria Carbajal's Search ............................................................ 6

III.  LEGAL STANDARD ........................................................................... 7

IV.   ARGUMENT ...................................................................................... 8

      A.    Mr. Guzman Has Stated a *Bivens* Claim for Violations of
            the Fourth Amendment. ............................................................ 8

      B.    Mr. Guzman and Ms. Carbajal Have Stated a Claim
            Against Defendant Hayes. ....................................................... 11

            1.    Plaintiffs Have Alleged Sufficient Facts to Show
                  Defendant Hayes' Participation in the
                  Constitutional Violations. ............................................. 11

            2.    Defendant Hayes is Not Entitled to Qualified
                  Immunity. .................................................................... 14

                  a.    No Heightened Pleading
                        Standard Applies. ................................................ 15

                  b.    Defendant Hayes Violated
                        Plaintiffs' Constitutional Rights. ....................... 15

                  c.    Plaintiffs' Constitutional Rights
                        Were Clearly Established at the
                        Time of the Deprivation. ...................................... 16

                        (i)    Due Process ............................................. 16

                        (ii)   Racial Discrimination .............................. 18

                        (iii)  Unlawful Seizure ..................................... 19

1        (iv)   Loss of Familial Association ................................ 19

2    C.    Plaintiffs Do Not Intend to Bring a *Bivens* Claim Against
          Defendant Chertoff. ................................................................ 19

3

4    D.    Plaintiffs Will Not Pursue Their Claim for Declaratory
          and Injunctive Relief. ............................................................. 20

5    E.    Should the Court Be Inclined to Dismiss Any Claim,
          Leave to Amend Should Be Granted. ....................................... 20

6

7  V.  CONCLUSION .................................................................................... 21

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

## TABLE OF AUTHORITIES

3
                                                                            **Page(s)**

CASES

4

5      *Alfrey v. United States,*
          276 F.3d 557 (9th Cir. 2002).................................................................. 15

6

7      *Bettin v. Maricopa County,*
          2007 U.S. Dist. LEXIS 42979 (D. Ariz. Jun. 12, 2007) ......................... 14

8      *Branch v. Tunnel,*
          937 F.2d 1382 (9th Cir. 1991)................................................................. 15

9

10     *California v. Hodari,*
          499 U.S. 621 (1991)........................................................................... 8, 19

11     *Collins v. Jordan,*
          110 F.3d 1363 (9th Cir. 1996)................................................................. 14

12

13     *Conley v. Gibson,*
          355 U.S. 41 (1957).................................................................................... 7

14

15     *Cooper v. Dupnik,*
          963 F.2d 1220 (9th Cir. 1991)................................................................. 16

16

17     *Diaz v. Carlson,*
          5 F. Supp. 2d 809 (C.D. Cal. 1997) .......................................................... 7

18     *Edwards v. Marin Park, Inc.,*
          356 F.3d 1058 (9th Cir. 2004).................................................................... 7

19

20     *Farm Labor Org. Comm. v. Ohio State Highway Patrol,*
          308 F.3d 523 (6th Cir. 2002)................................................................... 18

21     *Florida v. Royer,*
          460 U.S. 491 (1983)............................................................................. 8, 9

22

23     *Franklin v. Foxworth,*
          31 F.3d 873 (9th Cir. 1994).............................................................. 8, 9, 19

24

25     *Galbraith v. County of Santa Clara*
          307 F.3d 1119 (9th Cir. 2002)................................................................. 15

26     *Gonzalez-Rivera v. Immigration & Naturalization Service,*
          22 F.3d 1441 (9th Cir. 1994)................................................................... 18

27

28

*Grant v. City of Long Beach,*
   315 F.3d 1081 (9th Cir. 2002)................................................................. 15

*Hall v. City of Santa Barbara,*
   833 F.2d 1270 (9th Cir. 1986)................................................................... 7

*Harris v. Roderick,*
   126 F.3d 1189 (9th Cir. 1997)................................................................. 15

*Hearns v. Terhune,*
   413 F.3d 1036 (9th Cir. 2005)................................................................... 8

*Hydrick v. Hunter,*
   500 F.3d 978 (9th Cir. 2007)........................................................... *passim*

*Jacobsen v. Hughes Aircraft,*
   105 F.3d 1288 (9th Cir. 1997),
   *rev'd on other grounds,* 525 U.S. 432 (1999) .......................................... 7

*Keen v. Noble,*
   2007 U.S. Dist. LEXIS 69629 (E.D. Cal. Sept. 20, 2007) ................. 11, 12

*Larez v. City of Los Angeles,*
   946 F.2d 630 (9th Cir. 1991).................................................................. 11

*Lee v. City of Los Angeles,*
   250 F.3d 668 (9th Cir. 2001).............................................................. 17, 19

*Muehler v. Mena,*
   544 U.S. 93 (2005) ................................................................................ 10

*Oviatt v. Pearce,*
   954 F.2d 1470 (9th Cir. 1992)................................................................ 17

*Rivera v. Ashcroft,*
   394 F.3d 1129 (9th Cir. 2004)................................................................ 17

*Saucier v. Katz,*
   533 U.S. 194 (2001) ......................................................................... 14, 16

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.,*
   806 F.2d 1393 (9th Cir. 1986)................................................................ 20

*U.S. v. Laville,*
   480 F.3d 187 (3d Cir. 2007).................................................................... 9

*United States v. Chan-Jimenez,*
   125 F.3d 1324 (9th Cir. 1997)............................................................. 8, 19

*United States v. Montero-Camargo,*
    208 F.3d 1122 (9th Cir. 2000)......................................................................... 18

*United States v. Washington,*
    387 F.3d 1060 (9th Cir. 2004)........................................................................... 8

*Wood v. Ostrander,*
    879 F.2d 583 (1989).......................................................................................... 18


**OTHER AUTHORITIES**

Fed. R. Civ. Proc. 8(a) ......................................................................................... 8

First Amendment.................................................................................................. 19

