**MANDATORY CHAMBERS COPY**

1  JAMES J. BROSNAHAN (CA SBN 34555)
   JBrosnahan@mofo.com
2  SOMNATH RAJ CHATTERJEE (CA SBN 177019)
   SChatterjee@mofo.com
3  LEE B. AWBREY (CA SBN 252037)
   Lawbrey@mofo.com
4  SAMUEL J. BOONE-LUTZ (CA SBN 252732)
   SBooneLutz@mofo.com
5  MORRISON & FOERSTER LLP
   425 Market Street
6  San Francisco, California  94105-2482
   Telephone: 415.268.7000
7  Facsimile: 415.268.7522

8  MARK ROSENBAUM (CA SBN 59940)
   mrosenbaum@aclu-sc.org
9  ACLU FOUNDATION OF SOUTHERN
   CALIFORNIA
10
   Attorneys for Plaintiffs
11 PETER GUZMAN and MARIA CARBAJAL

12 [Additional counsel appear on following page.]

13

14              UNITED STATES DISTRICT COURT

15              CENTRAL DISTRICT OF CALIFORNIA

16

17 PETER GUZMAN AND MARIA          Case No. CV08-01327 GHK (SSx)
   CARBAJAL,
18                                 Honorable George H. King
            Plaintiffs,
19                                 [PROPOSED] SECOND
         v.                        AMENDED COMPLAINT FOR
20                                 VIOLATION OF THE FIRST,
   UNITED STATES OF AMERICA;       FOURTH, FIFTH, AND
21 JAMES T. HAYES, Field Office Director,   FOURTEENTH AMENDMENTS
   U.S. Immigration and Customs    TO THE UNITED STATES
22 Enforcement; PILAR GARCIA, Agent,   CONSTITUTION (BIVENS; 42
   U.S. Immigration and Customs    U.S.C. § 1983); FALSE
23 Enforcement; COUNTY OF LOS      IMPRISONMENT;
   ANGELES; LEROY BACA, Sheriff of the   NEGLIGENCE; AND
24 County of Los Angeles; TIMOTHY   INTENTIONAL INFLICTION OF
   CORNELL, Captain of Los Angeles   EMOTIONAL DISTRESS
25 County Inmate Reception Center;
   SANDRA FIGUERAS, Custodial      [JURY TRIAL DEMANDED]
26 Assistant, Los Angeles County Sheriff's
   Department; DOE ICE AGENTS 1–10; and   Action Filed:   February 27, 2008
27 DOE LASD OFFICERS 1-10,         Trial Date:  TBD
28          Defendants.

CATHERINE E. LHAMON (CA SBN 192751)
clhamon@aclu-sc.org
AHILAN T. ARULANANTHAM (CA SBN 237841)
aarulanantham@aclu-sc.org
MELINDA BIRD (CA SBN 102236)
mbird@aclu-sc.org
ACLU FOUNDATION OF
    SOUTHERN CALIFORNIA
1313 West Eighth St.
Los Angeles, CA 90017
Telephone: 213.977.9500, x224
Facsimile: 213.977.5297

## JURISDICTION AND VENUE

1.    This civil rights action for declaratory and injunctive relief and compensatory and punitive damages is brought pursuant to, *inter alia*, the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671, *et seq.*, and law for relief from the commission of tortious acts.  This Court has jurisdiction over the federal claims pursuant to the constitutional provisions enumerated and 28 U.S.C. §§ 1331 and 1343(a)(3) and (4), as the claims are brought to redress deprivations of rights, privileges, and immunities secured by the United States Constitution and by law.  Jurisdiction is also proper pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202.  This Court has jurisdiction over the supplemental state claims pursuant to 28 U.S.C. § 1367.

2.    Venue is proper in the Central District of California, under 28 U.S.C. § 1391(b), in that Defendants are located in this state and district, and a substantial part of the acts and/or omissions giving rise to Plaintiffs' claims occurred in this district.

## INTRODUCTION

3.    The government – whether it be federal or local – lacks the authority to deport a United States citizen.  Citizenship is the constitutional birthright of every individual born within our national borders, and the first obligation of government is to preserve the liberty and security of citizens to remain within their homeland.

4.    On May 11, 2007, immigration officials and agents of the Los Angeles District of the United States Immigration and Customs Enforcement ("ICE") Division, under the United States Department of Homeland Security ("DHS"), acting in concert with officials of the Los Angeles County Sheriff's Department ("LASD"), unlawfully deported Peter Guzman to Tijuana, Mexico.  The illegal deportation of Mr. Guzman was the direct and foreseeable consequence of official policies, patterns, practices, and customs that manifest, at best, intentional

[PROPOSED] SECOND AMENDED COMPLAINT        1
sf-2546574

1  discrimination based on race and ethnicity and a failure to recognize basic
2  principles of due process, and, in reality, a reckless disregard for human life and
3  liberty as well.

4        5.      Mr. Guzman is a 30 year-old United States citizen, born and raised in
5  Los Angeles County.  He has never made his residence anywhere outside of Los
6  Angeles County.  Mr. Guzman is cognitively impaired and suffers from a mental
7  illness.  He is unable to read at more than a second-grade level and is unable to
8  commit to memory basic information, like his home telephone number.
9  Mr. Guzman lives under the care and supervision of his mother, Plaintiff Maria
10 Carbajal.

11       6.      On or about May 11, 2007, Mr. Guzman was loaded on a bus by ICE
12 agents and forced to disembark in Tijuana, Mexico, with only the clothes he was
13 wearing and a few dollars in his pocket – not enough to purchase food or shelter.

14       7.      Prior to his unlawful deportation, Mr. Guzman had only visited
15 Mexico on a couple of brief trips with his mother when he was a child.  He was
16 unfamiliar with Tijuana and had no personal relationship with any residents of
17 Tijuana.

18       8.      As a direct and foreseeable consequence of the illegal deportation,
19 Mr. Guzman spent nearly three months wandering on foot, lost in Mexico.  He ate
20 out of garbage cans, bathed in rivers, and slept outside without adequate shelter.
21 That Mr. Guzman survived is a result only of his spirit and will to live, and fortuity.
22 He suffered and continues to suffer grievous physical and psychological injury.

23       9.      Ms. Carbajal learned that her son had been illegally deported to
24 Tijuana on or about May 11, 2007.  For nearly three months thereafter,
25 Ms. Carbajal spent most of her days in Tijuana and neighboring cities desperately
26 searching for her lost son.  Ms. Carbajal lived in constant fear for Mr. Guzman's
27 life.  This tragic experience has caused and continues to cause her excruciating
28 emotional and psychological suffering.

1    10.    The circumstances under which Mr. Guzman was illegally deported

2    arose from a January 25, 2005 Memorandum of Understanding ("MOU") between

3    DHS and the Los Angeles County Board of Supervisors. The MOU created a pilot

4    project through which LASD personnel – described as "custody assistants" – were

5    empowered to engage in certain federal immigration enforcement duties.

6    Specifically, LASD custody assistants interviewed and processed inmates confined

7    within the Los Angeles County jail system that LASD presumed or suspected of

8    being unlawfully present in the United States to determine the inmates'

9    immigration status and whether, in their judgment, the inmates were deportable.

10   Custody assistants received only brief and inadequate training by ICE.  Pursuant to

11   the MOU, custody assistants were granted federal authority to refer undocumented

12   inmates to ICE for deportation.

13   11.    ICE and/or LASD failed to undertake prudent efforts to train,

14   supervise, or otherwise reasonably ensure that the custodial assistants interviewing

15   and processing inmates were adequately trained and knowledgeable as to the

16   complexities of immigration law so as to handle the usual and recurring situations

17   with which they must deal.  Specifically, ICE failed to ensure that custodial

18   assistants understood how to ascertain and verify U.S. citizenship status.  In

19   addition, ICE agents and/or LASD officers failed to exercise reasonable or lawful

20   efforts to ensure that processing of inmates as to immigration status occurred absent

21   coercion or reliance upon invidious racial and ethnic biases and stereotypes.  ICE

22   and/or LASD were deliberately indifferent to the obvious consequences of their

23   failure to provide adequate training.  ICE and/or LASD also failed to develop

24   adequate policies and procedures to ensure that those who are mentally ill or

25   cognitively impaired are adequately protected, and that any waiver of rights made

26   by these individuals is knowing, intelligent, and voluntary.

27   12.    ICE agents, acting in concert with LASD officers and personnel,

28   illegally deported Mr. Guzman, notwithstanding the fact that law enforcement

1  records to which LASD and ICE had ready access during Mr. Guzman's detention
2  and interrogation correctly stated that Mr. Guzman was born in California and
3  contained his valid California drivers license number.  In addition, LASD medical
4  records for Mr. Guzman, to which LASD and ICE had reasonable access, showed
5  that Mr. Guzman was not capable of exercising a voluntary, knowing, and
6  intelligent waiver of his rights.  ICE and LASD personnel ignored these records
7  and/or did not undertake reasonable and diligent efforts to review them and
8  appreciate their meaning.

9          13.    Throughout the three-month ordeal in which Mr. Guzman was lost and
10  missing in Mexico, DHS officials and agents, including ICE agents, failed to
11  undertake reasonable and diligent efforts to mitigate the harm resulting from the
12  illegal deportation.  Despite being notified that they had deported a U.S. citizen,
13  Defendants acted with reckless disregard to the physical and/or emotional distress
14  of Mr. Guzman and Ms. Carbajal.  Federal officers and agents failed to make an
15  ongoing, good faith attempt to locate Mr. Guzman.

16                                    **PARTIES**

17  **I.    PLAINTIFFS**

18          14.    Plaintiff Peter Guzman is a native born United States citizen.  While
19  his birth certificate lists his name as "Pedro Guzman," Mr. Guzman uses the name
20  "Peter" in his daily life.  Mr. Guzman was born in Los Angeles, California, and
21  resided in Lancaster, California both before and after he was illegally deported.
22  Mr. Guzman was illegally deported to Mexico in May 2007 and was missing for
23  over 85 days.  He was detained by U.S. border patrol officers as he attempted to
24  cross the border near Calexico in early August 2007.  On or about August 7, 2007,
25  Mr. Guzman was returned to the custody of his family, only after efforts by his
26  family and counsel to secure his release from LASD custody.  He now resides with
27  his mother, Maria Carbajal, in Lancaster, California.

28

1    15.    Plaintiff Maria Carbajal is a lawful permanent resident alien who

2    resides in Lancaster, California.  Ms. Carbajal is Peter Guzman's mother.