Fourteenth Amendment ....................................................................................... 17

Fourth Amendment ..................................................................................... *passim*

## I.    INTRODUCTION

Peter Guzman, **a United States born citizen**, was illegally deported in clear violation of his constitutional rights.  His treatment at the hands of Defendants the United States, Michael Chertoff, James Hayes, Pilar Garcia, and other Doe Immigration and Customs Enforcement ("ICE") Agents was unconstitutional and abhorrent.  Defendants Hayes, Garcia, and other Doe ICE Agents (hereinafter, "ICE Defendants") detained Mr. Guzman and interrogated him about his citizenship and place of birth.  Mr. Guzman indicated to his interrogators that he was born in California, and records evidencing this fact were in the possession of both ICE and the Los Angeles Sheriff's Department ("LASD").  In spite of his assertions and these records, ICE Defendants coerced Mr. Guzman to sign a document which operated to waive his rights and facilitate his deportation.  ICE Defendants then deported Mr. Guzman to Mexico, where he remained lost for over 85 days.

ICE Defendants now move to dismiss certain claims from Mr. Guzman's and Ms. Carbajal's First Amended Complaint (hereinafter, "Complaint" or "FAC").  To succeed, ICE Defendants must show that there is no set of facts that would entitle Mr. Guzman and Ms. Carbajal to relief.  Because they cannot meet this lofty standard, the instant motion must be denied.

ICE Defendants' motion to dismiss Mr. Guzman's Fourth Amendment claim misstates relevant law in this area and must fail.  ICE agents seized custody of Mr. Guzman from LASD, held him for over three days without a reasonable basis or lawful authority to do so, interrogated him, transported him to the border of a foreign country, and expelled him from the country of his birth. In so doing, ICE Defendants violated Mr. Guzman's constitutional right to be free from unreasonable seizures.  As a direct result of ICE Defendants' actions, Mr. Guzman suffered grievous harm.

1        ICE Defendants' motion to dismiss the *Bivens* claims against Defendant

2    Hayes misconstrues the allegations in the Complaint and must fail.  First,

3    Mr. Guzman and Ms. Carbajal allege sufficient facts to show that Defendant

4    Hayes participated in the constitutional violations in his supervisory and policy-

5    making capacity.  Defendant Hayes served as the Field Office Director for the

6    Los Angeles District of ICE.  In this capacity, he was responsible for establishing

7    and ratifying policy.  Defendant Hayes was also responsible for establishing

8    training protocols and supervising subordinates.  Defendant Hayes set in motion

9    the events which led to ICE agents depriving Mr. Guzman, a United States

10   citizen, of his constitutional rights and deporting him.  ICE Defendants'

11   argument that Mr. Guzman failed to plead sufficient facts to state a claim against

12   Defendant Hayes ignores the notice pleading standard of the Federal Rules of

13   Civil Procedure and similar case law.

14       Defendant Hayes' assertion of qualified immunity is similarly misguided.

15   He is responsible for the unconstitutional policies and procedures, and

16   inadequate training and supervision, that caused harm to Mr. Guzman and

17   Ms. Carbajal.  Plaintiffs' constitutional rights were clearly established, such that

18   a reasonable officer in Defendant Hayes' position would understand that his

19   conduct in establishing and sanctioning ICE's policies, practices, and customs

20   would lead to deprivations of a constitutional magnitude.

## II.   FACTUAL BACKGROUND

### A.   Mr. Guzman's Background

23       Mr. Guzman was born on September 25, 1977 in Los Angeles, California,

24   and lived with his mother and siblings in Lancaster, California.  (FAC ¶ 31,

25   Ex. A; ¶ 32.)  While Mr. Guzman was never formally diagnosed with a mental

26   illness, he was quickly recognized as "special" and his family helped him

27   perform many basic tasks.  (FAC ¶¶ 32-34.)  In elementary school, Mr. Guzman

28   was placed in special education where he continued to struggle with fundamental

1   reading and writing skills. (*Id.*) Mr. Guzman was unable to commit even basic

2   information to memory, like his own home telephone number. (FAC ¶ 33.)

3   Even with his disabilities, Mr. Guzman was able to learn a trade and in 2007 was

4   working as a cement finisher. (FAC ¶ 35.)

5   **B.   Mr. Guzman's Incarceration**

6   In March 2007, Mr. Guzman was arrested following a bizarre series of

7   events that involved Mr. Guzman entering a private airfield and attempting to

8   board an aircraft. (FAC ¶ 36.) When Mr. Guzman was booked into the Los

9   Angeles County Jail, he was asked by LASD officers where he was born. (FAC

10  ¶ 37.) He told officers that he was born in California. (*Id.*, Ex. C.) Reports

11  prepared and maintained by LASD incident to Mr. Guzman's arrest and

12  detention reflect that Mr. Guzman was born in California and possessed a

13  California driver's license. (*Id.*, Ex. B and Ex. C.) In April 2007, Mr. Guzman

14  pled guilty to a vandalism charge and was sentenced to 120 days in county jail,

15  less credit for good behavior. (FAC ¶ 38.)

16  While in LASD custody, Mr. Guzman suffered auditory hallucinations.

17  He reported these hallucinations to LASD personnel and medical personnel at

18  Los Angeles County Medical Center ("LCMC"), where he was taken for

19  treatment on one occasion. (FAC ¶ 39.) LCMC personnel diagnosed

20  Mr. Guzman with psychosis and prescribed 5 milligrams of Zyprexa, an anti-

21  psychotic medication, daily, with instructions to increase the dosage to 10

22  milligrams as needed and/or tolerated. (*Id.*) LASD medical personnel abruptly

23  stopped this medication after only four doses. (FAC ¶ 40.)

24  **C.   Interrogation by LASD Custody Assistant**

25  Los Angeles County entered into a Memorandum of Understanding

26  ("MOU") with ICE whereby LASD custody assistants would perform certain

27  immigration enforcement activities, including, but not limited to, interrogating

28  individuals to determine if probable cause exists for an immigration violation.