3    **II.    DEFENDANTS**

4    16.    Defendant United States of America is sued under the Federal Tort

5    Claims Act for the acts of its employees and agencies.  The United States is

6    implicated by and through the actions, policies, patterns, practices, and customs of

7    DHS and/or ICE and its policy-makers, agents, and officers.

8    17.    Defendant James T. Hayes, Jr. at all times mentioned herein was the

9    Field Office Director for the Los Angeles District of ICE.  In that capacity, he was

10   responsible for the enforcement of the immigration laws within this district.

11   Following the filing of Plaintiffs' Complaint in February 2008, Defendant Hayes

12   was promoted to Acting Director of ICE's Office of Detention and Removal.  He is

13   sued in his individual capacity.

14   18.    Defendant Pilar Garcia is, and at all times mentioned herein was, an

15   Immigration Enforcement Agent with ICE.  She is sued in her individual capacity.

16   19.    Defendant Hayes and Defendant Garcia are hereafter collectively

17   referred to as "ICE Defendants."

18   20.    Defendant County of Los Angeles is the legal entity responsible for the

19   acts and omissions of LASD, including the policies, patterns, practices, and

20   customs relating to the detention of inmates, the selection of inmates for

21   interrogation to determine their immigration status, and inmates' medical care.

22   21.    Defendant Leroy Baca is the Sheriff of Los Angeles County.  In this

23   capacity, he is responsible for the administration of the Los Angeles County jail

24   system, including the supervision of officers who have been deputized to act as

25   immigration agents in the jail.  He is sued in his individual and official capacities.

26   22.    Defendant Timothy Cornell is the Captain of the Los Angeles County

27   Inmate Reception Center.  In this capacity, he is responsible for the administration

28   of the inmate reception center, including the supervision of LASD custodial

1   assistants, and was the immediate custodian of Mr. Guzman at the time he was

2   transferred to the custody of ICE.  He is sued in his individual and official

3   capacities.

4       23.    Defendant Sandra Figueras is, and at all times mentioned herein was, a

5   custody assistant with LASD.  She is sued in her individual and official capacities.

6       24.    Defendant County of Los Angeles, Defendant Baca, Defendant

7   Cornell and Defendant Figueras are hereafter collectively referred to as "LASD

8   Defendants."

9       25.    Defendants Doe ICE Agents 1–10, inclusive, are sued herein under

10  fictitious names because their true names, capacities, and/or degree of responsibility

11  for the acts alleged herein are unknown to Plaintiffs at this time.  When Plaintiffs

12  ascertain this information, they will amend this Complaint accordingly.

13      26.    Defendants Doe LASD Officers 1–10, inclusive, are sued herein under

14  fictitious names because their true names, capacities, and/or degree of responsibility

15  for the acts alleged herein are unknown to Plaintiffs at this time.  When Plaintiffs

16  ascertain this information, they will amend this Complaint accordingly.

17      27.    Plaintiffs are informed and believe, and thereon allege, that Doe ICE

18  Agents 1–10 and Doe LASD Officers 1-10, and each of them, are legally liable to

19  Plaintiffs in some part for the wrongful acts and omissions of which Plaintiffs

20  complain herein.

21      28.    Defendants acted under the color of law, in bad faith, and contrary to

22  established law and principles of constitutional and statutory law.

23      29.    Plaintiffs are informed and believe and thereon allege that each of the

24  Defendants caused, and is liable for the unconstitutional and unlawful conduct and

25  resulting injuries, by, among other things, personally participating in said conduct

26  or acting jointly with others who did so; by authorizing, acquiescing, or setting in

27  motion policies, plans, or actions that led to the unlawful conduct; by failing, or

28  refusing with deliberate indifference, to maintain adequate supervision; and/or by

1  ratifying the unlawful conduct taken by employees under their direction and

2  control.  Defendants' actions were taken pursuant to policies, patterns, practices,

3  customs, or usage of ICE and/or LASD.

4                    **FACTUAL ALLEGATIONS**

5  **I.    MR. GUZMAN'S BACKGROUND**

6          30.    Mr. Guzman was born on September 25, 1977 in Los Angeles,

7  California.  (Exhibit A [Birth Certificate of Mr. Guzman].)

8          31.    Mr. Guzman began attending elementary school in Los Angeles,

9  California.  While he was still attending elementary school, his family moved to

10  Lancaster, California.  Mr. Guzman grew up in Lancaster with his mother, Ms.

11  Carbajal, and his six siblings.

12          32.    Although Mr. Guzman completed elementary school and attended high

13  school through the eleventh grade, Mr. Guzman's reading comprehension and

14  writing skills are severely limited.  During elementary school, Mr. Guzman was

15  placed in special education classes.  He continues to struggle with basic reading and

16  writing, visual processing, conceptualization skills, and memory.  While

17  Mr. Guzman can speak both Spanish and English, his English language skills are

18  significantly stronger.  Mr. Guzman continues to find it difficult to remember even

19  basic information, such as his home telephone number.

20          33.    Mr. Guzman has lived with Maria Carbajal for virtually his entire life

21  and has depended upon her for his basic care.

22          34.    Since leaving high school, Mr. Guzman has worked in construction for

23  several different employers.  For approximately one and one-half years before his

24  arrest, Mr. Guzman worked full-time laying and finishing cement for a single

25  construction company.

26  **II.   MR. GUZMAN'S INCARCERATION**

27          35.    On or about March 31, 2007, Mr. Guzman entered a private airport and

28  attempted to board an airplane.  He was arrested for a misdemeanor violation of

1  California Penal Code § 625(b), interfering with an aircraft, and for a violation of

2  California Vehicle Code § 10851(a), taking a vehicle without consent. LASD

3  officers completed an incident report following Mr. Guzman's arrest. The front

4  page of the incident report lists Mr. Guzman's valid California driver's license

5  number. (Exhibit B [LASD Incident Report dated 3/31/06].)

6       36.   On March 31, 2007, following his arrest, Mr. Guzman was booked into

7  the Los Angeles County Jail. During the booking process, Mr. Guzman was asked

8  a series of biographical questions, including a question regarding his place of birth.

9  Mr. Guzman responded that he was born in California. The Booking and Property

10  Record obtained from the Los Angeles County Jail dated March 31, 2007 lists

11  Mr. Guzman's birthplace as "CA." (Exhibit C [Los Angeles County Jail, Booking

12  and Property Records].) The booking officer also noted Mr. Guzman's valid

13  California driver's license number in these records.

14       37.   On April 19, 2007, Mr. Guzman pled guilty to a single count of

15  vandalism under California Penal Code § 594(a). The judge suspended imposition

16  of the sentence and placed Mr. Guzman on three years probation on the condition

17  that he serve 120 days in the county jail, less 30 days credit for good behavior and

18  time served.

19       38.   On or about April 5, 2007, while Mr. Guzman was incarcerated, LASD

20  personnel found him in his cell, unresponsive. Mr. Guzman was taken by

21  ambulance to Los Angeles Community Medical Center ("LCMC"). Mr. Guzman

22  told medical personnel that he had fallen and hit his head. He also told medical

23  personnel at LCMC that he was hearing voices that told him "bad things." Medical

24  personnel at LCMC diagnosed Mr. Guzman with psychosis and prescribed

25  5 milligrams of Zyprexa, an anti-psychotic medication, with instructions to increase

26  the dosage to 10 milligrams as needed and/or tolerated.

27       39.   LASD medical personnel provided only four doses of Zyprexa to

28  Mr. Guzman before deciding to stop administering the medication to him.

40.     During his incarceration, Mr. Guzman informed LASD medical personnel that he was hearing voices.  County medical records relating to Mr. Guzman, which were compiled during his detention, documented Mr. Guzman's impaired mental state.

## III.     THE DEPORTATION OF MR. GUZMAN

41.     On or about January 25, 2005, ICE and LASD entered into an MOU. The MOU was approved by the Los Angeles County Board of Supervisors.  The MOU authorized LASD personnel to perform certain immigration enforcement activities, including:  (1) interrogating individuals to determine if there is probable cause for an immigration violation; (2) completing criminal alien processing, including fingerprinting, photographing, and interviewing for ICE supervisor review; (3) preparing immigration detainers; (4) preparing affidavits and taking sworn statements; and (5) preparing Notice to Appear applications for signature of an ICE officer.  According to the MOU, LASD personnel performing the above tasks are to receive training from ICE officers.  In addition, the duties and actions of LASD custodial assistants are to be supervised and directed by ICE agents.

42.     On or about April 26, 2007, Mr. Guzman was selected for interrogation regarding his immigration status and then interrogated by Defendant Sandra Figueras, a custodial assistant employed by LASD.

43.     Defendant Figueras selected Mr. Guzman for an interview solely based on his perceived race and/or ethnicity.  She took this action pursuant to the policy, pattern, practice, custom, and usage established by LASD Defendants and/or ICE Defendants.

44.     No reasonable basis existed to suspect or otherwise conclude that Mr. Guzman was not a United States citizen.  Mr. Guzman was selected for immigration questioning even though he had previously told prison officials that he was born in California and even though LASD records reflected that he was born in California and listed his valid California drivers license number.  (See Exhibit B

1   [Incident Report], Exhibit C [Los Angeles County Booking and Property Records],

2   Exhibit D [Excerpt from Los Angeles County Consolidated Criminal History dated

3   April 26, 2007].)

4        45.    Defendant Figueras interrogated Mr. Guzman regarding his

5   immigration status on April 26, 2007. Defendant Figueras asked Mr. Guzman

6   where he was born. Mr. Guzman indicated that he was born in California.

7   Defendant Figueras then asked Mr. Guzman where his parents were born.

8   Mr. Guzman indicated that his mother was born in Nayarit, Mexico. Defendant

9   Figueras then told Mr. Guzman that he, too, must be from Mexico. Again,

10  Mr. Guzman indicated that he was from California. Mr. Guzman was then returned

11  to his cell.

12       46.    Despite LASD records showing Mr. Guzman's impaired mental state,

13  LASD Defendants failed to develop and/or implement adequate policies, practices,

14  procedures, and customs to ensure that those who are mentally ill or cognitively

15  impaired are adequately informed of their rights and protected from coercive

16  interrogation, and that any waiver of rights made by these individuals is knowing,

17  intelligent, and voluntary.