1   (FAC ¶ 42.)  Pursuant to the MOU, ICE officers were to train and supervise

2   LASD custody assistants in performing this work.  (*Id.*)

3        Apparently ignoring LASD records evidencing that Mr. Guzman was born

4   in California and that he was mentally impaired, on April 26, 2007, Defendant

5   Sandra Figueras, a LASD custody assistant, selected Mr. Guzman for

6   interrogation.  (FAC ¶ 43.)  Defendant Figueras had no reasonable basis to

7   believe Mr. Guzman was unlawfully present in the United States.  Mr. Guzman

8   was selected for interview based solely on LASD's and/or ICE's policy, pattern,

9   practice, and custom of choosing inmates for immigration screening based on

10  their race and/or ethnicity.  (FAC ¶ 44.)

11       During this interview, Defendant Figueras asked Mr. Guzman where he

12  was born.  (FAC ¶ 46.)  At least twice, Mr. Guzman indicated that he was born in

13  California.  (*Id.*)  Following this interrogation, Defendant Figueras placed an

14  immigration hold on Mr. Guzman and prepared the paperwork necessary to

15  transfer him to ICE custody.  (FAC ¶ 48.)

16       **D.    ICE Detention**

17       On or about May 7, 2007, ICE took custody of Mr. Guzman from LASD.

18  (FAC ¶ 50.)  Mr. Guzman was transported to an ICE facility and again

19  interrogated regarding his birthplace and citizenship.  (*Id.*)  In response to

20  questioning by Defendant Garcia, Mr. Guzman indicated, as he had before, that

21  he was born in California.  (FAC ¶ 51.)  In spite of Mr. Guzman's statements and

22  records evidencing that Mr. Guzman was born in California, Defendant Garcia

23  and other Doe ICE agents coerced Mr. Guzman to sign Form I-826, a document

24  he could not read and did not understand, which purported to waive his legal

25  rights to a removal deportation hearing, state that he was a citizen of Mexico, and

26  permit his "voluntary" deportation.  (FAC ¶ 52.)  No ICE agent ever acted to

27  ensure that Mr. Guzman's waiver of rights was knowing, intelligent or voluntary.

28  (FAC ¶ 53.)

1       Even though Mr. Guzman repeatedly indicated to both Defendant Garcia

2  and Defendant Figueras that he was born in California, and despite records which

3  LASD and ICE had in their possession that evidenced he was born in California,

4  ICE Defendants failed to make a reasonable inquiry into Mr. Guzman's

5  citizenship status.  (FAC ¶ 56.)  Defendant Figueras, Defendant Garcia, and other

6  Doe ICE Agents acted pursuant to policies, practices, and customs of ICE to

7  (1) select inmates to detain, interrogate, and deport based on their race and/or

8  ethnicity; (2) unreasonably and unlawfully deny inmates who suffer from mental

9  illness and/or cognitive impairments adequate assistance to understand the nature

10  of their rights during an interrogation and ensure that any waiver of rights made

11  by these individuals is knowing, intelligent, and voluntary; (3) unreasonably and

12  unlawfully engage in coercive interrogation tactics; and/or (4) unreasonably and

13  unlawfully detain, interrogate, transport, and deport individuals in violation of

14  due process.  (FAC ¶ 57.)

15       As a direct result of ICE Defendants' action and policies, ICE illegally

16  deported Mr. Guzman to Mexico on May 11, 2007.  (FAC ¶ 61.)

17  **E.    Mr. Guzman is Lost in Mexico.**

18       Mr. Guzman exited the bus in Tijuana with only the clothes on his back

19  and less than three dollars.  (FAC ¶ 63.)  His wallet and driver's license were

20  never returned to him.  (*Id.*)

21       Mr. Guzman was lost in Mexico for over 85 days.  (FAC ¶ 62.)  He was

22  constantly afraid for his personal safety.  (FAC ¶ 64.)  He lacked shelter.  (FAC

23  ¶ 64-65.)  He survived by scavenging for food, often eating from garbage cans.

24  (FAC ¶ 63.)

25       In early August 2007, Mr. Guzman was located by U.S. Border Patrol

26  officers near Calexico.  (FAC ¶ 83.)  When Mr. Guzman returned to his family

27  on August 7, 2007, he was unable to speak more than a few words, his body

28  shuttered intermittently, and he often sat hunched over in fear.  (FAC ¶ 85.)

## F.   Maria Carbajal's Search

After learning on May 11, 2007 that her son had been wrongfully deported to Mexico, Ms. Carbajal began a desperate search for Mr. Guzman that would last nearly three months.  Ms. Carbajal feared for her son's safety, as Mr. Guzman depended on her for his basic care.  (FAC ¶ 68.)  During her search, Ms. Carbajal slept on the floor of a local fruit warehouse, where the owners allowed her to stay in exchange for cooking for the warehouse workers.  (FAC ¶ 73.)

In Mexico, Ms. Carbajal searched from early morning until late in the evening each day.  (FAC ¶ 74.)  She distributed missing person posters.  (FAC ¶ 76.)  Ms. Carbajal searched shelters, churches, the Red Cross, and other non-profits for her son.  (FAC ¶ 77.)  She searched the jails, fearing that he had been arrested.  (*Id.*)  She regularly searched hospitals, fearing that Mr. Guzman might have been hurt or become ill.  (*Id.*)  She searched Tijuana's alleys, beaches, canals and even dangerous neighborhoods, talking to anyone who would listen and hoping that someone might have any information about her missing son. (*Id.*)  Ms. Carbajal even searched Tijuana's morgue.  (FAC ¶ 78.)  Ms. Carbajal regularly reviewed photos of unidentified bodies on the Tijuana morgue website. (*Id.*)  On several occasions, Ms. Carbajal was forced to travel to the morgue after receiving a telephone call stating that a body matching Mr. Guzman's description had been found.  (*Id.*)