18       47.    Defendant Figueras prepared and signed Form I-213, Record of

19  Deportable/Inadmissible Alien, and Form I-247, Immigration Detainer. In Form I-

20  213, Defendant Figueras represented that Mr. Guzman was born in Nayarit, Mexico

21  and was unlawfully present in the United States.

22       48.    On April 26, 2007, Defendant Figueras placed an immigration hold on

23  Mr. Guzman.

24       49.    On or about May 7, 2007, LASD Defendants and Doe LASD Officers

25  transferred physical custody of Mr. Guzman to ICE.

26       50.    On or about May 10, 2007, Defendant Pilar Garcia, an ICE agent,

27  and/or Doe ICE Agents, interrogated Mr. Guzman regarding his immigration status.

28

1     Mr. Guzman stated, in response to questioning by Defendant Garcia and/or Doe

2     ICE Agents, that he was born in California.

3        51.    Following Mr. Guzman's responses, Defendant Garcia and/or Doe ICE

4     Agents coerced Mr. Guzman to sign Form I-826: Notice of Rights and Request for

5     Disposition ("Form I-826"). Form I-826, written entirely in Spanish, purportedly

6     waived Mr. Guzman's legal rights to a removal deportation hearing and stated that

7     he was a citizen of Mexico and that he agreed to be voluntarily deported to Mexico.

8        52.    Mr. Guzman could not read and did not understand the contents of

9     Form I-826. He had no knowledge or understanding of what would occur if he

10    signed Form I-826. Mr. Guzman received no assistance from Defendant Garcia,

11    Doe ICE Agents, or anyone else in attempting to read and understand this form.

12        53.    A copy of a printout from Los Angeles County's Consolidated

13    Criminal History System dated, April 26, 2007 and concerning Mr. Guzman's

14    criminal history, was contained in the file ICE maintained regarding Mr. Guzman.

15    This document clearly lists Mr. Guzman's birthplace as California. (Exhibit D

16    [excerpt from Los Angeles County's Consolidated Criminal History System].)

17        54.    Even though (1) Mr. Guzman indicated to Defendant Figueras that he

18    was born in California, (2) Mr. Guzman responded to questions during his initial

19    processing by LASD by stating that he was born in California and LASD personnel

20    recorded his responses in LASD records, and (3) LASD records list a valid drivers

21    license number for Mr. Guzman, LASD Defendants and Doe LASD Officers failed

22    to make any inquiry into Mr. Guzman's citizenship or otherwise verify his

23    citizenship in any way. Although LASD contacted Mr. Guzman's family on at

24    least two occasions during the course of his detention, no attempt was made to

25    obtain Mr. Guzman's birth certificate or ask for any further verification of his place

26    of birth.

27        55.    Even though Mr. Guzman informed Defendant Garcia that he was born

28    in California, and records in ICE's possession reflect that Mr. Guzman was born in

1  California, ICE Defendants and Doe ICE Agents failed to make any inquiry into

2  Mr. Guzman's citizenship or otherwise verify his citizenship in any way.

3  Furthermore, ICE Defendants failed to review records in the possession of LASD

4  and ICE which clearly showed that Mr. Guzman was born in California.

5      56.    The actions of Defendant Figueras and Defendant Garcia were taken

6  pursuant to a policies, patterns, practices, or customs of LASD and/or ICE to:

7      • select inmates to detain, interrogate, and deport based on their race

8        and/or ethnicity;

9      • unreasonably and unlawfully deny inmates who suffer from mental

10       illness and/or cognitive impairments adequate assistance to

11       (1) understand the nature of their rights during an interrogation,

12       (2) prevent coercive interrogation tactics, and (3) ensure that any

13       waiver of rights made by these individuals is knowing, intelligent, and

14       voluntary; and/or

15     • unreasonably and unlawfully detain, interrogate, transport, and deport

16       individuals in violation of due process.

17     57.    Prior to May 11, 2007, these policies, patterns, practices, and customs

18  had been known to supervisory and policy-making officers throughout LASD and

19  ICE. Despite their knowledge of these illegal policies, patterns, practices, and

20  customs, the supervisory and policy-making officers have taken no effective steps

21  to terminate the policies, patterns, practices, and customs; have not effectively

22  disciplined or otherwise properly supervised the individual officers who engaged in

23  the policies, patterns, practices, and customs; have not effectively trained LASD

24  officers and ICE agents with regard to the proper constitutional and statutory limits

25  of the exercise of their authority; and have sanctioned the policies, patterns,

26  practices, and customs through their deliberate or grossly negligent indifference to

27  the effect of these policies, patterns, practices, and customs on other individuals in

28  LASD and/or ICE custody. These supervisory and policy-making officers have

1  taken no effective action to ensure that (1) the selection of inmates to detain,
2  interrogate, and deport is not unreasonably and unlawfully based on their race
3  and/or ethnicity; (2) individuals who suffer from mental illness and/or cognitive
4  impairments receive adequate assistance to understand the nature of their rights
5  during an interrogation, prevent coercive interrogation tactics, and ensure that any
6  waiver of rights made by these individuals is knowing, intelligent, and voluntary;
7  and (3) individuals are not unreasonably and unlawfully interrogated, detained,
8  transported, and deported in violation of due process.

9       58.    Mr. Guzman's medical records show that he was unable to execute a
10 knowing, voluntary, and intelligent waiver of his legal rights so as to request a
11 voluntary departure to Mexico.  The failure to examine and appreciate the
12 significance of LASD medical records reflects ICE's and LASD's deliberate
13 indifference to Mr. Guzman's rights and well-being and is a further example of
14 intentional racial discrimination by these governmental entities.

15      59.    ICE and LASD failed to undertake a reasonable and diligent inquiry
16 into the citizenship of Mr. Guzman based upon readily available documentation,
17 including the LASD's own records and Mr. Guzman's documented responses to
18 questioning.

19      60.    As a direct and proximate result of the acts and omissions made by
20 Defendants and the policies, patterns, practices, and customs utilized by
21 Defendants, Mr. Guzman was placed by Doe ICE Agents on a bus to Tijuana on
22 May 11, 2007.  When the bus reached Tijuana, Mr. Guzman was forced to
23 disembark.

24 **IV.   MR. GUZMAN MISSING IN MEXICO**

25      61.    Mr. Guzman was missing in Mexico for over 85 days.

26      62.    When he was told to exit the bus in Tijuana, Mr. Guzman had only
27 about three dollars in his possession and the clothes on his back.  He had no cellular
28 phone and his wallet and California drivers license had not been returned to him by

1  either ICE Defendants or LASD Defendants.  Mr. Guzman survived by eating food
2  out of trash cans.  On occasion, he would find aluminum cans and exchange them
3  for a small amount of change.  With that change he was able to purchase tortillas
4  with mayonnaise.

5      63.    Mr. Guzman was in constant fear for his life and safety.  He kept
6  moving to avoid danger.  During his time in Mexico, he walked hundreds of miles –
7  first south to Ensenada, then back to Tijuana, and finally east to Calexico.

8      64.    Mr. Guzman slept during the day and walked at night because it was
9  extremely hot during the day.  He slept outside with no protection from the
10  elements.  He bathed in rivers and canals.

11  **V.    THE SEARCH FOR MR. GUZMAN**

12      65.    On May 11, 2007, Mr. Guzman placed a single telephone call to the
13  home of his eldest brother, Juan Carlos Chabes.  Victoria Chabes, Mr. Guzman's
14  sister-in-law, answered the telephone.  Mr. Guzman was confused and disoriented.
15  At one point during the call, he asked a bystander, "Where am I?"  Ms. Chabes
16  learned that Mr. Guzman had been placed on a bus and sent to Tijuana.
17  Mr. Guzman told Ms. Chabes that he had no money or clothes.  The call lasted no
18  more than one minute and was made from a borrowed cellular phone.

19      66.    Mr. Guzman cannot remember his own home telephone number or the
20  telephone numbers of any of his family members.  When he was deported,
21  Mr. Guzman had a slip of paper with him that contained his brother's telephone
22  number.  At some point after the May 11, 2007 telephone call, Mr. Guzman lost the
23  slip of paper with his brother's telephone number and was unable to call home
24  again.

25      67.    Ms. Chabes immediately contacted Ms. Carbajal, Mr. Guzman's
26  mother, by telephone and reported her conversation with Mr. Guzman.
27  Ms. Carbajal was anguished and extremely distressed at learning that her son was
28

[PROPOSED] SECOND AMENDED COMPLAINT    14
sf-2546574

1   alone in Mexico.  She feared for his safety and well-being because Mr. Guzman

2   lived in her home and depended upon her for his basic care.

3       68.    Ms. Chabes then called her husband, Mr. Guzman's eldest brother,

4   Mr. Juan Carlos Chabes.

5       69.    On that same day, May 11, 2007, Ms. Chabes called LASD to report

6   the telephone call from Mr. Guzman and to get information regarding

7   Mr. Guzman's deportation.  The representative at LASD informed Ms. Chabes that

8   they had no record of an individual with Mr. Guzman's name and birth date.

9   LASD suggested that Ms. Chabes call the INS (now known as ICE) and provided

10  her with their telephone number.  Ms. Chabes then called ICE and explained what

11  had happened to Mr. Guzman.  ICE advised Ms. Chabes that there was no

12  individual with Mr. Guzman's name and date of birth in their database.

13      70.    On May 11, 2007, after learning the news of Mr. Guzman's

14  deportation, Ms. Carbajal went straight to her home from Los Angeles, where she

15  was running errands.  She collected Mr. Guzman's birth certificate and got in a car

16  with her son, Michael Guzman.  Michael Guzman drove her to Tijuana to

17  immediately begin their search for Mr. Guzman.

18      71.    On May 12, 2007, Michael Guzman had to return home to work.  He

19  left his mother searching in Tijuana for Mr. Guzman.  Because she had no car,

20  Ms. Carbajal had to search on foot and use public transportation.

21      72.    Ms. Carbajal was only able to afford a hotel room for three nights.

22  After that, Ms. Carbajal received assistance from the owners of a local fruit

23  warehouse.  They allowed her to sleep on the floor in a room in the warehouse in

24  exchange for cooking for the warehouse workers.  The room had no windows and

25  was approximately the size of a closet.

26      73.    Ms. Carbajal temporarily left her job as a cook at Jack in the Box to

27  devote all of her time to finding her son.  Typically, Ms. Carbajal started her search

28

[PROPOSED] SECOND AMENDED COMPLAINT      15
sf-2546574

1    early in the morning, around 6:00 a.m., and would not return to the warehouse until
2    late at night.