Ms. Carbajal repeatedly asked state and local authorities for assistance in locating her son, but to no avail.  (FAC ¶¶ 80-83.)  When an attorney acting on behalf of the Guzman family first contacted Defendant Hayes regarding the unlawful deportation of Mr. Guzman, Defendant Hayes advised that on receipt of Mr. Guzman's birth certificate, ICE would amend its records to reflect Mr. Guzman's citizenship.  (FAC ¶ 81.)  Defendant Hayes refused to take any additional steps to assist in locating Mr. Guzman or procuring his return to the

1    United States. (*Id.*) In fact, it was not until counsel for the Guzman family
2    petitioned for a writ of *habeas corpus* in this Court that ICE Defendants took any
3    action at all. (FAC ¶ 80.) Even after the *habeas* action was initiated, ICE
4    Defendants gave only minimal aid in locating the United States citizen that they
5    had wrongfully deported. (FAC ¶ 82.)
6         As a direct result of ICE Defendants' actions, Mr. Guzman, a United
7    States citizen, was deported to Mexico and lost there for over 85 days. This
8    unlawful deportation caused Mr. Guzman severe psychological and physical
9    harm. (FAC ¶ 86.) The trauma he suffered during the months he wandered lost
10   in Mexico has significantly worsened his condition. In addition, his mother,
11   Ms. Carbajal, suffered emotional distress and actual damages as a result of being
12   deprived of her son and spending nearly three months searching for him in
13   Mexico. (FAC ¶ 87.)
14   **III.   LEGAL STANDARD**
15        A motion to dismiss for failure to state a claim must be denied unless it
16   "appears beyond doubt that the plaintiff can prove no set of facts in support of
17   his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-
18   46 (1957); *Diaz v. Carlson*, 5 F. Supp. 2d 809, 813 (C.D. Cal. 1997). In general,
19   motions to dismiss for failure to state a claim are disfavored and are rarely
20   granted. *Hall v. City of Santa Barbara*, 833 F.2d 1270, 1274 (9th Cir. 1986). In
21   considering such a motion, the Court "must accept as true the allegations in the
22   complaint and decide only whether the plaintiff has advanced potentially viable
23   claims." *Jacobsen v. Hughes Aircraft*, 105 F.3d 1288, 1292 (9th Cir. 1997),
24   *rev'd on other grounds*, 525 U.S. 432 (1999). Construing the allegations in the
25   light most favorable to the plaintiff, the complaint only must meet the "relaxed"
26   notice pleading standards to survive a motion to dismiss. *Edwards v. Marin
27   Park, Inc.*, 356 F.3d 1058, 1061 (9th Cir. 2004). A plaintiff need only make a
28   "short and plain statement of the claim showing that the pleader is entitled to

1   relief" to provide the defendant fair notice of his claims and the grounds upon

2   which they rest.  Fed. R. Civ. Proc. 8(a); *Hearns v. Terhune*, 413 F.3d 1036,

3   1043 (9th Cir. 2005).

4   **IV.   ARGUMENT**

5       **A.   Mr. Guzman Has Stated a *Bivens* Claim for Violations of the**
6       **Fourth Amendment.**

7       Defendants Hayes, Garcia, and Doe ICE Agents violated Mr. Guzman's

8   Fourth Amendment rights when they (1) obtained custody of Mr. Guzman from

9   LASD, (2) detained him for a prolonged period of time, and (3) expelled him

10  from his county of birth.  As ICE Defendants acknowledge, the U.S. Constitution

11  protects individuals from unreasonable government seizures.  "For purposes of

12  the Fourth Amendment, a seizure occurs when a law enforcement officer, by

13  means of physical force or show of authority, in some way restrains the liberty of

14  a citizen." *United States v. Chan-Jimenez*, 125 F.3d 1324, 1326 (9th Cir. 1997)

15  (*citing Florida v. Bostick*, 501 U.S. 429, 434 (1991)); *United States v.*

16  *Washington*, 387 F.3d 1060, 1068 (9th Cir. 2004); *see also California v. Hodari*,

17  499 U.S. 621, 696 (1991).  ICE seized custody of Mr. Guzman on or about

18  May 7, 2007.  (FAC ¶ 50.)  Mr. Guzman's liberty was restrained by ICE as they

19  held him in custody for over three days, interrogated him, placed him on a bus,

20  and expelled him across the border to a foreign country.  (FAC ¶¶ 50-51, 61.)

21      Whether a seizure violates the Fourth Amendment turns on whether the

22  seizure was reasonable in light of the circumstances. *Franklin v. Foxworth*,

23  31 F.3d 873, 876 (9th Cir. 1994) (the court must "consider whether the totality of

24  the circumstances justifies a particular sort of seizure") (internal citations

25  omitted); *Florida v. Royer*, 460 U.S. 491, 504 (1983) (a seizure becomes

26  unlawful when it is "more intrusive than necessary"); *Hydrick v. Hunter*,

27  500 F.3d 978, 993 (9th Cir. 2007).

28

1    Examining the totality of the circumstances, ICE Defendants lacked any

2    reasonable basis or lawful authority to seize Mr. Guzman from LASD custody,

3    detain him, interrogate him, and summarily deport him. Mr. Guzman stated he

4    was born in California, and records in the possession of both LASD and ICE

5    noted that Mr. Guzman was born in California and listed his valid California

6    driver's license number. (FAC ¶¶ 36-37, 46, 51, 60.) In spite of this, ICE seized

7    custody of Mr. Guzman. (FAC ¶ 50.) Both the initial and continued detention of

8    Mr. Guzman were patently unreasonable, as ICE had no credible reason to

9    believe that Mr. Guzman was unlawfully present in the United States. *See*

10   *Franklin*, 31 F.3d at 876 ("a detention may be . . . unreasonable if it is

11   unnecessarily painful, degrading or prolonged"); *see also Royer*, 460 U.S. at 500

12   ("[t]he scope of the detention must be carefully tailored to its underlying

13   justification"). Detaining Mr. Guzman from May 7 until May 11, interrogating