3          74.    In May 2007, Mr. Chabes and Ms. Carbajal went to the U.S. Consulate
4    in Tijuana, Mexico to ask for help in searching for Mr. Guzman.  The consulate
5    informed gave them no assistance.

6          75.    Over the next three months, Maria Carbajal, Juan Chabes, Victoria
7    Chabes, Michael Guzman and other members of Mr. Guzman's family searched in
8    Tijuana and adjoining cities for Mr. Guzman.  Ms. Carbajal spent most of this time
9    in Tijuana.  Ms. Carbajal followed-up on information and tips received from people
10   who believed that they had seen Mr. Guzman.  Ms. Carbajal, her sons, and other
11   family members printed thousands of flyers with Mr. Guzman's picture and
12   physical description, and distributed them throughout the city.  Mr. Guzman's
13   family printed t-shirts with his image in hopes that someone might recognize him
14   and contact them.

15         76.    Ms. Carbajal searched hospitals, jails, shelters, commercial truck stops,
16   police stations, river beds, canals, and alleys.  She walked through the most
17   dangerous neighborhoods in Tijuana.  Ms. Carbajal spoke to anyone who would
18   listen to her story in the hope that they might possess some information about her
19   missing son.

20         77.    Ms. Carbajal also searched Tijuana's morgue, SEMEFO.  SEMEFO
21   maintains a website where they post photographs and descriptions of unidentified
22   bodies found in and near Tijuana.  (*See* http://periciales.pgjebc.gob.mx/.)  Ms.
23   Carbajal viewed these photos regularly.  Ms. Carbajal also went to the morgue on
24   several occasions after receiving telephone calls informing her that a body matching
25   Mr. Guzman's description had been recovered.

26         78.    Ms. Carbajal depleted her limited savings quickly.  After over a month
27   of searching, she had to return to her job at Jack in the Box a few nights a week in
28

1    order to provide for her youngest children. Every day that she did not have to

2    work, Ms. Carbajal searched for her missing son.

3    **VI.  DEFENDANTS FAILED TO MEANINGFULLY ASSIST IN THE
4         SEARCH FOR MR. GUZMAN**

5         79.   Officers and agents of the United States government failed to take

6    adequate steps to mitigate the harm and suffering caused by Mr. Guzman's illegal

7    deportation. Until a habeas action was filed in this Court, *Guzman v. Chertoff, et*

8    *al., Case No. CV-07-3746 GHK (SS)*, no assistance in helping to find Mr. Guzman

9    was forthcoming despite pleas for help from the family and their legal counsel, who

10   had repeatedly furnished the government with copies of Mr. Guzman's birth

11   certificate.

12        80.   Prior to filing the habeas action, counsel for the family informed

13   Defendant Hayes about Mr. Guzman's deportation. Defendant Hayes stated that

14   upon proof of a United States birth certificate, ICE would amend its records as to

15   the citizenship of Mr. Guzman, but ICE would take no additional steps to assist in

16   finding and returning him to the United States.

17        81.   During the course of the habeas action, counsel for DHS represented to

18   the Court that alerts and flyers were being sent to law enforcement and consulates.

19   Although these alerts may have been circulated at some point to law enforcement,

20   including the border patrol, Mr. Guzman was not detained by border officers as a

21   result of these alerts.

22   **VII.  MR. GUZMAN RETURNS TO THE UNITED STATES**

23        82.   Mr. Guzman was located in August 2007 attempting to enter the

24   United States near Calexico and was returned to LASD custody. Based on

25   information and belief, Mr. Guzman was detained by border guards because there

26   was a warrant issued for his arrest after he failed to appear at a probation hearing

27   following Defendants' unlawful deportation of him to Mexico.

28

83. When he appeared at the border, Mr. Guzman was traumatized. His condition was so poor when he first arrived back in the United States that LASD medical personnel believed that he was mentally retarded and mute.

84. When Mr. Guzman was returned to his family on August 7, 2007, he was unable to speak more than a word or two. His body shuttered intermittently and he was exceedingly withdrawn.

85. As a direct and foreseeable consequence of his illegal deportation, Mr. Guzman suffered and continues to suffer grievous physical and psychological injury.

86. As direct and foreseeable consequence of the illegal deportation of her son, Ms. Carbajal suffered and continues to suffer grievous psychological injury and emotional distress.

87. As a further direct and proximate result of the injuries alleged herein, Plaintiffs have incurred, and will continue to incur, medical expenses and lost earnings.

88. Defendants' conduct was willful, wanton, malicious, oppressive, and in bad faith. Each of these defendants also acted with reckless or callous disregard for Plaintiffs' and intentionally violated federal and law. Plaintiffs are thus entitled to an award of punitive damages against the individually named ICE and LASD Defendants, Doe ICE Agents 1-10, and Doe LASD Officers 1-10.

89. On or about October 31, 2007, Plaintiffs filed Claims for Damages to Person or Property with the County of Los Angeles for the injuries set forth above. The County of Los Angeles did not respond to these claims within forty-five days.

90. On or about October 31, 2007, Plaintiffs filed Federal Tort Claims Act claims with the United States Department of Homeland Security for the injuries set forth above. On or about May 7, 2008, the Department of Homeland Security issued a written denial of Plaintiffs claims.

[PROPOSED] SECOND AMENDED COMPLAINT          18
sf-2546574

1    **CLAIMS FOR RELIEF**

2    **FIRST CLAIM FOR RELIEF**

3    **(Fifth Amendment to the U.S. Constitution)**
     **(Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics)**
4    **(Against Defendant Hayes, Defendant Garcia and Doe ICE Agents 1–10)**

5         91.    Plaintiffs reallege and incorporate herein by reference each and every

6    allegation contained in paragraphs 1 through 90 of this Complaint.

7         92.    By illegally, arbitrarily, and capriciously deporting Mr. Guzman, a

8    United States citizen, to Mexico, ICE Defendants deprived Mr. Guzman of his

9    constitutional right to liberty without due process of law in violation of the Fifth

10   Amendment to the United States Constitution.  Defendants deported or caused

11   Mr. Guzman to be deported without reasonable basis or lawful authority.

12        93.    ICE Defendants acted under color of law and acted or purported to act

13   in the performance of official duties under federal, state, county, or municipal laws,

14   ordinances, or regulations.

15        94.    ICE Defendants' conduct violated clearly established constitutional or

16   other rights of which ICE Defendants knew, or of which a reasonable public official

17   should have known.

18        95.    ICE Defendants' actions, omissions, policies, patterns, practices, and

19   customs, as complained of herein, were intentional and reckless and demonstrate a

20   callous disregard for, or deliberate indifference to, Mr. Guzman's personal safety,

21   security, freedom, and civil and constitutional rights.

22        96.    These violations are compensable under *Bivens v. Six Unknown*

23   *Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971).  As a direct

24   and proximate result of the unlawful actions of these Defendants, Mr. Guzman has

25   suffered economic damages and significant physical and emotional harm.

26

27

28

## SECOND CLAIM FOR RELIEF

**(Fifth Amendment to the U.S. Constitution)**
**(*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*)**
**(Against Defendant Hayes, Defendant Garcia and DOE ICE Agents 1–10)**

97.     Plaintiffs reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 90 of this Complaint.

98.     By illegally deporting Mr. Guzman to Mexico, ICE Defendants deliberately and unconstitutionally discriminated against Mr. Guzman on the basis of his race and ethnicity so as to deny him equal protection of the law in violation of the Fifth Amendment to the United States Constitution.

99.     ICE Defendants acted under color of law and acted or purported to act in the performance of official duties under federal, state, county, or municipal laws, ordinances, or regulations. ICE Defendants acted with the intent or purpose to discriminate against Mr. Guzman.

100.   ICE Defendants' conduct violated clearly established constitutional or other rights of which ICE Defendants knew, or of which a reasonable public official should have known.

101.   ICE Defendants' actions, omissions, policies, patterns, practices, and customs, as complained of herein, were intentional and reckless and demonstrate a callous disregard for, or deliberate indifference to, Mr. Guzman's personal safety, security, freedom, and civil and constitutional rights.

102.   These violations are compensable under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971). As a direct and proximate result of the unlawful actions of these Defendants, Mr. Guzman has suffered economic damages and significant physical and emotional harm.

1

## THIRD CLAIM FOR RELIEF

2

**(First and Fifth Amendments to the U.S. Constitution)**
*(Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics)*
**(Against Defendant Hayes, Defendant Garcia and Doe ICE Agents 1–10)**

3

4        103.   Plaintiffs reallege and incorporate herein by reference each and every

5   allegation contained in paragraphs 1 through 90 of this Complaint.

6        104.   By illegally deporting Mr. Guzman to Mexico, ICE Defendants

7   deprived Ms. Carbajal of the companionship and society of her dependent son

8   without due process of law in violation of the First and Fifth Amendments of the

9   United States Constitution.

10       105.   Ms. Carbajal has cared for Mr. Guzman for his entire life.  ICE

11  Defendants' reckless, intentional, and deliberate acts and omissions forced

12  Ms. Carbajal to travel to Mexico and suffer physical, emotional, and financial

13  innumerable hardships searching for her son.

14       106.   ICE Defendants acted under color of law and acted or purported to act

15  in the performance of official duties under federal, state, county, or municipal laws,

16  ordinances, or regulations.

17       107.   ICE Defendants' conduct violated clearly established constitutional or

18  other rights of which ICE Defendants knew, or of which a reasonable public official

19  should have known.

20       108.   ICE Defendants' actions, omissions, policies, patterns, practices, and

21  customs, as complained of herein, were intentional and reckless and demonstrate a

22  callous disregard for, or deliberate indifference to, Ms. Carbajal's personal safety,

23  security, freedom, and civil and constitutional rights.

24       109.   These violations are compensable under *Bivens v. Six Unknown*

25  *Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971).  As a direct

26  and proximate result of the unlawful actions of these Defendants, Ms. Carbajal has

27  suffered economic damages and significant physical and emotional harm.

28

1

## FOURTH CLAIM FOR RELIEF

**(Fourth Amendment to the U.S. Constitution)**
**(*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*)**
**(Against Defendant Hayes, Defendant Garcia and Doe ICE Agents 1–10)**

110.  Plaintiffs reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 90 of this Complaint.

111.  ICE Defendants intentionally detained Mr. Guzman in violation of his constitutional right to be free from unreasonable seizures, as guaranteed by the Fourth Amendment to the United States Constitution.