14   him, coercing him to sign a false document, placing him on a bus, and

15   transporting him to the border of a foreign country with no reasonable basis or

16   lawful authority to do so constitutes an unreasonable seizure and violates

17   Mr. Guzman's constitutional rights.

18       The cases cited by ICE Defendants do not change this analysis. In *U.S. v.*

19   *Laville*, 480 F.3d 187 (3d Cir. 2007), the Third Circuit found that a police officer

20   had probable cause to arrest Laville for the misdemeanor immigration violation

21   of illegal entry. The court held that when the officer transferred custody of

22   Laville, ICE was not required to make an "independent showing of probable

23   cause." *Id.* at 195-196. In contrast to *Laville*, LASD did not have probable cause

24   to arrest Mr. Guzman for committing an immigration violation. For that reason,

25   Mr. Guzman's arrest and his subsequent conviction for vandalism cannot and did

26   not inform ICE as to its authority to hold him in custody for a purported

27   immigration offense. (FAC ¶¶ 36, 38.) Put differently, that the police had

28   probable cause to believe that Mr. Guzman attempted to board a private aircraft

1    does not mean that ICE had probable cause to hold Mr. Guzman for a non-

2    existent immigration violation.  Finally, *Laville* involved a motion to suppress a

3    statement given to ICE authorities, and did not address the seizure, interrogation,

4    prolonged detention, and eventual deportation of a United States born citizen.

5        ICE Defendants curiously cite *Muehler v. Mena*, 544 U.S. 93 (2005), to

6    support their Fourth Amendment argument.  In *Muehler*, an immigration official

7    questioned an individual incident to, and at the same time as, state police officers

8    executed a valid search warrant.  *Id.* at 96.  The Supreme Court held that "mere

9    police questioning does not constitute a seizure."  *Id.* at 101.  However, in

10   reaching this conclusion, the Court explicitly found that the detention was not

11   "prolonged by the questioning."  *Id.*  Here, the opposite is true.  ICE held

12   Mr. Guzman in custody for three days after he had been arrested for what would

13   turn out to be a minor, non-immigration offense.  The questioning of a United

14   States citizen about his immigration status cannot justify a three-day detention,

15   and nothing in *Muehler* is to the contrary.[1]

16       ICE Defendants' last argument on this score — that there can be no

17   unlawful seizure because Mr. Guzman was ordered to remain in LASD custody

18   for 120 days — is a non-starter.  Mr. Guzman does not dispute that LASD had

19   lawful authority and/or justification to detain him for 120 days pursuant to his

20   guilty plea.  (FAC ¶ 38.)  Mr. Guzman specifically alleges, however, that ICE

21   had no reasonable basis or lawful authority to detain him, interrogate him, and

22   eventually deport him.  Mr. Guzman is a United States citizen, a fact that ICE

23

24   _____

25   [1] ICE Defendants' actions belie any notion that Mr. Guzman was seized for
     the purpose of determining whether he was lawfully present in the United States.
26   ICE performed only a perfunctory investigation before coercing Mr. Guzman to
     sign a false document stating that he was a Mexican national and that he agreed to
27   "voluntary" deportation.

28

1    knew or should have known.  In short, ICE Defendants had no legitimate

2    business with Mr. Guzman whatsoever.

3    **B.    Mr. Guzman and Ms. Carbajal Have Stated a Claim Against**
      **Defendant Hayes.**
4

5          Defendant James Hayes' actions and omissions concerning the training

6    and supervising of subordinates and the creation of policy for the Los Angeles

7    district of ICE proximately caused the violations of Mr. Guzman's constitutional

8    rights.

9          **1.    Plaintiffs Have Alleged Sufficient Facts to Show Defendant**
            **Hayes' Participation in the Constitutional Violations.**
10

11         Defendant Hayes' argument that Mr. Guzman's and Ms. Carbajal's claims

12   are premised solely on *respondeat superior* ignores the allegations that directly

13   link him to Plaintiffs' constitutional injuries.  In fact, Mr. Guzman and

14   Ms. Carbajal allege that Defendant Hayes' personal knowledge, involvement

15   and/or acquiescence directly resulted in the constitutional violations at issue here.

16         Defendant Hayes is liable not only for the acts in which he directly

17   participated, but also for "setting in motion a series of acts by others which the

18   supervisor knew or reasonably should have known would cause others to inflict

19   the constitutional injury."  *Keen v. Noble*, 2007 U.S. Dist. LEXIS 69629, at *16

20   (E.D. Cal. Sept. 20, 2007); *Larez v. City of Los Angeles*, 946 F.2d 630, 645 (9th

21   Cir. 1991) (citing *Johnson v. Duffy*, 588 F.2d 740, 743-744 (9th Cir. 1978)).  In a

22   *Bivens* action, supervisors can be held liable for the constitutional deprivations

23   that arise from (1) their own action or inaction in the training, supervision, or

24   control of their subordinates, (2) acquiescence in the constitutional deprivation,

25   or (3) conduct that showed a reckless or callous indifference to the rights of

26   others.  *Larez*, 946 F.2d at 646; *Keen*, 2007 U.S. Dist. LEXIS 69629, at *16.

27         Defendant Hayes was the Field Office Director for the Los Angeles district

28   of ICE.  (FAC ¶ 18.)  He was therefore responsible for oversight of immigration

1    enforcement activities within the Los Angeles district of ICE, which includes

2    supervising, training, and disciplining officers performing immigration

3    enforcement activities and creating and enforcing ICE polices, practices, and

4    procedures governing those activities.  Defendant Hayes was necessarily required

5    to ensure protection of basic constitutional rights for all detainees in ICE

6    custody.