112.  ICE Defendants acted under color of law and acted or purported to act in the performance of official duties under federal, state, county, or municipal laws, ordinances, or regulations.

113.  ICE Defendants' conduct violated clearly established constitutional or other rights of which ICE Defendants knew, or of which a reasonable public official should have known.

114.  ICE Defendants' actions, omissions, policies, patterns, practices, and customs, as complained of herein, were intentional and reckless and demonstrate a callous disregard for, or deliberate indifference to, Mr. Guzman's personal safety, security, freedom, and civil and constitutional rights.

115.  These violations are compensable under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971).  As a direct and proximate result of the unlawful actions of these Defendants, Mr. Guzman has suffered economic damages and significant physical and emotional harm.

## FIFTH CLAIM FOR RELIEF

**(False Imprisonment)**
**(Federal Torts Claim Act)**
**(Against Defendant United States of America)**

116.  Plaintiffs reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 90 of this Complaint.

28

1    117.  ICE Defendants intentionally and unlawfully deprived Mr. Guzman of

2    his liberty by (1) obtaining custody of Mr. Guzman from LASD, (2) holding

3    Mr. Guzman, a United States citizen, in ICE custody for an appreciable period of

4    time, and (3) physically expelling Mr. Guzman from the national borders of the

5    United States.  ICE Defendants were acting within the scope of their employment

6    when they committed these acts.

7    118.  Mr. Guzman never consented to ICE's arrest, detention, or deportation

8    of him.

9    119.  As a direct and proximate result of ICE Defendants' conduct,

10   Mr. Guzman has suffered and continues to suffer damages in an amount to be

11   proven at trial.

12   120.  Mr. Guzman filed a claim with the Department of Homeland Security

13   based on these injuries in accordance with the Federal Tort Claims Act.  The

14   Department of Homeland Security denied this claim.

15   ## SIXTH CLAIM FOR RELIEF

16   **(Negligence)**
     **(Federal Torts Claim Act)**
17   **(Against Defendant United States of America)**

18   121.  Plaintiffs reallege and incorporate herein by reference each and every

19   allegation contained in paragraphs 1 through 90 of this Complaint.

20   122.  ICE Defendants breached their duty of reasonable care by negligently

21   acting or failing to act in such a way that resulted in Mr. Guzman's wrongful

22   detention and deportation by ICE, which these defendants knew or should have

23   known posed a substantial risk of grave harm to Mr. Guzman.

24   123.  ICE Defendants were negligent in performing their duties and failed,

25   neglected and/or refused to properly and fully discharge their responsibilities by,

26   among other things:

27   • Failing to review readily available documentation provided to ICE by

28   LASD, which stated that Mr. Guzman was born in California;

[PROPOSED] SECOND AMENDED COMPLAINT        23
sf-2546574

1  • Failing to investigate Mr. Guzman's claims that he was born in
2    California;
3  • Coercing Mr. Guzman to sign Form I-826;
4  • Failing to provide Mr. Guzman, who suffers from a mental illness
5    and/or mental deficiencies, with assistance to (1) understand his rights,
6    (2) read and understand Form I-826, and (3) protect him from coercive
7    interrogation tactics;
8  • Creating and/or sanctioning policies, patterns, practices, and customs
9    of selecting inmates to detain, interrogate, and deport based on their
10    race and/or ethnicity;
11  • Failing to adequately train and supervise personnel performing
12    immigrations duties; and
13  • Holding and deporting a United States citizen.

ICE Defendants were acting within the scope of their employment when they committed these acts.

124.  As a direct and proximate result of ICE Defendants' conduct, Mr. Guzman and Ms. Carbajal have suffered and continue to suffer damages in an amount to be proven at trial.

125.  Mr. Guzman and Ms. Carbajal filed claims with the Department of Homeland Security based on these injuries in accordance with the Federal Tort Claims Act.  The Department of Homeland Security denied those claims.

## SEVENTH CLAIM FOR RELIEF

### (Intentional Infliction of Emotional Distress)
### (Federal Torts Claim Act)
### (Against Defendant United States of America)

126.  Plaintiffs reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 90 of this Complaint.

[PROPOSED] SECOND AMENDED COMPLAINT         24
sf-2546574

1   127. ICE Defendants' willful acts constitute outrageous conduct insofar as

2 they were intended to cause Mr. Guzman to be held in ICE custody, interrogated,

3 and expelled from the national borders of the United States.

4   128. ICE Defendants intended to cause Mr. Guzman emotional distress,

5 and/or acted in reckless disregard of the likelihood of causing Mr. Guzman

6 emotional distress, in committing these acts. ICE Defendants were acting within the

7 scope of their employment when they committed these acts.

8   129. As a direct and proximate result of ICE Defendants' acts, Mr. Guzman

9 suffered and continues to suffer severe mental anguish and emotional and physical

10 distress.

11   130. Mr. Guzman has incurred and continues to incur medical expenses and

12 other damages in an amount to be proven at trial.

13   131. Mr. Guzman filed a claim with the Department of Homeland Security

14 based on these injuries in accordance with the Federal Tort Claims Act. The

15 Department of Homeland Security denied this claim.

16         **EIGHTH CLAIM FOR RELIEF**

17 **(Fifth and Fourteenth Amendments to the United States Constitution)**
            **(42 U.S.C. § 1983)**
18 **(Against LASD Defendants and Doe LASD Officers 1–10)**

19   132. Plaintiffs reallege and incorporate herein by reference each and every

20 allegation contained in paragraphs 1 through 90 of this Complaint.

21   133. LASD Defendants deprived Mr. Guzman of his constitutional right to

22 liberty and deprived him of this liberty without due process of law as guaranteed by

23 the Fifth and Fourteenth Amendments to the United States Constitution by causing

24 and/or participating in the illegal, arbitrary, and capricious deportation of

25 Mr. Guzman, a United States citizen, to Mexico. Defendants caused and/or

26 participated in Mr. Guzman's deportation without reasonable basis or lawful

27 authority.

28

134.  LASD Defendants acted under color of law and acted or purported to act in the performance of official duties under federal, state, county, or municipal laws, ordinances, or regulations.

135.  The conduct of Defendants violated clearly established constitutional or other rights, of which Defendants knew, or of which a reasonable public official should have known.

136.  The actions, omissions, policies, patterns, practices and customs of these Defendants, complained of herein, were intentional, reckless, and show a callous disregard for, or deliberate indifference to Mr. Guzman's personal safety, security, freedom, and civil and constitutional rights.

137.  These violations are compensable pursuant to U.S.C. § 1983.  As a direct and proximate result of these Defendants' conduct, Mr. Guzman has suffered economic damages and significant physical and emotional harm.

## NINTH CLAIM FOR RELIEF

**(Fourteenth Amendment to the United States Constitution)**
**(42 U.S.C. § 1983)**
**(Against LASD Defendants and Doe LASD Officers 1–10)**

138.  Plaintiffs reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 90 of this Complaint.

139.  LASD Defendants deliberately and unconstitutionally discriminated against Mr. Guzman on the basis of his race and ethnicity so as to deny him equal protection of the law as guaranteed by the Fourteenth Amendment to the United States Constitution and his liberty by causing or participating in the illegal deportation of Mr. Guzman.

140.  LASD Defendants acted under color of law and acted or purported to act in the performance of official duties under federal, state, county, or municipal laws, ordinances, or regulations.  LASD Defendants acted with the intent or purpose to discriminate against Mr. Guzman.

1    141.   The conduct of these Defendants violated clearly established
2    constitutional or other rights, of which Defendants knew, or of which a reasonable
3    public official should have known.

4    142.   The acts, omissions, policies, patterns, practices, and customs of these
5    Defendants complained of herein were intentional, reckless, and show a callous
6    disregard for, or deliberate indifference to Mr. Guzman's personal safety, security,
7    freedom, and civil and constitutional rights.

8    143.   These violations are compensable pursuant to U.S.C. § 1983. As a
9    direct and proximate result of these Defendants' conduct, Mr. Guzman has suffered
10   economic damages and significant physical and emotional harm.

11   **TENTH CLAIM FOR RELIEF**

12   **(First and Fourteenth Amendments to the United States Constitution)**
**(42 U.S.C. § 1983)**
13   **(Against LASD Defendants and Doe LASD Officers 1–10)**

14   144.   Plaintiffs reallege and incorporate herein by reference each and every
15   allegation contained in paragraphs 1 through 90 of this Complaint.

16   145.   LASD Defendants caused or participated in the unlawful deportation
17   of Mr. Guzman, the dependant son of Ms. Maria Carbajal.

18   146.   As a direct and proximate result of LASD Defendants' acts, omissions,
19   policies, patterns, practices and customs, Ms. Carbajal was deprived of the
20   companionship and society of her son without due process of law in violation of her
21   constitutional rights under the First and Fourteenth Amendments of the United
22   States Constitution.

23   147.   LASD Defendants acted under color of law and acted or purported to
24   act in the performance of official duties under federal, state, county, or municipal
25   laws, ordinances, or regulations.

26   148.   The conduct of Defendants violated clearly established constitutional
27   or other rights, of which Defendants knew, or of which a reasonable public official
28   should have known.

[PROPOSED] SECOND AMENDED COMPLAINT     27
sf-2546574

1    149.   The actions and omissions of these Defendants complained of herein

2    were intentional, reckless, and show a callous disregard for, or deliberate

3    indifference to Plaintiffs' personal safety, security, freedom, and civil and

4    constitutional rights.

5    150.   These violations are compensable pursuant to U.S.C. § 1983.  As a

6    direct and proximate result of Defendants' conduct, Ms. Carbajal has suffered

7    economic damages and significant physical and emotional harm.

8    ## ELEVENTH CLAIM FOR RELIEF

9    ### (False Arrest and Imprisonment)
     ### (California Torts Claim Act)
10   ### (Against LASD Defendants and Doe LASD Officers 1–10)

11   151.   Plaintiffs reallege and incorporate herein by reference each and every

12   allegation contained in paragraphs 1 through 90 of this Complaint.

13   152.   LASD Defendants intentionally and unlawfully deprived Mr. Guzman

14   of his liberty by (1) placing him on an Immigration Hold without a legal basis to do

15   so and (2) physically turning over custody of Mr. Guzman to ICE.  Mr. Guzman

16   never consented to the immigration hold or detention by ICE.  LASD Defendants

17   were acting within the scope of their employment when they committed these acts.