7         The officers/custody assistants who seized, interrogated, detained, and

8    deported Mr. Guzman acted pursuant to official policies, patterns, practices, or

9    customs of ICE.  (FAC ¶ 57.)  These policies, patterns, practices, and customs

10   include (1) selecting inmates to detain, interrogate, and deport based on their race

11   and/or ethnicity; (2) unreasonably and unlawfully denying inmates who suffer

12   from mental illness and/or cognitive impairments adequate assistance to

13   understand the nature of their rights during an interrogation and failing to ensure

14   that any waiver of rights by these individuals is knowing, intelligent, and

15   voluntary; (3) unlawfully employing coercive interrogation tactics; and

16   (4) unreasonably and unlawfully detaining, interrogating, and deporting

17   individuals in violation of due process.  (*Id.*)  Plaintiffs further allege that ICE

18   supervisory and policymaking officials, including Defendant Hayes,

19        • knew or should have known of the illegal policies and failed to take

20          effective steps to terminate them;

21        • failed to discipline any of the officers involved in the constitutional

22          deprivation;

23        • failed to supervise the individual officers who engaged in the

24          interrogation, detention, and deportation of Mr. Guzman;

25        • failed to effectively train ICE agents and LASD employees responsible

26          for interrogating Mr. Guzman;

27        • sanctioned the unconstitutional policies, practices, and customs

28          through deliberate or grossly negligent indifference.

1   (FAC ¶ 58.)

2        Defendant Hayes is thus alleged to have personally known of, initiated,

3   and/or executed unlawful policies and practices that injured Mr. Guzman and

4   Ms. Carbajal.  Defendant Hayes knew or should have known that these policies

5   would proximately lead to violations of the constitutional rights of individuals in

6   ICE custody.  Moreover, Defendant Hayes' failure to train ICE agents and LASD

7   custody assistants on the constitutional limits of their authority amounted to

8   deliberate indifference to the rights of Mr. Guzman.  (FAC ¶ 58.)  In short, his

9   responsibility for the deprivation of Plaintiffs' rights is not premised on some

10  abstract theory of vicarious liability, but rather on his own affirmative

11  misconduct that directly resulted in depriving Mr. Guzman and Ms. Carbajal of

12  their constitutional and/or common law rights.  As such, Mr. Guzman and

13  Ms. Carbajal have adequately pled personal involvement.

14       Defendant Hayes, furthermore, attempts to sweep away Mr. Guzman's and

15  Ms. Carbajal's factual allegations by claiming they are formulaic legal

16  conclusions.  This is not so.  The allegations in the Complaint, and the reasonable

17  inferences drawn therefrom, show that ICE Defendants were personally involved

18  in authorizing, implementing, or overseeing the policies and practices that

19  resulted in Mr. Guzman's unlawful seizure, interrogation, detention, and eventual

20  deportation.  Plaintiffs of course need not allege each and every way Defendant

21  Hayes participated in the interrogation, detention and deportation of

22  Mr. Guzman. *See Hydrick*, 500 F.3d at 988.  In *Hydrick*, a case cited by ICE

23  Defendants, the court denied the defendants' motion to dismiss, holding "at this

24  stage of pleading, the Plaintiffs need not specifically delineate how each

25  Defendant contributed to the violation of their constitutional rights.  Indeed, we

26  do not see how prior to discovery they could plead the individual roles of each

27  state officer with more specificity." *Id.*  The full level of Defendant Hayes'

28

1    involvement in Mr. Guzman's and Ms. Carbajal's treatment is more

2    appropriately addressed through discovery, not a motion to dismiss.

3           Taking the allegations in the light most favorable to Mr. Guzman and

4    Ms. Carbajal, therefore, Plaintiffs have alleged sufficient facts to show that

5    Defendant Hayes was a policymaker and that his actions with regard to the

6    policy and practices of the Los Angeles district of ICE set in motion a series of

7    acts by others that he knew or should have known would lead to the violation of

8    Mr. Guzman's due process, equal protection, and Fourth Amendment rights, and

9    Ms. Carbajal's familial association rights. *See Hydrick*, 500 F.3d at 988

10   (denying defendants' motion to dismiss because the plaintiff alleged that "the

11   Defendants were directors and policymakers," and "the constitutional violations

12   they suffered were set in motion by Defendants' policy decisions, or, at the very

13   least Defendants knew of the abuses and demonstrated a deliberate indifference

14   to the Plaintiffs' plight.").

15           **2.     Defendant Hayes is Not Entitled to Qualified Immunity.**

16          Qualified immunity does not shield Defendant Hayes from liability in this

17   case.  In determining whether a law enforcement officer is entitled to qualified

18   immunity, a court asks (1) whether a violation of constitutional rights has

19   occurred and (2) whether the constitutional right that was violated was clearly

20   established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *see Hydrick*, 500 F.3d

21   at 988.  The defendant bears the burden of establishing the requisite elements of

22   qualified immunity.  *See Collins v. Jordan*, 110 F.3d 1363, 1369 (9th Cir. 1996);

23   *see also Bettin v. Maricopa County*, 2007 U.S. Dist. LEXIS 42979, at *24 (D.

24   Ariz. Jun. 12, 2007) ("Qualified immunity is an affirmative defense and,

25   therefore, the defendant asserting qualified immunity bears the burden of both

26   pleading and proving this defense.").  The inquiry is an objective one — whether

27   Defendant Hayes or any other ICE Defendant subjectively believed that they

28   were legally entitled to detain, interrogate, and deport Mr. Guzman is irrelevant.

1   *See Grant v. City of Long Beach*, 315 F.3d 1081, 1089 (9th Cir. 2002).  The

2   Court must accept all allegations made by the plaintiff as true and draw all

3   inferences from those allegations in the plaintiff's favor.  *Hydrick*, 500 F.3d

4   at 985 (in deciding a motion to dismiss on qualified immunity grounds, "we are

5   careful not to eviscerate the notice pleading standard") (*citing Galbraith v.*

6   *County of Santa Clara*, 307 F.3d 1119, 1125-1126 (9th Cir. 2002)).

7        Defendant Hayes has fallen far short of demonstrating that he is entitled to

8   qualified immunity.  His opening brief does little more than summarize the legal

9   standards that apply to the qualified immunity analysis, after which he states, in

10  conclusory fashion, that he should be immune from civil liability.  Defendants

11  Hayes fails to prove that (1) a constitutional violation did not occur and (2) that

12  Plaintiffs' rights were not "clearly established."  Having not met his burden, his

13  defense must be rejected as a matter of law.