18   153.   As a direct and proximate result of LASD defendants' conduct,

19   Mr. Guzman has suffered and continue to suffer damages in an amount to be proven

20   at trial.

21   154.   Mr. Guzman filed a claim with the County of Los Angeles based on

22   these injuries in accordance with the California Tort Claims Act.  The County of

23   Los Angeles denied this claim by failing to respond within forty-five days as

24   required by Section 911.6(c) of the California Government Code.

25

26

27

28

[PROPOSED] SECOND AMENDED COMPLAINT       28
sf-2546574

# TWELFTH CLAIM FOR RELIEF

### (Negligence)
### (California Torts Claim Act)
### (Against LASD Defendants and Doe LASD Officers 1–10)

155. Plaintiffs reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 90 of this Complaint.

156. LASD Defendants breached their duty of reasonable care by negligently acting or omitting to act in such a way that resulted in Mr. Guzman's wrongful detention and deportation by ICE, which these Defendants knew or should have known posed a substantial risk of grave harm to Mr. Guzman.

157. LASD Defendants were negligent in performing their duties and failed, neglected and/or refused to properly and fully discharge their responsibilities by, among other things:

- Failing to review readily available documentation maintained by LASD that stated Mr. Guzman was born in California and listing his valid California driver's license number;

- Failing to investigate Mr. Guzman's claims that he was born in California;

- Selecting Mr. Guzman for immigration questioning based on his race an/or ethnicity;

- Failing to establish and/or implement adequate procedures to ensure that Mr. Guzman, an inmate with a mental illness and/or disabilities, understood his rights and was protected from coercive interrogation tactics;

- Establishing and/or sanctioning policies, patterns, practices, and customs of selecting inmates to interrogate, detain on ICE holds and transfer to ICE custody based on their race and/or ethnicity;

- Failing to adequately train and supervise LASD custodial assistants; and

1      • Transferring custody of Mr. Guzman, a United States born citizen, to
2        ICE.

3    LASD Defendants were acting within the scope of their employment when they
4    committed these acts.

5        158.   As a direct and proximate result of LASD Defendants' conduct,
6    Plaintiffs have suffered and continue to suffer damages in an amount to be proven
7    at trial.

8        159.   Mr. Guzman filed a claim with the County of Los Angeles based on
9    these injuries in accordance with the California Tort Claims Act. The County of
10   Los Angeles denied this claim by failing to respond within forty-five days as
11   required by Section 911.6(c) of the California Government Code.

12                      **THIRTEENTH CLAIM FOR RELIEF**

13                   **(Intentional Infliction of Emotional Distress)**
                             **(California Torts Claim Act)**
14             **(Against LASD Defendants and Doe LASD Officers 1–10)**

15       160.   Plaintiffs reallege and incorporate herein by reference each and every
16   allegation contained in paragraphs 1 through 90 of this Complaint.

17       161.   LASD Defendants' willful acts constitute outrageous conduct insofar
18   as they were intended to cause Mr. Guzman to be selected for questioning because
19   of his race and/or ethnicity, be placed on an immigration hold and be transferred to
20   ICE custody.

21       162.   LASD Defendants intended to cause Mr. Guzman emotional distress,
22   and/or acted in reckless disregard of the probability of causing Mr. Guzman
23   emotional distress in committing these acts.

24       163.   As a direct and proximate result of the actions of LASD Defendants,
25   Mr. Guzman suffered and continues to suffer economic damages, severe mental
26   anguish, and emotional and physical distress.

27       164.   Mr. Guzman filed a claim with the County of Los Angeles based on
28   these injuries in accordance with the California Tort Claims Act. The County of

[PROPOSED] SECOND AMENDED COMPLAINT        30
sf-2546574

1  Los Angeles denied this claim by failing to respond within forty-five days as
2  required by Section 911.6(c) of the California Government Code.
3                              **PRAYER FOR RELIEF**
4          WHEREFORE, each Plaintiff prays for judgment against all Defendants, and
5  each of them, as follows:
6          1.      For general damages against the United States, ICE Defendants, LASD
7  Defendants, Doe ICE Agents 1-10, and Doe LASD Officers 1-10, jointly and
8  severally, in an amount to be proven at trial;
9          2.      For special damages against the United States, ICE Defendants, LASD
10 Defendants, Doe ICE Agents 1-10, and Doe LASD Officers 1-10, jointly and
11 severally, in an amount to be proven at trial;
12         3.      For punitive and exemplary damages against the individual ICE
13 Defendants, LASD Defendants, Doe ICE Agents 1-10, and Doe LASD Officers,
14 jointly and severally in an amount to be proven at trial
15         4.      For reasonable costs, expenses, and attorneys' fees pursuant to 42
16 U.S.C. § 1988 and any other applicable law;
17         6.      For injunctive relief that the Court deems just and proper; and
18         7.      For such other relief as the Court deems just and proper.
19                          **DEMAND FOR JURY TRIAL**
20 Plaintiffs demand a trial by jury on any and all issues triable by a jury.
21
22
23
24
25
26
27
28

[PROPOSED] SECOND AMENDED COMPLAINT        31
sf-2546574

Dated:     August 10, 2008     JAMES J. BROSNAHAN
                               SOMNATH RAJ CHATTERJEE
                               LEE B. AWBREY
                               SAMUEL J. BOONE-LUTZ

                               MORRISON & FOERSTER LLP


                               By: _____/s/_____
                                      Somnath Raj Chatterjee
                                      Attorneys for Plaintiffs

Case 2:08-cv-01327-GHK-SS Document 134 Filed 09/08/09 Page 35 of 51

# EXHIBIT A



STATE OF CALIFORNIA

COUNTY OF LOS ANGELES REGISTRAR-RECORDER/COUNTY CLERK

CERTIFIED ABSTRACT OF BIRTH

NAME: PEDRO GUZMAN

DATE OF BIRTH: SEPTEMBER 25, 1977          SEX: MALE

COUNTY OF BIRTH: LOS ANGELES

BIRTH SURNAME OF MOTHER: CARBAJAL

DATE FILED: DECEMBER 1977

DATE ISSUED: NOVEMBER 22, 2000

LOCAL REGISTRATION NUMBER: 0090849

This certified document is a true abstract of the official record filed with the Registrar-Recorder.

CONNY B. McCORMACK
REGISTRAR-RECORDER/COUNTY CLERK

19-080643

# EXHIBIT B

**COUNTY OF LOS ANGELES SHERIFF'S DEPARTMENT**
**INCUSTODY INCIDENT REPORT**

A TRADITION OF SERVICE

DATE 03-31-07    PAGE 1 OF

ACTION: ☒ ACTIVE ☐ PENDING   URN # 4   07   08078   1183   339

CLASSIFICATION 1 / LEVEL / BEATCODE: REASONABLE CAUSE TAKING A VEHICLE WITHOUT CONSENT 10851(a) C.V.C. /F/339

CLASSIFICATION 2: INTERFERING WITH AIRCRAFT 625b(a) P.C. /M/399

DATE, TIME, DAY OF OCCURRENCE: 03-31-07, 1705 HOURS, SATURDAY

LOCATION OF OCCURRENCE: 4555 WEST AVE G LANCASTER

BUS. NAME: "FOX FIELD"

PRINTS REQUESTED ☐

**CODE: V - VICTIM · W - WITNESS · I - INFORMANT · R - REPORTING PARTY · P - PARTY**

| CODE | NAME | SEX | RACE | ETHNIC ORIGIN | DOB |
|---|---|---|---|---|---|
| I | FOX MIKE | NMN | M | W | 04-01-6640 |

RES. ADDR: ASSISTANT AIRPORT MANAGER
BUS ADDR: 4555 WEST AVE G LANCASTER 93534
ENGLISH SPEAKING ☒YES ☐NO  BUS PHONE 661-940-1709

| V | FERULLO KENNY | NMN | M | W | 06-07-79 |

"NET JETS" PILOT
RES ADDR: 411 BRIDGEWAY AVE COLUMBUS OH 43219
BUS PHONE 614-239-5500

| V | CROOKS KENT | A | M | W | 09-24-77 29 |

"NET JETS" PILOT
RES ADDR: 411 BRIDGEWAY AVE COLUMBUS OH 43219
BUS PHONE 614-239-5500

**CODE: S - SUSPECT · SJ - SUBJECT · M - PATIENT · SW - SUSPECT/VICTIM · SJ/V - SUBJECT/VICTIM**

| S | GUZMAN PEDRO | M | H | | 09-25-77 29 |

DRIVER'S LICENSE: CA B7301562
RES ADDR: 25545 EAST AVE J-4 LANCASTER 93534
RES PHONE 661-878-6100
HAIR BRN  EYES BRN  HGT 600  WGT 160
R/C 10851(a) C.V.C., 625b(a) P.C.
WHERE DETAINED OR CITE # LANCASTER
BOOKING # 9740429

**VEHICLE**
SUSPECT STATUS ☒STORED ☐IMPOUNDED LICENSE (STATE & No.) CA 3Y97577 YEAR 89 MAKE CHEVY MODEL CHEYENNE BODY TYPE UTILITY COLOR WHT
REGISTERED OWNER: AV STEEL BUILDING SERVICES
CHP 180 SUBMITTED? ☒YES ☐NO

EMPLOYEE: GARCIA, R. 489660   STATION LANCASTER
VICTIM DESIROUS OF PROSECUTION ☒YES ☐NO
DEP MORNING  SGT MINSTER  LAN/DB
EMPLOYEE # 296955  EMPLOYEE # 272205  DATE 4/1/07 TIME 1370

Exhibit B
Page 34

01

| DATE 03-31-07 | TIME RECEIVED 1709 | TAG # 335 | | URH # 407-08078-1103-339 PAGE 2 of 7 |
|---|---|---|---|---|
| INPUT / CHECKED INDX, OR ETC: ☐ YES ☐ NO | EVIDENCE HELD: ☐ YES ☐ NO | EVIDENCE ENTERED IN: PATROL | NARCOTICS | SAFE BY |

| EVIDENCE HELD: | ☐ BLOOD ☐ FOOTPRINTS ☐ OTHER PRINTS ☐ VEHICLE PARTS | ☐ BULLET ☐ FRAUD DOCUMENTS ☐ PAINT ☐ WEAPONS ☐ | ☐ BULLET CASING ☐ GSR ☐ PHOTOGRAPHS ☐ | ☐ CHECKS ☐ HAIR ☐ RAPE KIT | ☐ CLOTHES ☐ JEWELRY ☐ RECEIPTS | ☐ CREDIT CARDS ☐ MISCELLANEOUS ☐ TOOLS | ☐ ELECTRONIC EQUIPMENT ☐ MONEY ☐ URINE | ☐ FINGERPRINTS ☐ NARCOTICS ☐ VEHICLE IMPOUNDED |