14              **a.    No Heightened Pleading Standard Applies.**

15       As a threshold matter, ICE Defendants mistakenly rely on *Alfrey v. United*

16  *States*, 276 F.3d 557 (9th Cir. 2002), and *Harris v. Roderick*, 126 F.3d 1189 (9th

17  Cir. 1997), to argue that a heightened pleading standard should apply to this case.

18  They are wrong.  Both *Alfrey* and *Harris* rely on *Branch v. Tunnel*, 937 F.2d

19  1382 (9th Cir. 1991).  The Ninth Circuit expressly overruled *Branch*; its holding

20  regarding a heightened pleading standard is no longer good law.  *See Galbraith*,

21  307 F.3d at 1125.

22              **b.    Defendant Hayes Violated Plaintiffs'**
                     **Constitutional Rights.**

23

24       For all the reasons set forth above, when viewed in the light most

25  favorable to Mr. Guzman and Ms. Carbajal, the Complaint sufficiently alleges

26  that Defendant Hayes violated Plaintiffs' rights under the First, Fourth, Fifth and

27  Fourteenth Amendments.  Accordingly, to successfully invoke qualified

28

1    immunity, Defendant Hayes must prove that the constitutional rights he violated

2    were not "clearly established" as of May 2007.  This he cannot do.

3                    **c.    Plaintiffs' Constitutional Rights Were Clearly**
                           **Established at the Time of the Deprivation.**
4

5          Mr. Guzman and Ms. Carbajal assert that Defendant Hayes contributed to

6    violations of the First, Fourth, Fifth and Fourteenth Amendments.  The contours

7    of each of these rights were "sufficiently clear [such] that a reasonable officer

8    would understand that what he is doing violates [those] right[s]."  *See Saucier*,

9    533 U.S. at 201 (citing *Anderson v. Creighton*, 483 U.S. 635 (1987)).  Defendant

10   Hayes has shown nothing to the contrary.

11                            **(i)    Due Process**

12         Mr. Guzman's Due Process claim has four parts.  First, he alleges that both

13   LASD custody agents and ICE agents subjected him to coercive interrogation

14   tactics.  (FAC ¶¶ 46, 51-53.)  Defendant Hayes was responsible not only for

15   training ICE agents working within his district, but was also charged with

16   training LASD custody assistants pursuant to the MOU between LASD and ICE.

17   (FAC ¶ 42.)  That the use of coercive interrogation techniques violated

18   Mr. Guzman's rights was sufficiently clear.  *See Cooper v. Dupnik*,

19   963 F.2d 1220, 1244-1245 (9th Cir. 1991) ("The abhorrence of society to the use

20   of involuntary confessions does not turn alone on their inherent

21   untrustworthiness.  It also turns on the deep-rooted feeling that the police must

22   obey the law while enforcing the law.").

23         Second, Mr. Guzman alleges that ICE detained him for an unreasonable

24   and unconstitutional period of time.  (FAC ¶ 51, 57, 61.)  Defendant Hayes failed

25   to implement policies and procedures to guard against such a deprivation.  He

26   also failed to adequately train and supervise the ICE agents and LASD custody

27   assistants to ensure that a detention would not continue once an agent knew or

28   should have known that a detainee was a United States citizen.  That

1   Mr. Guzman maintained a liberty interest in being free from prolonged detention
2   was "clearly established." *Lee v. City of Los Angeles*, 250 F.3d 668, 683 (9th
3   Cir. 2001) ("[T]he loss of liberty caused by an individual's mistaken
4   incarceration after the lapse of a certain amount of time gives rise to a claim
5   under the Due Process Clause of the Fourteenth Amendment."); *see Oviatt v.*
6   *Pearce*, 954 F.2d 1470 (9th Cir. 1992).

7            Third, Mr. Guzman alleges that he was unlawfully removed from the
8   United States and left in Mexico. (FAC ¶ 61.)  The constitutionally deficient
9   policies and procedures that Defendant Hayes implemented and ratified led to
10  this egregious violation of Mr. Guzman's rights.  There can be no dispute that
11  ICE has no authority to deport a United States born citizen. *See Rivera v.*
12  *Ashcroft*, 394 F.3d 1129, 1136 (9th Cir. 2004) ("The executive may deport
13  certain aliens but has no authority to deport citizens . . . the deportation of one
14  who claims citizenship obviously deprives him of liberty . . and may result in
15  loss of both property and life, or of all that makes life worth living.  The Fifth
16  Amendment mandates that any person with a non-frivolous claim to American
17  citizenship receive a judicial evaluation of that claim") (internal citations
18  omitted).

19           Fourth, Mr. Guzman alleges that his due process rights were violated when
20  ICE Defendants, including Defendant Hayes, affirmatively placed him in danger.
21  Defendant Hayes infringed upon Mr. Guzman's substantive due process rights by
22  establishing constitutionally infirm policies and procedures and by failing to
23  institute adequate supervision and training to ensure that no United States citizen
24  would be expelled from his country of birth.  Pursuant to these policies,
25  Mr. Guzman was deported to Mexico, a country that was completely foreign to
26  him. (FAC ¶ 61.)  He knew no one in Tijuana. (FAC ¶ 7.)  His wallet and
27  California driver's license were not returned to him. (FAC ¶ 63).  He had only
28  three dollars on which to survive. (*Id.*)  Cognitively impaired and alone,

1    Mr. Guzman survived by eating out of garbage cans and sleeping outside with no

2    protection from the elements or other dangers.  (FAC ¶ 63, 65.)  This sort of

3    conduct shocks the conscience and is cognizable under the Fifth Amendment.

4    *See Wood v. Ostrander*, 879 F.2d 583, (1989) (finding a substantive due process

5    violation where law enforcement officer affirmatively placed an individual in

6    danger).