**PROPERTY CODE:** S—STOLEN • R—RECOVERED • L—LOST • F—FOUND • E—EMBEZZLED • D—DAMAGED • EV—EVIDENCE
(Use all applicable Codes; for example, if property is both Stolen and Recovered, Code is S/R)

| CODE | ITEM # | QUAL | DESCRIPTION (Include kind of article, trade name, identifying numbers, physical description, material, color, condition, age and present market value) | RELEASED TO | |
|---|---|---|---|---|---|
| | | | | SERIAL # | VALUE |
| SR | 1 | 1 | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

## PART I STATISTICAL INFORMATION

| TYPE OF PROPERTY | STOLEN | RECOVERED | TYPE OF PROPERTY | STOLEN | RECOVERED |
|---|---|---|---|---|---|
| CLOTHING/FURS | $ | $ | JEWELRY | $ | $ |
| CONSUMABLE GOODS | $ | $ | LIVESTOCK | $ | $ |
| CURRENCY/NOTES | $ | $ | LOCAL STOLEN VEHICLES | $ | $ |
| FIREARMS | $ | $ | MISCELLANEOUS | $ | $ |
| HOUSEHOLD GOODS | $ | $ | OFFICE EQUIPMENT | $ | $ |
| | | | TV/RADIO/STEREO | $ | $ |

**VICTIM OF SEX CRIMES REQUEST FOR CONFIDENTIALITY**

PURSUANT TO SECTION 293(a) OF THE CALIFORNIA PENAL CODE, YOU ARE INFORMED THAT YOUR NAME WILL BECOME A MATTER OF PUBLIC RECORD, UNLESS YOU REQUEST THAT IT REMAIN CONFIDENTIAL AND NOT BE A PUBLIC RECORD, PURSUANT TO SECTION 6254 OF THE GOVERNMENT CODE.

I, _____ HEREBY (DO) (DO NOT) ELECT TO EXERCISE MY RIGHT TO PRIVACY.

### SCREENING FACTORS

| YES | NO | | YES | NO | |
|---|---|---|---|---|---|
| ☒ | ☐ | 1. SUSPECT IN CUSTODY | ☐ | ☐ | 7. GENERAL SUSPECT DESCRIPTION |
| ☒ | ☐ | 2. SUSPECT NAME/KNOWN | ☐ | ☐ | 8. GENERAL VEHICLE DESCRIPTION |
| ☐ | ☒ | 3. UNIQUE SUSPECT IDENTIFIERS | ☐ | ☒ | 9. UNIQUE M.O. OR PATTERN |
| ☐ | ☒ | 4. VEHICLE IN CUSTODY | ☐ | ☒ | 10. SIGNIFICANT PHYSICAL EVIDENCE |
| ☐ | ☒ | 5. UNIQUE VEHICLE IDENTIFIERS | ☐ | ☒ | 11. TRACEABLE STOLEN PROPERTY |
| ☐ | ☒ | 6. WRITER/REVIEWER DISCRETION | ☒ | ☐ | 12. MULTIPLE WITNESSES |

76C200F - SH-R-69 (Rev. 10/98)

| REPORT CONTINUATION NARRATIVE | URN 907-00078-1183-337 |
|---|---|

WE RESPONDED TO 4555 WEST AVE G ("FOX FIELD")
REGARDING A TRESSPASSING CALL (1A6 335).

WE WERE ADVISED THAT THE PERSON TRESSPASSING
WAS A MALE IN A WHITE UTILITY TRUCK. AS WE
PULLED ON TO THE AIRPORT TARMACK, WE SAW A
MALE (S/GUZMAN) SITTING IN A WHITE UTILITY
TRUCK (CA # 3Y97577). THE TRUCK WAS BACKED
IN NEAR A BLOCK WALL NORTH OF THE TERMINAL.
THE SUSPECT AND TRUCK WERE ON THE TARMACK
FACING "NET JETS" PLANE NUMBER N837Q5 (APPROXIMATELY
25 YARDS AWAY).

AS WE STOPPED NEAR THE SUSPECT IN THE
UTILITY TRUCK, WE WERE CONTACTED BY I/FOX.
I/FOX DIRECTED US TOWARD S/GUZMAN IN THE
WHITE UTILITY TRUCK. I/FOX SAID HE WAS THE
ASSISTANT AIRPORT MANAGER, AND THAT S/GUZMAN
WAS INTERFERING WITH THE "NET JETS" PLANE.

WE CONTACTED S/GUZMAN (STILL SITTING IN
THE UTILITY TRUCK), AND DETAINED HIM PENDING
OUR TRESSPASSING INVESTIGATION.

76R2BBM Sh R 3113- PS 10-82

Case 2:08-cv-01327-GHK-SS Document 113-2 Filed 08/10/2009 Page 41 of 51
Case 2:08-cv-01327-GHK-SS Document 131 Filed 09/08/09 Page 41 of 51

PAGE 4 OF 7

| REPORT CONTINUATION NARRATIVE | URN | 407-08 078-1183-339 |
|---|---|---|

WE AGAIN CONTACTED I/FOX WHO TOLD US S/GUZMAN
ENTERED "FOX FIELD" THROUGH THE ACCESS GATE, WHICH
HAD BEEN LEFT OPEN. I/FOX SAID S/GUZMAN DROVE
ON TO THE TARMACK IN THE WHITE UTILITY TRUCK
S/GUZMAN THEN OPENED THE DOOR TO "NET JETS"
PLANE, WHICH WAS PREPARING TO LEAVE. I/FOX
THINKS S/GUZMAN ENTERED THE PLANE. S/GUZMAN
WAS TOLD TO LEAVE. S/GUZMAN DROVE TOWARD
THE "FOX FIELD" EAST HANGERS. I/FOX SAW HIM
BY THE EAST HANGERS, AND FOLLOWED HIM AS
S/GUZMAN LEFT THE EAST HANGERS TOWARD "NET JETS"
PLANE. S/GUZMAN GOT OUT OF THE UTILITY TRUCK
AND AGAIN TRIED TO GET INTO THE PLANE. S/GUZMAN
TOLD I/FOX HE WAS "WAITING FOR A PLANE." I/FOX
TOLD S/GUZMAN HE WOULD HAVE TO "WAIT IN THE
HANGER." S/GUZMAN HUNG AROUND THE "NET JETS"
PLANE UNTIL DEPUTIES ARRIVED.


WE CONTACTED V/FERULLO AND V/CROOKS WHO
WERE THE PILOTS OF THE "NETJETS" PLANE
N83705, THEY SAID THEY WERE IN THE PLANE
WITH PASSENGERS "PREPARING TO TAXI." S/GUZMAN
THEN OPENED THE PLANE DOOR, ENTERED THE PLANE,
AND SAT DOWN. S/GUZMAN TOLD V/FERULLO AND
V/CROOKS HE WAS "SUPPOSED TO BE ON THE FLIGHT"

76R288M-Sh R-313- PS 10-82

Case 2:08-cv-01327-CHRS-SS Document 113-2 Filed 09/18/2009 Page 42 of 51

| REPORT CONTINUATION NARRATIVE | URN 407-08078-1183-339 |

V/FERULLO AND V/CROOKS TOLD S/GUZMAN
HE WAS NOT ON THEIR FLIGHT, AND ASKED HIM
TO EXIT. S/GUZMAN SAID "OKAY" AND WENT
BACK TO "HIS TRUCK". V/FERULLO AND V/CROOKS
SAW S/GUZMAN DRIVE TO THE "EAST TOWERS."


V/FERULLO AND V/CROOKS SAID S/GUZMAN
CAME BACK AGAIN AND TRIED TO GET ON THE
PLANE. S/GUZMAN WALKED UP TO THE PLANE
DOOR, AND ATTEMPTED TO OPEN IT. V/CROOKS
SAW S/GUZMAN APPROACHING THE PLANE DOOR
AND GRABBED IT FROM THE INSIDE, HOLDING
IT CLOSED TO PREVENT S/GUZMAN FROM
ENTERING. S/GUZMAN GAVE UP AND WENT
BACK TO "HIS TRUCK."


S/GUZMAN STAYED IN HIS TRUCK FOR
APPROXIMATELY "FIVE MINUTES." HE THEN STARTED
WALKING BACK TOWARD THE PLANE. V/FERULLO
AND V/CROOKS STOPPED S/GUZMAN BEFORE HE GOT
TO THE PLANE. S/GUZMAN OFFERED "TWO QUICK
PICK LOTTERY TICKETS" UP TO V/FERULLO AND
V/CROOKS. S/GUZMAN ASKED "DO YOU NEED THESE
(HOLDING THE LOTTERY TICKETS)."

76R288M-Sh R-313- PS 10-82

PAGE 6 OF 7

| REPORT CONTINUATION NARRATIVE | URN | 407-08078-1183-339 |
|---|---|---|

S/GUZMAN WAS TOLD THE LOTTERY TICKETS
WOULD NOT BE ACCEPTED. HE THEN TURNED
AROUND AND WALKED BACK TO HIS TRUCK.


WE CONTACTED S/GUZMAN AND ADVISED HIM
OF HIS MIRANDA RIGHTS (PER 5480 977). S/GUZMAN
SAID HE UNDERSTOOD HIS RIGHTS. HE AGREED
TO TALK WITHOUT A LAWYER PRESENT. S/GUZMAN
TOLD US "THE TRUCK WAS NOT HIS." HE SAID
HE FOUND IT NEAR AVENUE "B-8" THE
TRUCK WAS BEHIND SOME HOUSE, WITH THE
KEYS IN THE IGNITION. S/GUZMAN DECIDED TO
TAKE IT "FOR A RIDE" BECAUSE HIS MOM'S
VEHICLE WAS BROKEN. S/GUZMAN "FOLLOWED
THE SIGNS" TO THE AIRPORT. HE SAID HE
WAS GOING TO LEAVE THE TRUCK AT THE
AIRPORT. HE DID NOT KNOW WHO OWNED THE
TRUCK. S/GUZMAN SAID HE WENT TO THE
AIRPORT, BECAUSE HE WANTED TO GET ON A
PLANE. WHEN ASKED IF HE STOLE THE TRUCK,
S/GUZMAN REFUSED TO ANSWER.