7                        **(ii)    Racial Discrimination**

8            Mr. Guzman was selected for interrogation based on his race.  (FAC ¶ 44.)

9    As Director of the Los Angeles Field Office of ICE, Defendant Hayes was

10   responsible for establishing policies and procedures, both for ICE agents and

11   LASD custody assistants, to ensure racial targeting did not occur during

12   investigations of the immigration status of detainees.  He failed to do so.  The

13   right that was violated as a result was "clearly established," as courts have

14   consistently held that it is impermissible and unconstitutional to target an

15   individual for investigation based solely on his or her race.  *See, e.g., Farm*

16   *Labor Org. Comm. v. Ohio State Highway Patrol*, 308 F.3d 523, 542 (6th Cir.

17   2002) (holding that a state trooper was not entitled to qualified immunity because

18   "it was clearly established that the Constitution prohibited racial targeting in law

19   enforcement investigations"); *United States v. Montero-Camargo*,

20   208 F.3d 1122, 1135 (9th Cir. 2000) (in holding Hispanic appearance may not be

21   considered as a relevant factor where particularized or individualized suspicion is

22   required, the court held "[s]tops based on race or ethnic appearance send the

23   underlying message to all our citizens that those who are not white . . . enjoy a

24   lesser degree of constitutional protection — that they are in effect assumed to be

25   potential criminals first and individuals second"); *Gonzalez-Rivera v.*

26   *Immigration & Naturalization Service*, 22 F.3d 1441, 1450 (9th Cir. 1994)

27   (concluding that "officers should have known that their decision to stop

28   Gonzalez based solely on his Hispanic appearance was unconstitutional").

### (iii)   Unlawful Seizure

As is discussed in detail above, ICE's seizure of custody, detention, interrogation and deportation of Mr. Guzman amounted to a violation of the Fourth Amendment. *See Franklin*, 31 F.3d at 875; *see also Chan-Jimenez*, 125 F.3d at 1326; *Hodari*, 499 U.S. at 696. Defendant Hayes failed to establish adequate policies, procedures, and training regarding the (1) seizure of a detainee from local law enforcement, (2) the prevention of detention of a United States citizen, and (3) the prevention of deportation of a United States citizen. Mr. Guzman's right to be free from unreasonable government seizures was clearly established. *Hydrick*, 500 F.3d at 993 ("[Q]ualified immunity does not protect a search or seizure that is arbitrary, retaliatory, or clearly exceeds the legitimate purpose of the detention").

### (iv)   Loss of Familial Association

Defendant Hayes is not entitled to qualified immunity on Ms. Carbajal's cause of action for violation of her right to familial association with her son, Mr. Guzman. In fashioning policies which led to the deportation of Mr. Guzman, Defendant Hayes interfered with Ms. Carbajal's First Amendment rights. As a result of those policies, Ms. Carbajal spent almost three months deprived of, and searching for, her missing, dependent son. (FAC ¶¶ 68, 76, 87.) The right that Defendant Hayes violated was "clearly established." *See Lee*, 250 F.3d at 685 ("It is well established that a parent has a 'fundamental liberty interest' in 'the companionship and society of his or her child' and that 'the state's interference with that liberty interest without due process of law is remediable under [42 U.S.C. §] 1983.'").

### C.   Plaintiffs Do Not Intend to Bring a *Bivens* Claim Against Defendant Chertoff.

ICE Defendants correctly note that Plaintiffs stated in the headings of causes of action one through four in their FAC that those claims are asserted

1   against Defendant Garcia, Defendant Hayes, and Doe ICE Agents. Plaintiffs did

2   not intend to use the term "ICE Defendants," which was previously defined in

3   the FAC to include Defendant Chertoff, in the charging allegations supporting

4   the first through fourth causes of action. To the extent that the Court reads

5   causes of action one through four as being pled against Defendant Chertoff (as

6   well as the other defendants), Plaintiffs respectfully request that these claims be

7   dismissed without prejudice as to Defendant Chertoff only.

8       **D.    Plaintiffs Will Not Pursue Their Claim for Declaratory and**
9            **Injunctive Relief.**

10     Plaintiffs' fourteenth cause of action seeks declaratory and injunctive

11   relief. Mr. Guzman and Ms. Carbajal will not pursue this cause of action. They

12   respectfully request that the Court dismiss this cause of action without prejudice.

13      **E.    Should the Court Be Inclined to Dismiss Any Claim, Leave to**
14            **Amend Should Be Granted.**

15     "If a complaint is dismissed for failure to state a claim, leave to amend

16   should be granted unless the court determines that the allegation of other facts

17   consistent with the challenged pleading could not possibly cure the deficiency."

18   *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.

19   1986). Here, ICE Defendants have notice of Plaintiffs' claims against them.

20   Any deficiency the Court may find can be cured. If the Court grants dismissal of

21   any of the above claims, Mr. Guzman and Ms. Carbajal respectfully request that

22   leave to amend be granted.

23

24   ///

25   ///

26   ///

27   ///

28   ///

1   **V.     CONCLUSION**

2          For the reasons set forth above, ICE Defendants' motion should be denied.

3

4   Dated:     October 20, 2008          JAMES J. BROSNAHAN
                                         BRIAN J. MARTINEZ
5                                        FRANCHESCA C. HERRERA
                                         MORRISON & FOERSTER LLP

6

7                                        By: _James J. Brosnahan_

8                                            James J. Brosnahan
                                             Attorneys for Plaintiffs

9

10  Dated:     October 20, 2008          MARK D. ROSENBAUM
                                         CATHERINE E. LHAMON
11                                       AHILAN T. ARULANANTHAM
                                         MELINDA BIRD
12                                       ACLU FOUNDATION OF SOUTHERN
13                                         CALIFORNIA

14

15                                       By: _Mark Rosenbaum_

16                                           Mark Rosenbaum
                                             Attorneys for Plaintiffs

17

18

19

20

21

22

23

24

25

26

27

28