WE ATTEMPTED TO CONTACT THE OWNER OF THE
TRUCK VIA PHONE AND PATROL STOP (PALMDALE STATION).
THE OWNER COULD NOT BE REACHED.

76R288M—Sh R-313. PS 10-82

REPORT CONTINUATION  NARRATIVE      URN 407-09 078-1183-339

S/GUZMAN WAS TRANSPORTED TO LANCASTER
STATION, WHERE HE WAS BOOKED WITH THE
APPROVAL OF LT. HINDMAN.


IT SHOULD BE NOTED THAT S/GUZMAN HAD
NO MONEY OR PLANE TICKETS IN HIS POSSESSION
WHEN HE WAS BOOKED. THE "NETJETS" FLIGHT
WAS DELAYED AND POSSIBLY CANCELLED DUE
TO S/GUZMAN'S ACTIONS. THE VEHICLE
S/GUZMAN WAS DRIVING WAS TOWED BY
CLARK & HOWARD, PENDING THE OWNERS OF THE
VEHICLE BEING CONTACTED.


IT SHOULD ALSO BE NOTED S/GUZMAN BECAME
INVOLVED IN A BATTERY AGAINST ANOTHER
PRISONER IN THE BOOKING CAGE, WHILE HE WAS
BEING BOOKED (SEE FILE # 107-08087-1122-119
FOR FURTHER).


TSA OFFICER KATHY BAGA (BOB HOPE AIRPORT, BURBANK,
818-326-1084) CONTACTED LANCASTER STATION ABOUT
THE INCIDENT

76R288M-Sh-R-313; PS 10-82

# EXHIBIT C

Exhibit C
Page 41

LOS ANGELES COUNTY
BOOKING AND PROPERTY RECORD

BOOKING NO. 9740429

GUZMAN, PEDRO

25545 E AVENUE J4 LANCASTER, CA 93535

SEX M  DESCENT H  HAIR BLK  EYES BRO  HEIGHT 600  WEIGHT 160  BIRTHDATE 09-28-1977  AGE 29

BIRTHPLACE CA

LOCATION OF ARREST 4355 W AVE G, LANCASTER

CHARGE 10851(A) / VC / F VEHICLE THEFT

OCCUPATION CARPENTER

ARRESTING OFFICER HORNING 296955

BOOKING EMPLOYEE GARCIA 489660

LOCATION OF DISPOSITION OF VEHICLE CLARK AND HOWARD

Exhibit C
Page 42

014

| ADDITIONAL CHARGE | | | | WARRANT NUMBER | ARRAIGN DATE | TIME DOO/ | COURT |
|---|---|---|---|---|---|---|---|
| 496B(A1/PC/M TAMPER W/AIRCRAFT | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

| TELEPHONE CALLS INTERVIEWS CODE A-ATTY B-BONDSMAN D-DR E-EMPLOYER R-RELATIVE W-WAIVED O-OTHER | | | | | | OFFICER HANDLING SERIAL # | PRISONER'S INITIALS |
|---|---|---|---|---|---|---|---|
| NAME BAIL DEVIATION | | CODE 0. | PHONE # OR OTHER/NUMBER (213) 351-0311 | DATE & TIME MADE | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

REMARKS                                                                    X COMPLETED CALL          OUS T

| MISDEMEANOR HOLDS | | REASON FOR RELEASE ___ EXPIRATION ___ FINE ___ CITATION ___ BAIL ___ OTHER |
|---|---|---|
| ___ NO IDENTIFICATION ___ WARRANT ___ ON GOING PROBLEM ___ NON-CITEABLE MISDEMEANOR ___ OTHER: | RECEIPT # | DATE AND TIME 5-07-07    INS |
| APPROVED BY | RELEASED BY: TOBUCHI STORI | BOOKING/ARREST ANALYST: |
| WATCH COMMANDER: | RELEASED TO: (NAME, AGENCY & DETAIL) MCen    ICE  3464 | |

| RECORD OF PROPERTY TRANSACTIONS | | | CODE A - ADD W- WITHDRAW I - INSPECT R - REMOVE FOR EVIDENCE | | |
|---|---|---|---|---|---|
| NAME OF PERSON ADDING, WITHDRAWING OR INSPECTING | OFFICER HANDLING SERIAL # | PRISONER'S SIGNATURE AUTHORIZING WITHDRAW | CODE | DESCRIPTION OF PROPERTY | DATE AND TIME |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

| OFFICER MAKING FINAL RELEASE | DATE AND TIME | | I DO HEREBY ACKNOWLEDGE RECEIPT OF ALL MY REMAINING PROPERTY |
|---|---|---|---|
| | | | SIGNATURE |

Exhibit C
Page 43

015

LOS ANGELES COUNTY JAIL
BOOKING AND PROPERTY RECORD

JAIL CUSTODY RECORD

FOREIGN NATIONAL
☐ YES
☒ NO
☐ REF.

HAVE AIDS
HAVE VD
HAVE HEPATITIS
HAVE TB
EVER HAVE TB

BOOKING NO. 9740929    LOC. BKD. LAN    JAIL LIC. NO. 137301562    STATE CA

ARRESTEE'S NAME LAST, FIRST, MIDDLE
GUZMAN, PEDRO PETER

ADDRESS 25545 EAST AUG J-4    CITY LAN    SEX M

DESCENT H    HAIR BLK    EYES BRN    HEIGHT 600    WEIGHT 160    BIRTHDATE 09-25-77    AGE 29

VEH. LIC. NO. 3Y97577    STATE CA    RPT. DIST. 1183    ALIAS/NICKNAME

BIRTHPLACE CA    FILE NO. 407-08078-1183

AGY. OR DETAIL ARRESTING 1101    DATE & TIME ARRESTED 03-31-07/1813    TIME BKD. 1840

LOCATION OF ARREST 4555 W. AVE G, LANCASTER    TOTAL BAIL 20,000

CHARGE 10851(a)/F TAKING VEHICLE WITHOUT OWNER

JAIL LOC. LAN    ARRAIGN. DATE 04-03-07    TIME 0800    COURT ATP

PRISONER'S SIGNATURE WHEN BOOKED (X) Pedro Guzman

OBSERVABLE PHYSICAL ODDITIES UNKNOWN    Tat "XS" on INNER LEFT MIDDLE FINGER

OCCUPATION CONSTRUCTION

EMPLOYER (FIRM OR PERSON'S NAME, CITY & PHONE NO.) UNEMPLOYED

SPECIAL MEDICAL PROBLEM NONE

CLOTHING WORN BLACK SHOES BLUE SHIRT, BLACK JEANS,

LOCATION OR DISPOSITION OF VEHICLE CLARK & HOWARD

IN CASE OF EMERGENCY NOTIFY (NAME, RELATIONSHIP, ADDRESS, CITY & PHONE NO.) MARIA CARBAJAL (MOTHER) 25545 EAST AVE J-4, LANCASTER 661-878-6100

ARRESTING OFFICER HORNING 296955    BOOKING EMPLOYEE GARCIA 489660    SEARCHING OFFICER    TRANSPORTING OFFICER

CASH RETAINED 0    PROPERTY CLOTHING WORN

PRISONER'S SIG. FOR RECT. OF FOREGOING CASH & PROPERTY (X) Pedro Guzman

CASH DEPOSITED 0    PROPERTY BLACK BELT

PRISONER'S SIG. FOR RECT. OF REMAINING CASH & PROPERTY X

ORB 4-1-07
CII # A11798272
FBI # 869200EB5

FELONY

Exhibit C
Page 44

016

| TELEPHONE CALLS INTERVIEWS | CODE: A - ATTY.  B - BONDSMAN  D - DR.  E - EMPLOYER  R - RELATIVE  W - WAIVED  O - OTHER | | | | OFFICER HANDLING | PRISONER'S INITIALS |
|---|---|---|---|---|---|---|
| NAME | | CODE | PHONE # OR INTERVIEW # | DATE & TIME MADE | SERIAL # | |
| | | W | | | 2 | |
| | | W | | | 4 | |
| | | V | | | 9 | |
| | | V | | | 5 | |

REMARKS:        X   COMPLETED CALL

**RIGHT FINGERPRINTS**
WHEN BOOKED.     WHEN RELEASED

| WHEN BOOKED | RIGHT THUMB | WHEN RELEASED | REASON FOR RELEASE: | ☐ EXPIRATION  ☐ FINE  ☐ CITATION |
|---|---|---|---|---|
| | | | ☐ BAIL  ☐ OTHER  RECEIPT # | DATE AND TIME |
| | | | RELEASED BY: | DOCUMENT ANALYST: |
| | | | RELEASED TO: (NAME, AGENCY, & DETAIL) | |

Exhibit C
Page 45

017

# EXHIBIT D

JUN-11-2007  13:44          SECTION CHIEF LOS/DRO                    213 830 7973    P.15

**LOS ANGELES COUNTY**                                                          Page 2
**CONSOLIDATED CRIMINAL HISTORY SYSTEM**                    Date: 04/26/2007     Time: 10:02

*CRIMINAL HISTORY TRANSCRIPT FOR OFFICE USE ONLY - UNAUTHORIZED USE IS A CRIMINAL OFFENSE*
*INFORMATION FINGERPRINT VERIFIED UNLESS OTHERWISE NOTED BY AN ASTERISK(*)*

SUBJECT IDENTIFIERS

### DESCRIPTORS

*N/Names/AKAs/Count*

(1) GUZMAN, PEDRO PETER          8      (2) GUZMAN, PEDRO                      7

*Dates of Birth/Count*

09/25/1977    4

*Scars/Marks/Tattoos*

*Other Identifiers*

DL B7301562 CA      FBI 869202EB5

*Address/Count*

25545 E AVENUE J4 LANCASTER CA 93535      2   25545 E AVE J4 LANCASTER CA 93535      1
25545 EAST AVENUE J4 LANCASTER CA 93535   1   25545 EAST AVENUE J4 LANCASTER CA 93534 1

*Birth Place/Count*

CA     3

*Moniker/Count*

*Gang Membership/Count*

MISC LATINS - LASD    1

### JUVENILE SUSTAINED PETITIONS

No Juvenile Information

EXHIBIT

Exhibit D
Page 47

JUN-11-2007  14:10                                                99%              P.16

**Ib**